1  Sabir Al-Mansur aka Ronald M. Poole

2  2421 Market Street
3  Oakland, California 94607
   Telephone: (510) 213-8189
4  Sabir5939093@gmail.com

5  *In Pro Se*

**FILED**

OCT 02 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

NO5 (5)
Fee paid
155

6

7

8          **UNITED STATES DISTRICT COURT**
9          **NORTHERN DISTRICT OF CALIFORNIA**

10

11 **SABIR AL-MANSUR,**                    CASE #   C24-06909   AMO
12 PLAINTIFF
                                          )
13 vs.                                    )   **COMPLAINT FOR**
                                          )   **DECLARATORY RELIEF,**
14                                        )   **INJUNCTIVE RELIEF,**
   **COUNTY OF ALAMEDA,** as a political  )   **AND DAMAGES [L.R. 3-4c]**
15 subdivision of the State of California,)
   organized under California law;        )   **All Claims are subject to 42 USC §1983**
16 **HENRY C. LEVY,** in his official capacity as )   **under the 5th, 8th & 14th Amendments:**
   Alameda County Treasurer-Tax Collector, and )
17 in his personal capacity for intentional malice. )   **Claim 1**: Violation of Takings Clause
18 **JULIE P. MANAOIS,** in her official capacity )
   as Alameda County Chief Deputy Tax     )   **Claim 2**: Financial Elder Abuse: *Taking*
19 Collector, and in her personal capacity for )
   intentional malice.                    )   **Claim 3**: Violation of Excessive Fines Clause
20 **THEODY VIRREY,** in his official capacity )
21 as Alameda County Tax Collector Spec.-Tax )   **Claim 4**: Violation of Due Process Clause
   Defaulted Land, and in his personal capacity )
22 for intentional malice.                 )   **Claim 5**: Violation of Equal Protection Clause
   **SHAHIDAH J. WILLIAMS (LACY),** in her )
23 official capacity as Alameda County Policy )   **Claim 6:** Fraud (Rule 9(b) and Scienter Act)
24 Director, 5th District, Board of Supervisors, )
   and in her personal capacity for intentional )   **Claim 7:** Fraudulent Deprivation of Property
25 malice.                                 )
                                          )   **Claim 8:** Fraud and Misrepresentation
26                                        )
27                                        )   **Claim 9:** *Monell Liability*

28 _____


                    **COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Claim 10:** Intentional Malice

)   **Claim 11:** Failed Ministerial Duty

)   **Claim 12:** Inverse Condemnation

)   **Claim 13:** Disparate Impact:Fair Housing Act

)   **Claim 14:** Equitable Estoppel

)

)   **PENDENT STATE CLAIMS:**

)

)   **Claim 15:** *Right to Liberty* (Cal. Const. Art. 2,
)   §1)

)   **Claim 16:** *Right to Liberty* (Cal. Const. Art. 2,
)   §7)

)   **Claim 17:** *Right to Liberty* (Cal. Const. Art. 2,
)   §19)

)   **Claim 18:** *Misrepresentation by a Taxing
)   Authority*; Violation of the California Civil
)   Code §§ 1709-1710; Violation of the
)   California Revenue and Taxation Code §§
)   5900-5911

)   **Claim 19:** *Violation of the California
)   Taxpayers' Bill of Rights*

)   **Claim 20:** Violations:*(Fraudulent Claims),
)   Civil Code, Revenue and Taxation Code
)   (California Penal Code § 72; California
)   Revenue and Taxation Code §§ 12601, 12641,
)   13002, 13004, 26100; California Civil Code
)   §§ 1709-1710)*

)   **Atty Fees:** 42 USC §1988; 42 USC §12205;
)   28 C.F.R. §35.175; California CCP §1021.9,
)   1021.5, 1026(a), 1036, 6259; CCP §1036
)   (Inverse Condemnation)

)   **[JURY TRIAL DEMANDED]**

)

**COMPLAINT**

# TABLE OF CONTENTS

**Page**

JURISDICTION ...................................................................................... 1

PARTIES ............................................................................................... 2

STANDING ........................................................................................... 4

VENUE.................................................................................................. 5

FACTS COMMON TO ALL CLAIMS FOR RELIEF................................ 5

- Description Of Property ............................................................ 5

- Litigation Background............................................................... 6

- Treasurer-Tax Collector Engagement ...................................... 7

- Board Of Supervisors Engagement ......................................... 13

- Alameda County Treasurer-Tax Collector Letter.................... 14

- Delinquent Penalties Cannot Be Cancelled Beyond Four Years ........ 25

- Cause and Circumstances Beyond the Taxpayer's Control ............... 29

- Fraud Is Sufficient ................................................................. 32

- Principal Payment for the Proper Amount of Tax Due ...................... 37

- Principal Payment of Taxes Due Re:RTC 4985.2 (a) and (b)............. 40

- The "Pay First, Litigate Later" Rule Is Inapplicable......................... 42

TAKING CLAUSE VIOLATIONS................................................... 45

**AGENCY AND COLOR OF LAW ALLEGATIONS** ................................................. **47**

**FEDERAL FRAUD CLAIM (SCIENTER ACT)** ............................................... **48**

**IN SUPPORT OF NINTH CLAIM FOR RELIEF:** .......................................... **51**

**FEDERAL CIVIL RIGHTS CLAIMS** ........................................................... **55**

**FIRST CLAIM FOR RELIEF** ...................................................................... **55**

- **SECOND CLAIM FOR RELIEF** ................................................. **64**

- **THIRD CLAIM FOR RELIEF** ..................................................... **69**

- **FOURTH CLAIM FOR RELIEF** .................................................. **76**

- **FIFTH CLAIM FOR RELIEF** ....................................................... **81**

- **SIXTH CLAIM FOR RELIEF** ...................................................... **84**

- **SEVENTH CLAIM FOR RELIEF** ................................................ **89**

- **EIGHTH CLAIM FOR RELIEF** ................................................... **95**

- **NINETH CLAIM FOR RELIEF** ................................................... **98**

- **TENTH CLAIM FOR RELIEF** ................................................... **103**

- **ELEVENTH CLAIM FOR RELIEF** ............................................ **106**

- **TWELTH CLAIM FOR RELIEF** ................................................ **110**

- **THIRTEENTH CLAIM FOR RELIEF** ....................................... **114**

- **FOURTEENTH CLAIM FOR RELIEF** ...................................... **119**

- **PENDENT STATE LAW CLAIMS** ............................................. **120**

- **FIFTEENTH CLAIM FOR RELIEF** ........................................ 120

- **SIXTEENTH CLAIM FOR RELIEF** ........................................ 123

- **SEVENTEENTH CLAIM FOR RELIEF** ................................... 125

- **EIGHTHTEENTH CLAIM FOR RELIEF** ................................ 129

- **NINETEENTH CLAIM FOR RELIEF** ..................................... 131

- **TWENTIETH CLAIM FOR RELIEF** ...................................... 132

**RELIEF REQUESTED** ............................................................ 136

**STATEMENT OF DAMAGES** .................................................. 140

**DEMAND FOR JURY TRIAL** ................................................. 142

**VERIFICATION** ..................................................................... 142

**EXHIBIT A – ALAMEDA COUNTY GRANT DEED** ................. 143

**EXHIBIT B – TAX-COLLECTOR-TREASURE INVITATION** ..... 144

**EXHIBIT C – 02/19/2020 PLAINTIFF LETTER TO DEFENDANT** ..... 145

**EXHIBIT D – 2017-2023 ALAMEDA COUNTY TAX RATE INCREASE** ..... 146

**EXHIBIT E – 02/24/2024 BOS POLICY DIRECTOR EMAIL THREAD** ..... 147

**EXHIBIT F – 03/20/2020 DEFENDANT LETTER TO PLAINTIFF** ..... 148

**EXHIBIT G – BOARD OF EQUALIZATION RE: RTC 4985.2** ..... 149

**EXHIBIT H – ATTORNEY GENERAL OPINION RE:4985.2** ..... 150

**EXHIBIT I – 9TH CIRCUIT NORTHERN DISTRICT CLERKS DEFAULT** ..... 151

1

**EXHIBIT J – NOTICE OF SALE RE: JANUARY 20TH, 2021**................................ 152

2

**EXHIBIT K – NOTICE OF SALE RE: JANUARY 12TH, 2022** ............................... 153

3

4

**EXHIBIT L – 2015 ALAMEDA COUNTY GRAND JURY REPORT**................... 154

5

**EXHIBIT M – 2023 ALAMEDA COUNTY GRAND JURY REPORT**................. 155

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Federal Cases**

*$100,348 in U.S. Currency,*
354 F.3d at 1122 ...................................................................................... 73

*Affordable Patios & Sunrooms,*
No. 3:20-BK-50017 BTB, 2022 WL 1115413, at *6 (B.A.P. 9th Cir. Apr. 13, 2022)................. 71

*Agins v. Tiburon,*
447 U.S. 255, 260 (1980)........................................................................... 60

*Armstrong v. United States,*
364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960) .............................. 57

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)........................................................................ 85, 86, 90

*Barren v. Harrington,*

*152 F.3d 1193, 1194 (9th Cir. 1998)* ........................................................................... 80

*Berman v. Parker,*

348 U.S. 26, 31-33 (1954) ........................................................................................... 61

*Carey v. Piphus,*

435 U.S. 247 (1978)........................................................... 94, 106, 109, 114, 118

*CarMax Auto Superstores California LLC v. Hernandez,*

94 F. Supp. 3d 1078 (C.D. Cal. 2015) ........................................................................ 20

*Christianson v. Colt Indus. Operating Corp.,*

486 U.S. 800, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988).......................................... 20

*City of New York v. Feiring,*

313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941)................................. 71

*City of Oakland v. Comcast Cable Communications, LLC,*

47 F. Supp. 3d 927 (N.D. Cal. 2014) ........................................................... 87, 93, 101

*Cooper v. Pickett,*

137 F.3d 616, 627 (9th Cir. 1997) ........................................................................ 88, 93

*County of Kern v. Superior Court,*

No. B229980, 2011 BL 213968, at *7 (Cal. Ct. App. 2d Dist. Aug. 17, 2011 ............. 21

**COMPLAINT**
**TABLE OF AUTHORITIES**

**Page 2 of 17**

1

2  *County of Sacramento v. Lewis,*

3  523 U.S. 833 (1998)............................................................................................... 104, 117

4

5  *Duncan v. Louisiana,*

6  391 U.S. 145, 147–149 (1968)............................................................................................... 78

7

8  *Eitel v. McCool,*

9  782 F.2d 1470, 1471-72 (9th Cir. 1986) ............................................................................ 36

10

11  *Fitzpatrick v. City of Los Angeles,*

12  2023 U.S. Dist. LEXIS 17220, *118-119, 2023 WL 3318748.......................... 72, 85, 91

13

14  *Flora v. United States,*

15  362 U.S. 145 (1960)............................................................................................... 15

16

17  *Freed v. Thomas,*    2021 U.S. Dist. LEXIS 48524, *1, 2021 WL 942077 .................................. 73

18  *Gerhart v. Lake Cnty., Montana,*

19  637 F.3d 1013, 1019 (9th Cir. 2011) ............................................................................ 59

20

21  *GlenFed, Inc. Securities Litigation,*

22  42 F.3d 1541 (9th Cir. 1994) ............................................................................ 85, 91

23

24  *Greater Yellowstone Coal., Inc. v. Servheen,*

25  665 F.3d 1015, 1028 (9th Cir. 2011) ............................................................................ 54

26

27  *Griffin v. Green Tree Servicing, LLC,*

28

**COMPLAINT**
**TABLE OF AUTHORITIES**

166 F. Supp. 3d 1030 (C.D. Cal. 2015) ........................................................... 20

*Heckler v. Community Health Services of Crawford County, Inc.,*
467 U.S. 51 (1984).......................................................................................... 119

*Hernandez v. Sessions,*
872 F.3d 976, 988 (9th Cir. 2017) ................................................................... 44

*Hope v. Pelzer,*
536 U.S. 730 (2002)....................................................................................... 103

*Johnson v. Duffy,*
588 F.2d 740 (9th Cir. 1978) ........................................................................... 90

*Knick v. Township of Scott, Pennsylvania*
June 21, 2019 .................................................................................................... 4

*Laing v. Ashcroft*, (9th Cir. 2004)
370 F.3d 994, 1000 .......................................................................................... 44

*Lingle v. Chevron U.S.A., Inc.,*
544 U.S. 528, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005)......................... 57, 111

*Lombardi v. City of El Cajon,*
117 F.3d 1117 (9th Cir. 1997) ................................................................. 92, 108

*Long v. County of Los Angeles,*

F.3d 1178, 1185 (9th Cir. 2006) ........................................................................... 84, 90

*Lucas v. S.C. Coastal Council,*

505 U.S. 1003, 1016 (1992) .................................................................................... 60

*Monell v. Department of Social Services of the City of New York,*

436 U.S. 658 (1978) ...................................................................................... 100, 114

Mot. at 13 (citing *Penn Cent. Transp. Co. v. City of New York,*

438 U.S.104, 123 (1978) ....................................................................................... 61

*Mt. Holly Gardens Citizens in Action, Inc. v. Township of Mount Holly,*

658 F.3d 375 (3rd Cir. 2011) ................................................................................ 116

*Nat'l Parks Conservation Ass'n v. EPA,*

788 F.3d 1134, 1141 (9th Cir. 2015) ..................................................................... 54

*New Jersey v. Anderson,*

203 U.S. 483, 492, 27 S.Ct. 137, 140, 51 L.Ed. 284 (1906) .................................. 71

*Nollan v. California Coastal Commission,* 483 U.S. 825, 107 S. Ct. 3141 (1987) .......... 60, 61, 62

*Palazzolo v. United States,*

533 U.S. 606 (2001) ............................................................................................... 24

*Palazzolo,* 533 U.S.

633, 121 S.Ct. 2448 .............................................................................................. 57

*Penn Central Transportation Co. v. City of New York,*

U.S. at 124, 98 S.Ct. 2646 ................................................................................... 51, 57, 61, 62

*Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978) ................................. 112

*People ex rel. Strumpfer v. Westoaks Inv. #27,*

139 Cal. App. 4th 1038, 1047 ........................................................................................ 18

*Pfaff v. HUD,*

88 F.3d 739 (9th Cir. 1996) ............................................................................................ 116

*Pimentel v. City of Los Angeles,*

F.3d 917, 920, 2020 U.S. App. LEXIS 28925, *1 ........................................................... 72

*Prostek v. Lincare Inc.,*

662 F. Supp. 3d 1100 (E.D. Cal. 2023) .......................................................................... 20

*Ruckelshaus v. Monsanto Co.,*

U.S. at 104 S.Ct. at 2872 ................................................................................................ 59

*Smith v. Wade*, 461 U.S. 30 (1983) ................................................................................ 104

*Tahoe-Sierra Preservation Council*, 535 U.S. at 321 ........................................................ 59, 61

*TeleVideo Systems, Inc. v. Heidenthal,*

826 F.2d 915, 917-18 (9th Cir. 1987) ............................................................................ 35

*Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*,
576 U.S. 519 (2015) .................................................................................. 114, 115, 116

*Thornton v. City of St. Helens*,
425 F.3d 1158, 1164 (9th Cir. 2008) ................................................................ 47

*Timbs v. Indiana*, 139 S. Ct. 682, 687, 203 L. Ed. 2d 11 (2019) .................................... 70

*U.S. v. $ 405,089.23 U.S. Currency*,
33 F.3d 1210, 1220 (9th Cir. 1994) ................................................................ 75

*U.S. v. Boyce*,
38 F. Supp. 3d 1135, 114 A.F.T.R.2d 2014-5552 (C.D. Cal. 2014).............................. 20

*United States Bajakajian*,
U.S. 321, 118 S. Ct. 2028, 141 L. Ed. 2d 314 *(1998)*.................................... 70

United States District Court, Northern District Court of California C12-5535 SBA, *Al-Mansur vs. Barry Gross, Gross Mortgage Corporation, Contractors Capital Corporation* 33, 34, 35, 36

*United States v. Bajakajian*,
U.S. 321, 334, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998).................................... 73, 74

*United States v. Blackwell*,
459 F.3d 739, 771 (6th Cir.2006) ................................................................ 74

*United States v. Blaszczak,*

518 F.3d 1026 (9th Cir. 2008) ................................................................. 49, 97

*United States v. Gaudium,*

46 F.3d 147 (9th Cir. 1995) ..................................................................... 49, 97

*United States v. La Franca,*

282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551 (1931) .......................... 72

*United States v. Reorganized CF & I Fabricators of Utah, Inc*

S.Ct. at 2111 ............................................................................................. 71

*United States v. Reorganized CF & I Fabricators of Utah, Inc.,*

518 U.S. 213, 116 S.Ct. 2106, 2111–14, 135 L.Ed.2d 506 (1996) ................. 71

*United States v. Sotelo,*

436 U.S. 268, 275, 98 S.Ct. 1795, 1800, 56 L.Ed.2d 275 (1978) ................... 71

*Vess v. Ciba-Geigy Corp. USA,*

317 F.3d 1097 (9th Cir. 2003) ................................................................. 86, 92

*Village of Arlington Heights v. Metropolitan Housing Development Corp.,*

429 U.S. 252 (1977) ................................................................................. 115

*Village of Willowbrook v. Olech,*

*528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)* ................... 80

*Wash. v. Hovan, Inc. (In re Hovan, Inc.),*

96 F.3d 1254, 1258 (9th Cir. 1996) ................................................................ 71

*Webb's Fabulous Pharmacies, Inc. v. Beckwith,*

449 U.S. 155, 161, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980) .................................. 59

*West v. Atkins,* 487 U.S. 42, 48 (1988) .............................................. 47, 84, 90, 94, 97

*Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,*

473 U.S. 172 (issued June 28, 1985) ................................................................ 4

*Zinermon v. Burch,*

494 U.S. 113 (1990)................................................................................ 91


**Federal Statutes**

26 U.S.C § 6551 ................................................................................... 32

28 U.S.C § 1331 ................................................................................... 1

28 U.S.C § 1343 ................................................................................... 1

28 USC §§ 1391(b)(1)(2)............................................................................ 5

28 USC §1343(a) .............................................................................. 135

28 USC §1367(a) ................................................................................. 1

28 USC §2201 ................................................................................. 135

42 USC §§1983 and 1988 .............................................................. 62, 63, 67

42 USC §1983 ......................................................... 1, 3, 5, 91, 137

42 USC §1985(c) .......................................................... 1, 4, 5

Fair Housing Act (FHA) ................................. 1, 3, 13, 114, 115, 116, 118, 136, 138

Federal Rule of Civil Procedure 9(b) ................................ 49, 84, 89, 99

Fraud (Rule 9(b)) ......................................................................... 3, 47, 83, 135

Scienter Act (18 U.S.C. § 1001) ........................................... 48,-50, 79, 83-87, 90-99, 100-129, 138

**Other Authorities**

2015–2016 Alameda County Grand Jury Report........................................................... 98

2022–2023 Alameda County Grand Jury Report........................................................... 98

**Rules**

5A *Charles Alan Wright & Arthur R. Miller*, Federal Practice and Procedure § 1298 (3d ed.
   2016) ................................................................................................ 87, 93

Cal Rules of Court, Citation of Opinions, Rule 8.1115*(a) (b):Exceptions* ..................................... 20

Fed. R. Civ. P. 9(b) ....................................................... 84, 86, 87, 88, 93, 94, 97

Fraud under the 9th Circuit's "Scienter" standard............................................. 82, 84, 89

Fraudulent Deprivation of Property Without Due Process under Rule 9(b)........................... 92, 93

**Regulations**

*Cal. Welf. & Inst. Code* § 15610.30........................................................................ 89

California Welfare & Institutions Code § 15657 .......................................................... 67

Elder Abuse and Dependent Adult Civil Protection Act (EADACPA)................................. 67, 136

**California Constitutional Provisions**

Article 1 §7 of the Constitution ......................................................................... 122

Article 1, §§1, 7, 19 of CA Constitution................................................... 120, 123, 126

Article 1, Section 19 of California Constitution ...................................................... 125, 128

Articles XIII and XIII A of the California Constitution ............................................... 27

**COMPLAINT**
**TABLE OF AUTHORITIES**

Right to Liberty (Cal. Const. Art. 1, §1) ...................................................................... 119

Right to Liberty (Cal. Const. Art. 1, §19) .................................................................... 124

Right to Liberty (Cal. Const. Art. 1, §7) ...................................................................... 122

*Right to Liberty* (Cal. Const. Art. 2, §1) ....................................................... 1, 3, 47, 135

*Right to Liberty* (Cal. Const. Art. 2, §19) ..................................................... 1, 3, 47, 135

*Right to Liberty* (Cal. Const. Art. 2, §7) ....................................................... 1, 3, 47, 135

**California State Cases**

*Sherwood Partners, Inc. v. EOP-Marina Business Center, L.L.C.*,

153 Cal.App.4th 977 (2007) ........................................................................................ 35


*Kenneally v. Medical Board*,

CA.4th 489 (1994) ..................................................................................................... 122


Cal. Rptr. 3d 548, 554–55 (2006),

citing *Edison California Stores v. McColgan* (1947) 30 Cal.2d 472, 476, 183 P.2d 16 ............... 18


Alameda County Superior Court RG12654035, *Gross vs. Al-Mansur* ............................................ 33


Alameda County Superior Court RG13672772, *Al-Mansur vs. Gross*,

Complaint: Quiet Title, Slander of Title and *Fraud* .................................................. 33


*Anderson v. Phillips* (1975) 13 Cal.3d 733, 737 .......................................................... 40


*Ashlan Park Center LLC v. Crow,* (2015)

233 Cal. App.4th 1274, 1279,1280, 1283 ............................................................ 29, 30, 32, 39

**COMPLAINT**
**TABLE OF AUTHORITIES**

**Page 11 of 17**

*AvalonBay Communities, Inc. v. County of Los Angeles;*

197 Cal.App.4th 890 , 898-899 ................................................................ 31, 37

*Bonfigli v. Strachan*, 192 Cal. App. 4th 1302,

122 Cal. Rptr. 3d 447 (1st Dist. 2011) ........................................................ 64

*Cal. Const.* Article XI §7; *Miller v. Board of Public Works*, 195 Cal. 477 (1925) ...................... 59

*Cal. Welf. & Inst. Code* § 15610.27 ............................................................. 63

*City of Carlsbad v. Rudvalis*, 109 CA.4th 667 (App. 4 Dist. 2003) ........................................ 126

*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616 ............................................... 22, 38

*Common Cause of California v Board of Supervisors of Los Angeles County,* (1989)

49 Cal. App.3rd 432, 442 ........................................................................ 40

*Conservatorship of Gregory D. Noe*, 241 Cal. App. 4th 508 (2015) ........................................... 64

*County of Kern v. Superior Court,*

No. B229980, 2011 BL 213968, at *7 (Cal. Ct. App. 2d Dist. Aug. 17, 2011) ................. 9, 20, 21

*County of San Diego v. California Water & Tel. Co.,*

30 Cal.2d 817 (1947) ............................................................................ 119

*Das v. Bank of America, N.A.,*

186 Cal. App. 4th 727, 112 Cal. Rptr. 3d 439 (2d Dist. 2010) ..................................... 66

**COMPLAINT**
**TABLE OF AUTHORITIES**

1

2  *Edison Cal. Stores v. McColgan,*

3  30 Cal. 2d 472, 183 P.2d 16 (1947) ............................................................. 22

4

5  *Electric Refund Cases,* (2010)

6  Cal. App.4th 1490, 1503-1504 ....................................................................... 44

7

8  *Emeryville Redev. v. Harcros Pigments, Inc.,*

9  CA.4th 1083 (2002) ....................................................................................... 126

10

11  *Estate of Williams,*

12  36 Cal.2d 289 (1950) ................................................................................. 24, 34

13

14  *First American Commercial Real Estate Services, Inc. v. County of San Diego* (2011)

15  196 Cal.App.4th 218 , 225 .) ..................................................................... 9, 107

16

17  *Gajanan Inc. et al., Plaintiffs and Respondents, v. City and County of San Francisco* (2011),

18  *2022 BL 139594* ........................................................................................ 31, 37

19

20  *Gerard v. Dominic F. Bona Corp.,*

21  Cal.App.2d 59 (1965) ..................................................................................... 24

22

23  *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975)

24  15 Cal.3d 328, 343-345 [124Cal. Rptr. 513, 540 P.2d 609]) ........................ 14

25

26  *Gray v. Whitmore,*

27  17 Cal.App.3d 1 (1971) ............................................................................... 122

28

1

2    *Hoffart v. Wiggins*, 226 Or. App. 545,

3    204 P.3d 173 (2009) .......................................................................................... 64

4

5    *Jefferson Street Ventures, LLC v. City of Indio*,

6    C.A.4th 1175 (2015) ........................................................................................ 126

7

8    *Knox v. Dean*, 205 Cal. App. 4th 417,

9    Cal. Rptr. 3d 569 (4th Dist. 2012) .................................................................... 64

10

11    *Lazar v. Superior Court*,

12    12 Cal.4th 631 (1996) ................................................................................. 86, 92

13

14    *Mahan v. Charles W. Chan Insurance Agency, Inc.*,

15    14 Cal. App. 5th 841 (2017) ............................................................................. 64

16

17    *Marlton Recovery Partners, LLC v. Cty. of Los Angeles (2015)*

18    *242 Cal. App. 4th 510, 514-519* ............................................................. 17, 22, 26

19

20    *Paterno v. State of California*, 113 Cal. App. 4th 998 (2003) .......................... 64

21    *People ex rel. Strumpfer v. Westoaks Investment # 27 (2006)*

22    139 Cal.App.4th 1038, 1039 1050 ............................................. 10, 26, 27, 39, 106

23

24    *People v. Gonzales (2018)*

25    6 Cal.5th 44, 55 ......................................................................................... 22, 38

26

27    *People v. Lewis, (2021)*

28

**COMPLAINT**
**TABLE OF AUTHORITIES**

11 Cal. 5th 952, 961 ................................................................................................ 22, 37

*People v. Romo,*

14 Cal.3d 189 (1975) ................................................................................................ 122

*R & T Creditors v. State Board of Equalization,*

Cal.App.4th 1081 (2005) ............................................................................................ 35

*RG21091455, Alameda County Superior Court, Opposition Alameda County Tax Collector-*

  *Opposition to Application for Temporary Restraining Order  filed 02/08/2022* ........... 25, 40, 42

*West v. Robert Mondavi Corp.,*

Cal.App.4th 1071 (2003) ........................................................................................ 24, 34

*Wood v. Jamison,* 167 Cal. App. 4th 156,

83 Cal. Rptr. 3d 877 (2d Dist. 2008)........................................................................... 66


**California Revenue and Taxation Codes**

*California Revenue & Taxation Codes  §§ 2602, 2614, 2615* ........................................... 11, 31, 60

California Revenue and Taxation Code ("RTC") §§ 755 .................................... 25, 27, 28, 86, 92

California Revenue and Taxation Code ("RTC") § 4985.2 (a) .............................................

14, 15, 17, 20, 21, 28, 29, 80, 86, 92


California Revenue and Taxation Code Sections 401 and 755........................................... 27

California Revenue and Taxation Code § 2187 .............................................................. 24

California Revenue and Taxation Code § 5151 ......................................................... 28, 31

**COMPLAINT**
**TABLE OF AUTHORITIES**

California Revenue and Taxation Code § 6597 ............................................................. 32

California Revenue and Taxation Code §§ 12601, 12641, 13002, 13004, 26100 ..................... 133

California Revenue and Taxation Code §§ 5900-5911 ................................ 1, 3, 47, 129, 131, 136,

California Taxpayers' Bill of Rights .......................................................... 131, 132, 136

Part 11 of the Revenue and Taxation Code (Sections 401-5907) .................................. 74

Revenue and Taxation Code §§ 2636, 2708 ...................................................... 41

Revenue and Taxation Code § 2708 "Partial Payment of Taxes" ................................ 41

Revenue and Taxation Code Sections 2636, "Acceptance of Partial Payment" ........................ 41

Revenue and Taxation Code Section 4985.2 ............................. 20, 21, 30, 36, 40, 42, 70

Revenue and Taxation Code Section 4985.2, subdivisions (a) and (b) ........................ 13

RTC Part 19 .................................................................................. 19

RTC Section 18591 ............................................................................ 19

RTC Section 19001 ............................................................................ 19

**California Penal and Civil Codes**

Cal. CCP§1036 (attorney fees for "inverse condemnation") ................................ 63

*Cal. Welf. & Inst. Code* § 15610.30(a)(1); 34 V.I.C. § 470(a) ................................ 64

*Cal. Welf. & Inst. Code* § 15610.30(a)(2), (3) ........................................ 64

*Cal. Welf. & Inst. Code* § 15610.30(b) ............................................ 67

California Civil Code §§ 1709-1710 .............................. 128, 131, 134, 135

California Government Code §25000, *et seq.* .......................................... 3, 14

*California Government Codes §24001 and §27001* ........................... 11, 31, 60

California Penal Code § 72 ................................ 4, 47, 49, 50, 132, 133

California Welfare & Institutions Code § 15610.27 ........................ 2, 12, 16, 64

California Welfare & Institutions Code § 15610.30 ........................ 64, 65, 67, 136

1

**Constitutional Amendments**

2    14th Amendment - Equal Protection..................................................................104, 117

3    5th Amendment - Due Process ......................................................................104, 116

4    5th, 8th & 14th Amendments to the United States Constitution..........................................4

5    8th Amendment - Excessive Fines..........................................................104, 107, 116

6    Due Process Clause of the 14th Amendment...............................................................78

7    Equal Protection Clause of the 14th Amendment...........................................13, 80, 114

8    Excessive Fines Clause...........................................5, 47, 69-76, 85, 101, 105, 108, 117, 136

9    Failed Ministerial Duty of the 5th, 8th, and 14th Amendments .........................................106, 108

10   Intentional Malice of the 5th, 8th, and 14th Amendments .................................................102, 105

11   Inverse Condemnation of the 5th and 14th Amendments.....................................109, 110, 112

12   Taking Clause under the 5th Amendment ................................................................4, 62, 63, 64, 69

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# JURISDICTION

1. This action arises under 42 U.S.C §1983 based on Violation of Takings Clause , Financial Elder Abuse: *Taking,* Violation of Excessive Fines Clause, Violation of Due Process Clause, Violation of Equal Protection Clause, Fraud (Rule 9(b)), Fraudulent Deprivation of Property, Fraud and Misrepresentation, *Monell Liability,* Intentional Malice, Failed Ministerial Duty, Inverse Condemnation, Disparate Impact-Fair Housing Act (FHA), Equitable Estoppel under the 5th, 8th & 14th Amendments to the United States Constitution.

2. This action arises under 42 USC §1985(c): Conspiracy to Deprive a Person of Civil Rights and Equal Protection

3. As to federal questions pursuant to 28 U.S.C §1331, 28 U.S.C §1343. Jurisdiction is also conferred by 28 U.S.C. section 1331 because claims for relief derive from the United States Constitution and the Laws of the United States.

4. This Court has supplemental jurisdiction over those claims of Plaintiffs based on State Laws, pursuant to 28 U.S.C. section 1367. 28 USC §1367(a) provides supplemental jurisdiction over State Pendent Claims (i.e. *California Constitution and Intentional Torts*) consisting of the following: *Right to Liberty* (Cal. Const. Art. 2, **§1**), *Right to Liberty* (Cal. Const. Art. 2, **§7**), *Right to Liberty* (Cal. Const. Art. 2, **§19**), *Misrepresentation by a Taxing Authority*: (Violation of the California Civil Code §§ 1709-1710; Violation of the California Revenue and Taxation Code §§ 5900-5911), :*Violation of the California Taxpayers' Bill of Rights*, :Violations:(*Fraudulent Claims*): *Civil Code, and Revenue and Taxation Code* (California Penal Code § 72; California

**COMPLAINT**

1

Revenue and Taxation Code §§ 12601, 13002, 13004, 26100; California Civil Code §§ 1709-1710).

# **PARTIES**

**PLAINTIFF:**

5.   Plaintiff, **SABIR AL-MANSUR** aka Ronald M. Poole, an African American as a Protected Class, is an Elderly Person as defined under California Welfare & Institutions Code § 15610.27, and a Service-Connected Disabled Veteran. Plaintiff holds Title to the subject property and resides at 2421 Market St., Oakland, CA 94607, Alameda County (APN: 005-0432-014-01).

**ALAMEDA COUNTY DEFENDANTS:**

6.   **COUNTY OF ALAMEDA** "Alameda County" is a political subdivision of California, organized under California law, whose employees and agents execute the policies and procedures created, maintained, and enforced by a five-member Board of Supervisors (Policy Director for District 5 is a Defendant). The Address is: 1221 Oak Street, Suite 555. Oakland, CA 94612. Alameda County is liable for the policies it creates, maintains, and enforces. Alameda County does not have absolute immunity for agent and employee acts under law.

7.   **HENRY C. LEVY**, in his official capacity as Alameda County Treasurer-Tax Collector and in his individual capacity for intentional malicious acts by violating and conspiring with other Alameda County actors to deprive the Plaintiff of the below mentioned claims.

8.   **JULIE P. MANAOIS** sued in her official capacity as Alameda County Chief Deputy Tax Collector, and individual capacity for intentional malice.

Defendant conspired with other AC actors to deprive Plaintiff of the below mentioned claims.

9. **THEODY VIRREY,** sued in his official capacity and in his personal capacity as Alameda County Tax Collector Spec.-Tax Defaulted Land, who denied plaintiff's reasonable accommodation Defendant conspired with other AC actors, to deprive Plaintiff of the below mentioned claims.

10. **SHAHIDAH J. WILLIAMS (LACY),** in her official capacity as Alameda County Policy Director, 5th District, Board of Supervisors and in her personal capacity, who exercises broad legislative, executive, and quasi-judicial authority under California law, including supervision of county officials. See California Government Code §25000, *et seq.* Defendant conspired with other AC actors, to deprive Plaintiff of the below mentioned claims.

11. **Federal Claims common to all Defendants:** 42 U.S.C §1983 based on Violation of Takings Clause, Financial Elder Abuse: *Taking,* Violation of Excessive Fines Clause, Violation of Due Process Clause, Violation of Equal Protection Clause, Fraud (Rule 9(b)), Fraudulent Deprivation of Property, Fraud and Misrepresentation, *Monell Liability,* Intentional Malice, Failed Ministerial Duty, Inverse Condemnation, Disparate Impact-Fair Housing Act (FHA).

12. **State Pendent Claims common to all Defendants:** Right to Liberty (Cal. Const. Art. 2, §1), Right to Liberty (Cal. Const. Art. 2, §7), Right to Liberty (Cal. Const. Art. 2, §19), Misrepresentation by a Taxing Authority, Violation of the California Civil Code §§ 1709-1710, Violation of the California Revenue and Taxation Code §§ 5900-5911, Violation of the California Taxpayers' Bill of Rights, Violations:(Fraudulent Claims), Civil Code, and Revenue and

Taxation Code (California Penal Code § 72; California Revenue and Taxation Code §§ 12601, 13002, 13004, 26100; California Civil Code §§ 1709-1710) under the 5th, 8th & 14th Amendments to the United States Constitution.

13.   The abovementioned Defendants conspired with other AC actors, to deprive Plaintiff of Civil Rights in violation of 42 USC §1985(c): Conspiracy to Deprive a Person of Civil Rights and Equal Protection. Defendant's intentional, malicious acts were designed to cause maximum harm, with evil aforethought. Plaintiff is entitled to a jury award for punitive damages against the Defendants.

## **STANDING**

14.   The United States Supreme Court **overruled** *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (issued June 28, 1985),* in the case of *Knick v. Township of Scott, Pennsylvania* on June 21, 2019.

15.   *In Knick*, the Court held that a property owner whose land has been taken by a local government may bring a claim for a Taking under the Fifth Amendment's Takings Clause in Federal Court as soon as the government takes the property, without first having to seek compensation through state court proceedings. This decision effectively overruled the requirement set forth in *Williamson County* that property owners must exhaust state remedies before bringing Federal Takings claim. Plaintiff may now sue via a 5th Amendment Takings Claim in Federal court.

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VENUE

16.    Per 28 USC §§ 1391(b)(1)(2) California Northern District is the proper venue as the district within which Defendants either maintain offices or perform substantial, official government work; exercise authority in official capacities, and has continued to enforce an unconstitutional Regulatory and/or Economic Taking in violation of 42 USC § 1983 under the 5th, 8th & 14th Amendments, 42 USC § 1985(c) conspiracy to deprive a person of Civil Rights and Equal Protection and the Excessive Fines Clause under the 8th & 14th Amendments, among other State and Federal Constitutional violations and prohibitions as alleged herein.

17.    It is the district where all events giving rise to the claims occurred and it's where all parties reside. The APN is in this District. The address is: 2421 Market Street, Oakland, California (Alameda County).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**DESCRIPTION OF PROPERTY**

18.    The Property ("The Property") is legally described as follows:

Portion of Block 637, as said Block is shown on Boardman's Map of Oakland and Vicinity (per W. F. Boardman City and County Surveyor) on the file in the Office of the County Recorder of Alameda County described as follows:

**COMPLAINT**

BEGINNING at a point on the Western line of Market Street, distant thereon Northerly 89 feet from the Northern line of 24th Street; and running thence along said line of Market Street Northerly 50 feet; thence at a right angle Westerly 90 feet; thence at a right angle Southerly 50 feet; thence at a right angle Easterly 90 feet to the point of beginning.

APN: 005-0432-014-01

(Commonly known as 2421 Market St., Oakland, CA 94607)

# **LITIGATION BACKGROUND**

19. Sabir Al-Mansur ("Sabir") received his property at 2421 Market Street as a gift from the Plaintiffs' Grandmother via a grant deed recorded on December 20, 2000. He has always valued the family property, and during his initial years of ownership, Mr. Al-Mansur paid his property taxes on time and in full.

20. Unfortunately, on January 19, 2006, Brian Fabian, a family acquaintance, illegally colluded with Gross Mortgage Company ("GMC") and its servicing agent, Contractors Capital Corporation ("CCC") to surreptitiously and fraudulently transfer title on the Market Street property to CCC.

21. Over the course of the next decade, Mr. Al-Mansur was forced to file litigation in State and Federal court against GMC, CCC and their Principal Officer, Barry Gross, in an effort to clear title on the Market Street property. During this time

**COMPLAINT**

period, because of the ongoing dispute over ownership, several years of property taxes on the Market Street location fell delinquent.

22.  After years of litigation, GMC/CCC finally agreed in 2019 to relinquish all claims of ownership of the Market Street property and Mr. Al-Mansur recorded a grant deed in Alameda County, finally recognizing his legal ownership of the property. **[EXHIBIT A]**

# **TREASURER-TAX COLLECTOR ENGAGEMENT**

23.  On February 4th, 2020, via scheduled invitation (**EXHIBIT B**), Mr. Al-Mansur met with Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land at the Alameda County Tax Assessors office, to discuss payment of the delinquent taxes due and cancellation of penalties, interests and fees under Revenue and Taxation Code Section 4985.2, subdivisions (a) and (b).

24.  Mr. Al-Mansur received a negative response to his request, and was informed by Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector who stated, "*I will take your property and sell it to someone else*".

25.  Mr. Al-Mansur responded to the Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, that he (Mr. Al-Mansur) would utilize all available resources at his disposal and informed the

Defendant's, that he would "*fight tooth and nail*" to keep his property. The Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector became irate and had to be reminded by Mr. Al-Mansur to "*remain civil*".

26.    Before leaving the office Mr. Al-Mansur requested that the Defendant's forward the Delinquent Property Tax bill to Mr. Al-Mansur for his review and remuneration. Defendant, **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land responded in kind, and Mr. Al-Mansur received the Delinquent Property Tax bill on February 6th, 2020, via email, per his request.

27.    On February 19, 2020, Mr. Al-Mansur tendered a timely check for $149,946.82, which represented the principal amount of the delinquent property taxes due as represented on the Delinquent Property Tax bill forwarded by Defendant, **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land pursuant to the predicates of Revenue and Taxation Code Section 4985.2, subdivisions (a) and (b), delivered payment to **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector.

28.    On that same day, Mr. Al-Mansur delivered a letter to **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, affirming Mr. Al-Mansur's payment of the principal taxes due, in full, exclusive of penalties, interests and fees. Mr. Al-Mansur presented the letter requesting cancellation of penalties, interests and fees under Revenue and Taxation Code Section 4985.2, subdivisions (a) and (b), pointing to the fraudulent efforts by

**COMPLAINT**

8

GMC/CCC and Fabian as "*reasonable cause and circumstances beyond the taxpayer's control that occurred notwithstanding his exercise of ordinary care in the absence of willful neglect...*". (**EXHIBIT C**)

29.    Section 4895.2 , subdivision (a) also requires that "the delay in payment (1) was 'due to reasonable cause,' (2) was due to 'circumstances beyond the taxpayer's control,' (3) occurred *'notwithstanding the exercise of ordinary care,' and (4) occurred 'in the absence of willful neglect.'*" (*First American Commercial Real Estate Services, Inc. v. County of San Diego* (2011) 196 Cal.App.4th 218 , 225 .)

30.    Pursuant to the payment and letter forwarded to the Defendants on February 19, 2020, the Plaintiff and the Defendants were aware that the payment was exclusive of the penalties, interest, and fees. However, under RTC § 4985.2(b), the Defendants-Tax Collector still had an obligation to formally notify the Plaintiff-Taxpayer of the shortage within 10 days after becoming aware of the underpayment which the Defendants failed to do.

31.    The Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land, failed to notify the Plaintiff of the underpayment within the statutory notification period pursuant to Section 4895.2 subdivision (b).

32.    **California Appellate : Revenue and Taxation Code Section 4985.2, subdivisions (a):**

**COMPLAINT**

9

1

2   "….*on its face limits cancellation to a four-year period* **BEFORE** *the principal*

3   *payment for the proper amount of the tax due is made*[,]". In re *County of Kern*

4   *v. Superior Court*, No. B229980, 2011 BL 213968, at *7 (Cal. Ct. App. 2d Dist.

5   Aug. 17, 2011);

6

7   33.   *"As the statute indicates,* ***the principal amount of the taxes must be paid first***

8        ***for a cancellation request to be granted****. Our records indicate that the principal*

9        *amount of taxes has not been paid on the Property since the 2005/2006 tax year*

10       *except for some parcels regarding the 2011/2012 tax year. Consequently,*

11       ***penalties cannot be cancelled for the tax years where the principal amount***

12       ***has not been paid****." Marlton Recovery Partners LLC v. Cty. of Los Angeles*

13       (2015) 242 Cal App.4th 510, 514;

14

15  34.   In support of the above paragraph, the long-standing opinion of GEORGE

16       DEUKMEJIAN, Attorney General stipulates that "*Under the provisions of*

17       *section 4985.2 of the Revenue and Taxation Code,* ***payment of a delinquent***

18       ***penalty on property is not a necessary precondition*** *to the cancellation thereof*

19       *where the principal amount of the tax, exclusive of such penalty has been*

20       *paid….*" (*OAG 4/26/1979 (no. 79-311, vol. 62, p. 212*) **[EXHIBIT H]**

21

22  35.   While a court may not independently cancel tax penalties of its own volition, it

23       may enter an order compelling a county tax collector to do so if the **predicate**

24       **elements of Revenue and Taxation Code Section 4985.2, subdivisions (a)**

25       **and (b) have been met**. At that point, the tax collector is divested of any

26       discretion concerning the granting of the requested relief. *People ex rel.*

27       *Strumpfer v. Westoaks Investment # 27* (2006) 139 Cal.App.4th 1038, 1050

28

**COMPLAINT**

10

36.     In the *Marlton* case, the letter of the LA County Tax Collector confirms the requirements under Revenue and Taxation Code Section 4985.2, subdivisions (a) and (b). In doing so, the LA County Tax Collector, Saladino also affirms the precise steps taken by the Plaintiff, Mr. Al-Mansur in this action as he sought relief from the penalties, interests and fees assessed on The Property pursuant to Revenue and Taxation Code Section 4985.2, subdivisions (a) and (b).

37.     Accordingly, the Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector's, failed in his ministerial duty to credit and process Al-Mansur's cashier's check for $149,946.82 for payment of principal taxes due in full and to cancel all delinquent penalties, interests and fees pursuant to subdivision (a) of Section 4985.2.

38.     The Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector's, also failed to uphold and adhere to the mandates of the *California Revenue & Taxation Codes §§ 2602, 2614, 2615, California Government Codes 24001 and 27001*, State and Federal Constitutional law.

39.     In July 2020, approximately 5 months after receiving Mr. Al-Mansur's cashier's check for $149,946.82 for payment of principal taxes due, the Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector and **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector, without reason, statute or ***notice of underpayment*** (in contravention with Revenue and Taxation Code Section 4985.2, subdivision (b)), *refused* Mr. Al-Mansur's $149,946.82 payment of the

**COMPLAINT**

principal taxes due and *rejected and rescinded* Mr. Al-Mansur's request for cancellation of delinquent penalties, interests and fees .

40.　The Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector and **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector *cancelled the redemption and waiver* of $28,754.77, granted by the Defendant's, pursuant to Revenue and Taxation Code Section 4985.2, subdivisions (a) and (b).

41.　The Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector and **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector took the position that Mr. Al-Mansur's failure to pay $304,004.03 on or before August 3, 2020, would result in a $20,000+ increase in penalties, interests and fees, totaling approximately $323,391.97 in taxes, penalties, interests and fees. Otherwise, his property would be placed on the county tax sale list on or after August 3, 2020.

42.　Lastly, Defendants, acting under color of state law, have implemented property tax assessment, enforcement, and tax delinquency sale practices that have a disparate impact on African American communities within Alameda County.

43.　Specifically, the practices result in disproportionately higher property tax assessments and delinquent property tax sales in predominantly African American neighborhoods compared to predominantly white neighborhoods.

**COMPLAINT**

44.     Plaintiff has been adversely affected by these practices, facing higher property tax assessments and the threat of property tax sale despite maintaining ordinary care in tax payments.

45.     Since 2017, the Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector and **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector, by the impositions of higher property tax assessments, have *increased* the Plaintiffs Yearly Tax Installment by **76.96%** and the Property Tax Rate has *increased* **1.5825%** from 2017 to the Present. **(EXHIBIT D)**

46.     The disparate impact of these practices on African American communities constitutes a violation of the Fair Housing Act (FHA) and the Equal Protection Clause of the 14th Amendment.

## BOARD OF SUPERVISORS ENGAGEMENT

47.     On February 14th, 2024, Mr. Al-Mansur initially contacted Defendant, **SHAHIDAH J. WILLIAMS (LACY)**, In Her Official Capacity As Alameda County Policy Director, 5th District, Board of Supervisors via email correspondence to request assistance in informing the Alameda Board of Supervisors of the alleged abuse of discretion by the Defendants and to discuss payment of the delinquent taxes due and cancellation of penalties, interests and fees under Revenue and Taxation Code Section 4985.2, subdivisions (a) and (b). **(EXHIBIT E)**

**COMPLAINT**

13

48. Mr. Al-Mansur was informed by **SHAHIDAH J. WILLIAMS (LACY)**, in her official capacity as Alameda County Policy Director, 5th District, Board of Supervisors, that the Office of Keith Carson, District 5 *would not be inclined to assist Mr. Al-Mansur in seeking an administrative remedy* regarding the alleged Abuse of Discretion by the Defendants and to discuss payment of the delinquent taxes due and cancellation of penalties, interests and fees under Revenue and Taxation Code Section 4985.2, subdivisions (a) and (b).

49. **SHAHIDAH J. WILLIAMS (LACY)**, in her official capacity as Alameda County Policy Director, 5th District, Board of Supervisors unwillingness to perform her ministerial duty as a public official, is in *direct contravention* with the broad legislative, executive, and quasi-judicial authority accepted under Oath by the Defendant under California Law, including supervision of County Officials. (See California Government Code §25000, *et seq*.).

50. A 'ministerial duty' is one generally imposed upon a person in public office who, by virtue of that position, is obligated *'to perform in a prescribed manner required by law when a given state of facts exists.'" Flores v. Cal. Dep't of Corr. and Rehab.*, 224 Cal. App. 4th 199,205 (2014) (citations omitted).

51. As a matter of law, the administrative functions of the Board of Supervisors are not immune from judicial process and may be mandated or enjoined (see, e.g., *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 343-345 [124 Cal. Rptr. 513, 540 P.2d 609]).

## **Alameda County Treasurer-Tax Collector Letter**

**COMPLAINT**

1

2   52.   On March 20th, 2020, the Defendants, Henry C. Levy and Julie P. Manaois,

3        represented to Mr. Al-Mansur that penalties, interest, and fees amounting to

4        $28,754.77 were waived under Revenue and Taxation Code Section 4985.2,

5        subdivisions (a) and (b), but later, without legal basis, rescinded this waiver in

6        July 2020.

7

8   53.   The following is the content of the March 20th, 2020, letter from the

9        Defendants, Henry C. Levy and Julie P. Manaois. The Plaintiffs responses are

10       incorporated in this Complaint and subsequent pleadings. (**EXHIBIT F**)

11

12   54.   **DEFENDANT(S) STATEMENT:** *"We are returning check number*

13       *001316874 for $149,946.82 dated February 19, 2020, for the following*

14       *reasons:*

15

16       *1) "**The amount of the check is short of full payment for the total delinquent***

17       ***taxes**. Under RTC section 4985.2(a), a tax collector cannot cancel tax penalties*

18       *unless the delinquent tax payments were made by the end of the fourth fiscal*

19       *year following the fiscal year in which the tax became delinquent."*

20

21   55.   **PLAINTIFFS RESPONSE:** *Flora v. United States* **(1960):** This Supreme

22       Court case established the "full payment rule." It states that to challenge a tax

23       assessment, *the taxpayer must first pay the full amount of the assessed tax*, even

24       if they believe it's incorrect. *This implies that payment of the full "taxes due" as*

25       *assessed satisfies the initial tax obligation*. Flora v. United States, 362 U.S. 145

26       (1960).

27

28

**COMPLAINT**

56. In this case, the Plaintiff met with the Defendants on February 4th, 2020, and was notified of the obligation to pay the principal taxes due, including penalties, interests and fees via email on February 6th, 2020.

57. On February 19th, 2020, the Plaintiff forwarded a letter to the Defendants affirming the payment of $149,964.82 of the principal taxes due, in full, exclusive of the penalties, interests and fees pursuant to RTC § 4985.2 (a) and (b).

58. After receiving the letter affirming and acknowledging the payment, the Defendants failed to notify the Plaintiff of any underpayment or error. In contravention to the statutory requirement of RTC § 4985.2 (b) of a 10-day notification window, the Defendants, Henry C. Levy and Julie P. Manaois did not notify the Plaintiff of an underpayment until 30 days later.

59. The Plaintiff's actions fully complied with the statutory requirements of RTC § 4985.2(a) by paying the full principal amount of taxes after being notified within the required 10-day window. The Defendants failure to notify the Plaintiff within 10 days of any underpayment, and the subsequent 30-day delay, constitutes a procedural violation under RTC § 4985.2(b). Based on established Case Law such as *Strumpfer* and *First American Commercial Real Estate Services*, the Plaintiff is entitled to a complete cancellation of penalties, interest, and fees.

60. **RTC § 4985.2(b)** is clear that, in the event of an underpayment, the taxpayer must be notified of the shortage, and the taxpayer is required to pay the proper amount within **10 days** after the notice is sent.

**COMPLAINT**

16

61. The Defendants, Henry C. Levy and Julie P. Manaois, in this case, **notified the Plaintiff 30 days after the Plaintiffs payment**, in full of taxes due pursuant to RTC § 4985.2 (a) and (b), well beyond the statutory 10-day window.

62. Courts have long held that compliance with statutory notice requirements is essential in tax-related disputes. In *People ex rel. Strumpfer v. Westoaks Investment #27*, 139 Cal. App. 4th 1038 (2006), the court emphasized the necessity of timely and accurate notices for taxpayers to address deficiencies or delinquencies.

63. In this case, the Defendant's 30-day delay in providing notice renders the penalties and fees unjustifiable under RTC § 4985.2 (b), as the Plaintiff was not given a proper opportunity to correct any perceived deficiency within the mandated period. Besides, the Plaintiff paid the principal due in full, in full compliance with the requirements of RTC § 4985.2(a) which entitles Plaintiff to the complete cancellation of penalties and fees.

64. The Defendants, Henry C. Levy and Julie P. Manaois, failure to adhere to this timeline and delayed notification (e.g., notifying the taxpayer 30 days later instead of 10 days), is a violation of the statutory procedure. Thus, the penalties and fees imposed as a result of the delayed notification are legally invalid, as the process followed by the Defendants was improper.

65. The Defendant's procedural violations and failure to notify within the statutory 10-day window under RTC § 4985.2(b) invalidates any attempt to impose penalties and fees. Moreover, the Plaintiff's full compliance with the

**COMPLAINT**

requirements of RTC § 4985.2(a) entitles them to the complete cancellation of penalties and fees.

66. **PLAINTIFFS RESPONSE**: The statutory language in Revenue and Taxation Code Section 4985.2, subdivisions (a) and (b) is clear and unambiguous. It calls for the "*principal payment of the proper amount of the tax due*". *Marlton Recovery Partners LLC v. Cty. of Los Angeles* (2015) 242 Cal App.4th 510, 514.

67. **PLAINTIFFS RESPONSE**: In support of the above paragraph, the long-standing opinion of GEORGE DEUKMEJIAN, Attorney General stipulates that "*Under the provisions of section 4985.2 of the Revenue and Taxation Code, payment of a delinquent penalty on property is not a necessary precondition to the cancellation thereof where the principal amount of the tax, exclusive of such penalty has been paid....*" (*OAG 4/26/1979 (no. 79-311, vol. 62, p. 212)*) **EXHIBIT H**

68. **PLAINTIFFS RESPONSE**: Mr. Al-Mansur paid "*principal payment of the proper amount of the tax due*" in full.

69. **PLAINTIFFS RESPONSE**: "*....when a tax statute is ambiguous, the ambiguity must be resolved in favor of the taxpayer rather than the government.*" In re *People ex rel. Strumpfer v. Westoaks Inv. #27*, 139 Cal. App. 4th 1038, 1047, 43 Cal. Rptr. 3d 548, 554–55 (2006), citing *Edison California Stores v. McColgan* (1947) 30 Cal.2d 472, 476, 183 P.2d 16.

**COMPLAINT**

18

70.  **PLAINTIFFS RESPONSE**: According to the Revenue and Taxation Code ("RTC"), *"taxes due" refers solely to the principal amount of the tax owed*, while interests, penalties, and fees are considered separate liabilities. California State Board of Equalization annotations highlight that under RTC § 4985.2, if the taxpayer pays the principal amount, penalties can be canceled, particularly in cases where litigation or other legal disputes delay the settlement of the tax obligation. **[EXHIBIT G]**

71.  **PLAINTIFFS RESPONSE**: Revenue and Taxation Code ("RTC") distinguishes "*taxes due*" from other potential liabilities associated with the tax statement in several sections, definitive sections:

> **RTC Section 17004:** This section defines "*tax*" as "*the amount of the tax imposed by this part* (Part 10, Income Tax) upon the income of the taxpayer for the income year." While not explicitly *mentioning "taxes due," it clarifies that the "tax" refers to the core tax obligation* based on income.

> **Payments:**
> **RTC Section 18591:** This section establishes various payment options for "*taxes due*," including estimated tax payments and withholding. This differentiation from "*penalties and interest*" *reinforces the **distinction** between the principal tax obligation ("taxes due") and additional charges* for late payment or non-compliance.

> **Interest and Penalties:**
> **RTC Section 19001:** This section outlines the imposition of "*interest*" on unpaid taxes from the due date until the date of payment. This section

specifically *mentions "taxes" as the subject on which interest accrues, further highlighting the **separation** from the "taxes due"* itself.

**RTC Part 19:** *This entire part of the Revenue and Taxation Code is dedicated to "Penalties and Interest."* This structure itself implicitly **distinguishes "penalties and interest" from the "taxes due"** addressed in other parts of the code.

72.     **DEFENDANT(S) STATEMENT:** *2) "The delinquent taxes are from 2007-08 through 2018-19 fiscal year. **We are waiving the penalties** for 2015-16 through 2018-19 fiscal year thus the amount due is $304,004.33 provided that this amount is paid no later than April 9, 2020. If the corrected amount is not paid by April 9, 2020, the penalties for the 2015-16 through 2018-19 fiscal year will be reapplied. Enclosed is the corrected statement."*

73.     **PLAINTIFFS RESPONSE:** the Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector by his decision to *grant a waiver* of $28,754.77 in delinquent penalties, interests and fees was pursuant to **Revenue and Taxation Code § 4985.2.**

74.     **PLAINTIFFS RESPONSE:** Revenue and Taxation Code Section 4985.2 is the only statute that could possibly provide the tax collector with the necessary statutory authority, the Appellate position and precedence is that the Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, authority to cancel penalties is derived from Revenue and Taxation

**COMPLAINT**

Code Section 4985.2. *County of Kern v. Superior Court*, 2011 Cal. App.(see footnotes[1] [2]) LEXIS 6210, *17, 2011 WL 3612227

75.    **DEFENDANT(S) STATEMENT:** "*We have considered your **argument against the four-year limitation period for cancellation of delinquent penalties. However, under Revenue and Taxation Code section 4985.2(a) the limitation period is firm**. Even if equitable tolling were permitted, circumstances are insufficient to support tolling because Mr. Al-Mansur asserted ownership throughout litigation and the litigation did not prevent Mr. Al-Mansur from making timely payment of property taxes as owner. If you still plan to appeal, we suggest that you pay the total delinquent taxes by April 9, 2020, before submitting your appeal because penalties continue to accrue.*"

76.    **PLAINTIFFS RESPONSE:** The *statutory language in Revenue and Taxation Code Section 4985.2, subdivisions (a) and (b) is clear and unambiguous*. It calls for the "*principal payment of the proper amount of the tax due*". The statute does NOT mention implicitly nor explicitly regarding a "*four-year limitation period for cancellation of delinquent penalties*.".

77.    **PLAINTIFFS RESPONSE:** "[Revenue and Taxation Code § 4985.2 subdivision (a)]....*on its face limits cancellation to a four-year period*

---

[1] Although a district court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority. *Griffin v. Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030 (C.D. Cal. 2015); *U.S. v. Boyce*, 38 F. Supp. 3d 1135, 114 A.F.T.R.2d 2014-5552 (C.D. Cal. 2014), appeal dismissed, (9th Cir. 14-56610) (Nov. 13, 2014); *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078 (C.D. Cal. 2015); *Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100 (E.D. Cal. 2023).

[2] Cal Rules of Court, Citation of Opinions, Rule 8.1115*(a) (b):Exceptions*
The *doctrine of the law* of the case applies to decision of a coordinate court in the same case as much as to a court's own decision. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988)

21

**COMPLAINT**

**BEFORE** *the principal payment for the proper amount of the tax due is made[,]*". *County of Kern v. Superior Court*, No. B229980, 2011 BL 213968, at *7 (Cal. Ct. App. 2d Dist. Aug. 17, 2011);

78.    **PLAINTIFFS RESPONSE**: Mr. Al-Mansur paid "*principal payment of the proper amount of the tax due*" in full, pursuant to Revenue and Taxation Code § 4985.2 subdivision (a)].

79.    **PLAINTIFFS RESPONSE**: "*Courts cannot, by implication, extend provisions of statutes levying taxes beyond clear import of language used or enlarge upon their operations so as to embrace matters not specifically included, and **in case of doubt construction is to favor taxpayer rather than government**.*" *Edison Cal. Stores v. McColgan*, 30 Cal. 2d 472, 183 P.2d 16 (1947).

80.    **PLAINTIFFS RESPONSE**: The fundamental task of statutory interpretation is to determine the Legislature's intent to effectuate the purpose of the law. *People v. Lewis,* (2021) 11 Cal. 5th 952, 961.

81.    **PLAINTIFFS RESPONSE**: Examining the words of a statute is the first interpretive step, including affording the words of the law a plain and commonsense meaning. *People v. Gonzales* (2018) 6 Cal.5th 44, 55. "*If the language is clear, courts must generally, follow its plain meaning unless a literal interpretation would result in absurd consequences* the Legislature did not intend." *City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616.

82.    **PLAINTIFFS RESPONSE**: In *Marlton Recovery Partners LLC v. City of Los Angeles* (2015) 242 Cal App.4th 510, 514, respondent County of Los Angeles

**COMPLAINT**

and Mark Saladino, the Treasurer-Tax collector for the County of Los Angeles testified to the following:

> *"As the statute indicates, **the principal amount of the taxes MUST be paid first in order for a cancellation request to be granted**. Our records indicate that the principal amount of taxes has not been paid on the Property since the 2005/2006 tax year except for some parcels regarding the 2011/2012 tax year. Consequently, **penalties cannot be cancelled for the tax years where the principal amount has NOT been paid."** Marlton Recovery Partners LLC v. Cty. of Los Angeles (2015) 242 Cal App.4th 510, 514;*

83.   In summation, the Plaintiff paid the , ***the principal amount of the taxes due, in full*** pursuant to Revenue and Taxation Code §4985.2 subdivision (a) and (b) then requested cancellation of the ***penalties, interests and fees for the tax years representing the principal amount that the Plaintiff paid***.

84.   The Defendants, Henry C. Levy and Julie P. Manaois accepted the Plaintiffs payment, ***did not notify*** the Plaintiff of any underpayment within the statutory period as mandated by Revenue and Taxation Code §4985.2 subdivision (b

85.   *[After payment by Plaintiff]*, the Defendants, Henry C. Levy and Julie P. Manaois represented to Mr. Al-Mansur that penalties, interest, and fees amounting to $28,754.77, *[short of the full amount of penalties, interest, and fees that the principal tax payment represented]* ***partially affirming the cancellation request*** pursuant to Revenue and Taxation Code §4985.2 subdivision (a) and (b)  but later, without legal basis, rescinded the waiver in July 2020.

**COMPLAINT**

1

2     86.    **DEFENDANT(S) STATEMENT:** "*Mr. Al-Mansur **asserted ownership***

3         ***throughout litigation** and the litigation did not prevent Mr. Al-Mansur from*

4         *making timely payment of property taxes as owner*"

5

6     87.    **PLAINTIFFS RESPONSE:** Assertions of ownership of real property in

7         California must be supported by <u>*documentary evidence*</u>. Courts require that

8         claims of ownership be substantiated by evidence of actual control, use, and

9         <u>*legal documentation that affirms the claimant's rights to the property*</u>. *In re*

10       *Estate of Williams*, 36 Cal.2d 289 (1950) (**Holding**: *The California Supreme*

11       *Court held that* <u>***clear and convincing evidence is required to establish***</u>

12       <u>***ownership***</u> *through a deed, particularly when the validity of the deed is in*

13       *question.*); *Palazzolo v. United States*, 533 U.S. 606 (2001) (*though not a 9th*

14       *Circuit case, it is highly influential and frequently cited in 9th Circuit*

15       *decisions*).

16

17     88.    **PLAINTIFFS RESPONSE:** Generally, the legal obligation to pay property

18         taxes falls on the *record owner of the property*. *If a party is not the record*

19         *owner, they are not legally obligated to pay the taxes* unless there are specific

20         contractual or equitable obligations arising from the litigation or other

21         agreements. *In re Gerard v. Dominic F. Bona Corp.*, 234 Cal.App.2d 59 (1965)

22         (**Holding**: *The court held that* <u>***the obligation to pay property taxes remains***</u>

23         <u>***with the record owner***</u> *unless a different arrangement is clearly stipulated.*)

24

25     89.    California Revenue and Taxation Code § 2187: Specifies that property taxes are

26         a lien on the property and remain the <u>***obligation of the record owner***</u> unless

27         explicitly transferred.

28

**COMPLAINT**

90. **PLAINTIFFS RESPONSE**: Due to the substantial fraud and slandering of the title committed by the parties, the Plaintiff was unable to provide any *documentary evidence* or *documentation that would affirm his assertions of ownership*. In re *West v. Robert Mondavi Corp.*, 109 Cal.App.4th 1071 (2003) (**Holding**: *The court highlighted that **mere statements or assertions of ownership are insufficient** without corresponding actions or evidence demonstrating control or dominion over the property.*)

91. **PLAINTIFFS RESPONSE**: The Plaintiff may have asserted ownership throughout the litigation history relating to the subject property, yet the evidence shows that the Plaintiff *pleaded Fraud as an Allegation, Cause of Action and/or Claim in every litigative forum.*

92. **PLAINTIFFS RESPONSE**: The Defendant, Henry C. Levy, in his official capacity as Alameda County Treasurer-Tax Collector failed to perform his Ministerial Duty and abused his discretion, *by refusing to credit*, the Plaintiff, Mr. Al-Mansur's cashier's check for *all of the delinquent principal taxes due*, pursuant to the provisions of the California Revenue and Taxation Code ("RTC") § 4985.2 (a) and the California Revenue and Taxation Code ("RTC") §§ 755.

## Delinquent Penalties Cannot Be Cancelled Beyond Four Years

93. Contrary to the position of the County Attorney at Page 5, of its opposition (*RG21091455, Alameda County Superior Court, Opposition Alameda County*

**COMPLAINT**

*Tax Collector- Opposition to Application for Temporary Restraining Order filed 02/08/2022*), where the Alameda County Defendants argue:

*"The underlying contention regarding cancellation of delinquent tax penalties is without merit. The Tax Collector previously offered to remove four years of delinquent penalties if payment was made by August 3, 2020. (Application for TRO, pg. 9:23-27, par. 30; Exhibit 3.) Additional delinquent penalties were not disturbed because under Revenue & Taxation Code section 4985.2, a tax collector cannot cancel tax penalties unless the delinquent tax payments were made by the end of the fourth tax year following the delinquency tax year. Marlton Recovery Partners, LLC v. Cty. of Los Angeles (2015) 242 Cal. App. 4th 510, 518-519.*

*Plaintiff cites a footnote to the same case stating that section 4985.2 does not operate as a statute of limitations. But although section 4985.2's timeliness requirement might not operate to prevent court access; it nonetheless constitutes a prerequisite and cutoff period for the cancellation of tax penalties."*

94.    In response, Plaintiff, Mr. Al-Mansur references and affirms, the legislative significance of June 30th in California regarding property tax collection is tied to the *underline*timeliness of the payment*underline* and the Assessment Process to determine the upcoming Fiscal Years Property Tax Rate.

95.    As mentioned in a previous paragraph, (*People ex rel. Strumpfer v. Westoaks Investment # 27, supra,* 139 Cal.App.4th at pp. 1050–1051, 43 Cal.Rptr.3d 548.) Thus, "[c]entral to relief under subdivisions (a) and (b) of section 4985.2

**COMPLAINT**

26

are the required findings about the taxpayer and the *timeliness of the payment of delinquent taxes."* (*Id.* at p. 1051, 43 Cal.Rptr.3d 548, italics added.) (*Id.* at p. 1051, 43 Cal.Rptr.3d 548, italics added.) "*We note that parties* **INCORRECTLY** refer to section 4985.2, subdivision (a)'s *timeliness requirement--that* "*the principal payment for the proper amount of the tax due is made no later than June 30 of the fourth fiscal year following the fiscal year in which the tax became delinquent"—as a statute of limitations. It is **NOT** a statute of limitations* as it does not prescribe when a plaintiff must bring a cause of action in court and, consequently, doctrines related to statutes of limitation are not necessarily applicable to the timeliness issue in this case."

96.    The Alameda County Defendants argument is presumptive and erroneous, the "*timeliness requirement*", **DOES NOT** ".... *constitute[s] a prerequisite and cutoff period for the cancellation of tax penalties*." As *Strumpfer* affirms, the "*timeliness requirement*" is not a statute of limitations.

97.    Citing (*People ex rel. Strumpfer v. Westoaks Investment # 27, supra,* 139 Cal.App.4th at pp. 1050–1051, 43 Cal.Rptr.3d 548.) Thus, *"[c]entral to relief under subdivisions (a) and (b) of section 4985.2 are the required findings about the taxpayer and the **timeliness of the payment of delinquent taxes.**"* (*Id.* at p. 1051, 43 Cal.Rptr.3d 548, italics added.), **NOT** "*a prerequisite and cutoff period for the cancellation of tax penalties*.".

98.    **California Revenue and Taxation Code ("RTC"):**
RTC Section 755: This section establishes July 1st [as opposed to June 30th] as the "*fiscal year*" for property taxes. The *fiscal year* is the period for which the

**COMPLAINT**

tax rate is levied and *collected.* See California Revenue and Taxation Code Sections 401 and 755, Articles XIII and XIII A of the California Constitution.

99.    **Understanding the Significance of June 30th:**

While June 30th isn't explicitly mentioned in the Revenue and Taxation Code regarding property tax collection, it holds significance because it falls *one day before the start of the new fiscal year (July 1st).*

100.    As mentioned above, the legislative *process and significance* of June 30th in California *regarding property tax collection is tied to the assessment process,* not directly to *cancellation, payment or audit.*

101.    Plaintiff, Mr. Al-Mansur delivered a certified check to Henry Levy for $149,946.82 on February 19, 2020 – an amount that represented the principal payment for the *entire* amount of the delinquent property taxes due on The Property. Furthermore, the tendered payment was offered *prior to June 30 of the fourth fiscal year following the tax year in which the tax became delinquent,* consistent with the provisions of California Revenue and Taxation Code ("RTC") §4985.2 (a).

102.    Defendant, Henry C. Levy, in his official capacity as Alameda County Treasurer-Tax Collector failed to perform his Ministerial Duty and abused his discretion, after accepting Mr. Al-Mansur's cashier's check, and holding on to the payment 134 days without credit or interest in contravention to California Revenue and Taxation Code (RTC) § 5151.

**COMPLAINT**

103. After 134 days, the Defendant, Henry C. Levy, in his official capacity as Alameda County Treasurer-Tax Collector decided to *reject, return and refused to credit the payment* for all the delinquent principal taxes, including the current taxes represented in the payment on the real property at 2421 Market Street, pursuant to the provisions of the California Revenue and Taxation Code ("RTC") § 4985.2 (a) and the California Revenue and Taxation Code ("RTC")) §§ 755.

## Reasonable Cause and Circumstances Beyond the Taxpayer's Control

104. As is recited in the Factual Background above and as Plaintiff pleads in this action, the fraudulent theft of the title to the Market Street property by Fabian/Gross/GMC/CCC constituted "... *reasonable cause and circumstances beyond the taxpayer's control all of which occurred notwithstanding the exercise of ordinary care in the absence of willful neglect*. . ." under Revenue and Taxation Code § 4985.2 (a).

105. Mr. Al-Mansur did not learn about the fraudulent conveyance until two years after it occurred, and he spent the next eleven years fighting in state and federal court to regain ownership of his property. Clearly, Mr. Al-Mansur's failure to make timely tax payments after 2006 was the result of illegal third-party acts beyond the taxpayer's control.

106. According to the court in *Ashlan Park Center LLC u. Crow*, (2015) 233 Cal. App.4th 1274,1280,

**COMPLAINT**

*".... the statute (Revenue and Taxation Code § 4985.2 (a)) was intended to provide relief from delinquency penalties to a taxpayer who was prevented by outside forces, beyond its control, from making its tax payment to the tax collector before the delinquency date."* Id at 1279.

107. Identifying outside forces such as illness of the taxpayer, earthquakes or other natural disasters, the court in *Ashlan* also went on to state that the statute could also apply where:

*".... through the **<u>fraud or other wrongdoing of a third party</u>**, there was uncertainty about who owned the real property and was liable for payment of the property taxes."* Id.1283.

108. Such was the case with the *fraudulent transfer of title* on the Market Street property. Reasonable cause and circumstances beyond Mr. Al-Mansur's control led to several years of litigation contesting rightful ownership, including liability for the real estate taxes that were assigned to the property.

109. ***<u>Fraud or other wrongdoing may be sufficient</u>*** where the wrongdoing creates *"uncertainty about who owned the real property and was liable for payment of the property taxes."* (*Ashlan Park Venter LLC v. Crow (2015) 233 Cal.App.4th 1274, 1279.*, supra, at p. 1283.)

110. Mr. Al-Mansur's tendering of the cashier's check for $149,946.82 met the statutory requirements of Section 4985.2, which does NOT allow any discretion to deny cancellation of the *penalties, interests and fees* where the predicate facts such as *Fraud* have been established." (*Strumpfer, supra, 139 Cal.App.4th at p. 1050.*)

**COMPLAINT**

111. Considering the *Strumpfer* decision, the Appellate and the California Supreme Court agree that section under Revenue and Taxation Code 4985.2 requires the Tax Collector to cancel a tax penalty if the taxpayer establishes the factual predicates described in either subdivision (a) or (b). In this case, Mr. Al-Mansur met all the predicates mandated by Revenue and Taxation Code Section 4985.2 subdivisions (a) and (b).

112. In support, *waiver is mandatory* if the taxpayer establishes the requisite factual predicates. (See *AvalonBay Communities, Inc. v. County of Los Angeles;* 197 Cal.App.4th 890 , 898-899 [discussing the interpretation of similar language in Rev. & Tax. Code, § 4985.2 ] also *Gajanan Inc. et al., Plaintiffs and Respondents, v. City and County of San Francisco* (2011), 2022 *BL 139594*.

113. Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector failed to perform his Ministerial Duty, by refusing to redeem Mr. Al-Mansur's check for the delinquent principal taxes owed and instead held on to Mr. Al-Mansur's payment of principal taxes due for **134 DAYS without interest, payment or dividend** in contravention to California Revenue and Taxation Code (RTC) § 5151.

114. Mr. Al-Mansur relied upon the actions and statements of the Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land, thus Mr. Al-Mansur was under the impression that his payment had been accepted and credited to meet his property tax obligation.

**COMPLAINT**

115. Mr. Al-Mansur relied upon the Defendants ministerial duties and adherence to the mandates of the *California Revenue & Taxation Codes §§ 2602, 2614, 2615, California Government Codes 24001 and 27001*, State and Federal Constitutional law, in which they all failed to uphold.

116. A *'ministerial duty'* is one generally imposed upon a person in public office who, by virtue of that position, is obligated 'to perform in a prescribed manner required by law when a given state of facts exists.'" *Flores v. Cal. Dep't of Corr. and Rehab.*, 224 Cal. App. 4th 199,205 (2014) (citations omitted).

117. Lastly, Mr. Al-Mansur having met the ***reasonable cause*** predicate, in support of that fact, both State and Federal law provide for cancellation of penalties for submission of other types of tax filings, such as sales and use tax reimbursements and personal income tax returns. Language similar to that used in Section 4985.2, subdivision (a), is used in both State and Federal law to mean delay in tax filings which the taxpayer cannot control by exercising ordinary care. (*See* Rev. & Tax. Code, § 6597; 26 U.S.C. § 6651[3], discussed *infra*.)

## **Fraud Is Sufficient**

---

[3]  26 U.S.C. § 6651. Failure to file tax return or to pay tax (a) Addition to the tax In case of failure— (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is ***due to reasonable cause and not due to willful neglect***, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;

**32**

**COMPLAINT**

118.  "***Fraud or other wrongdoing may be sufficient*** where the wrongdoing creates *"uncertainty about who owned the real property and was liable for payment of the property taxes."* (*Ashlan Park Venter LLC v. Crow (2015) 233 Cal.App.4th 1274, 1283.*, supra, at p. 1283.)

119.  Again, such was the case with the *fraudulent transfer of title* on the Market Street property. Reasonable cause and circumstances beyond Mr. Al-Mansur's control led to several years of litigation contesting rightful ownership, including liability for the real estate taxes that were assigned to the property.

120.  The Plaintiff may have asserted ownership throughout the litigation history relating to the subject property, yet the evidence shows that the Plaintiff pleaded *Fraud as an Allegation, Cause of Action and/or Claim in every litigative forum.* As evidenced in the following State and Federal cases:

- Alameda County Superior Court **RG13672772**, *Al-Mansur vs. Gross*, Complaint: Quiet Title, Slander of Title and *Fraud*

- United States District Court, Northern District Court of California **C12-5535 SBA**, *Al-Mansur vs. Barry Gross, Gross Mortgage Corporation, Contractors Capital Corporation* Complaint for Declaratory Judgement, , page 5, line 12, paragraph 11;

- United States District Court, Northern District Court of California **C12-5535 SBA**, *Al-Mansur vs. Barry Gross, Gross Mortgage Corporation, Contractors Capital Corporation* and **13-0399 PJH**, [Witness Statement] *Notarized Affidavit of Facts in Support of Complaint for Declaratory Judgement* and Alameda County Superior Court **RG12654035**, *Al-Mansur vs. Gross, Affidavit of Facts in Support of Petitioner,* page 3, line 10, paragraph 11;

**COMPLAINT**

33

- Alameda County Superior Court **RG12654035**, *Gross vs. Al-Mansur*, Causes of Action [Defendants]: "Ex Parte Motion to Dismiss for Lack of Standing; **_Fraud_** and Deceit – Intentional Misrepresentation of Fact; **_Fraud_** and Deceit – Suppression of Facts; **_Fraud_** and Deceit – Negligent Misrepresentation; **_Fraudulent_** Omissions; for **_Fraud_** " ;

- United States District Court, Northern District Court of California **C12-5535 SBA**, [Plaintiffs Application for Entry of Default] *Affidavit in Support of Application for Entry of Default* page 5, line 5;

- United States District Court, Northern District Court of California **C12-5535 SBA**, [Plaintiffs Application for Entry of Default] *Affidavit in Support of Application for Entry of Default* page 6, line 4;

- United States District Court, Northern District Court of California **C12-5535 SBA**, [Plaintiffs Application for Entry of Default] *Affidavit in Support of Application for Entry of Default* page 8, line 1.

121.  Assertions of ownership of real property in California must be supported by *documentary evidence*. Courts require that claims of ownership be substantiated by evidence of actual control, use, and *legal documentation that affirms the claimant's rights to the property. In re Estate of Williams*, 36 Cal.2d 289 (1950) (**Holding**: *The California Supreme Court held that **clear and convincing evidence is required to establish ownership** through a deed, particularly when the validity of the deed is in question.*)

122.  Due to the substantial fraud and slandering of the title committed by the parties in United States District Court, Northern District Court of California **C12-5535 SBA**, *Al-Mansur vs. Barry Gross, Gross Mortgage Corporation, Contractors*

**COMPLAINT**

*Capital Corporation*, the Plaintiff was unable to provide any *documentary evidence* or *documentation that would affirm his assertions of ownership*.

123. *In re West v. Robert Mondavi Corp.*, 109 Cal.App.4th 1071 (2003) (**Holding:** *The court highlighted that **mere statements or assertions of ownership are insufficient** without corresponding actions or evidence demonstrating control or dominion over the property*.)

124. However, in United States District Court, Northern District Court of California **C12-5535 SBA**, *Al-Mansur vs. Barry Gross, Gross Mortgage Corporation, Contractors Capital Corporation* the Defendants **DEFAULTED**, and the Plaintiff was granted a Clerk's Default by Application and Affidavit. *See In re R & T Creditors v. State Board of Equalization*, 128 Cal.App.4th 1081 (2005); also, *Sherwood Partners, Inc. v. EOP-Marina Business Center, L.L.C.*, 153 Cal.App.4th 977 (2007). (**EXHIBIT I**)

125. In the context of the 9th Circuit Federal District Courts and other federal courts, when a party defaults and fails to answer a complaint for Declaratory Judgment with *allegations of Fraud and Extrinsic Fraud*, and the prevailing party is granted a Clerk's Default by Application and Affidavit, the *courts treat the default as a significant admission of the allegations* in the Complaint.

126. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987): Affirmed that a Default Judgment entered by a Clerk of the Court establishes, as a matter of law, *that the Defendant is liable to the Plaintiff as to the Causes of Action* alleged in the Complaint.

**COMPLAINT**

35

127.   In United States District Court, Northern District Court of California **C12-5535 SBA**, *Al-Mansur vs. Barry Gross, Gross Mortgage Corporation, Contractors Capital Corporation,* the Complaint for Declaratory Judgement, Memorandum of Points and Authorities in Support, Application for Entry of Default and the accompanying Affidavits demonstrated that the allegations in the Complaint for Declaratory Judgment were well-plead and meet the necessary legal standards, including those allegations for *Fraud and Extrinsic Fraud.*

128.   In United States District Court, Northern District Court of California **C12-5535 SBA**, *Al-Mansur vs. Barry Gross, Gross Mortgage Corporation, Contractors Capital Corporation,* the Complaint for Declaratory Judgement, Memorandum of Points and Authorities in Support, Application for Entry of Default and the accompanying Affidavits met the *Eitel Factors.*

129.   *See In re Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986): The court identified several factors to consider when determining whether to enter a default judgment, including the sufficiency of the Complaint and the merits of the Plaintiff's substantive claims.

130.   Plaintiff met the *Fraud* Predicates under Revenue and Taxation Code § 4985.2, which provides a mechanism for canceling tax-related penalties when *Fraud* is involved, whether the *Fraud* is perpetrated by *tax authorities*, *third parties, or through identity theft*. The Plaintiff provided a compelling case supported by evidence that has demonstrated the presence of *Fraud* in previous litigations.

131.   Again, considering the *Strumpfer* decision, the Appellate and the California Supreme Court agree that section under Revenue and Taxation Code 4985.2

**COMPLAINT**

requires the Tax Collector to cancel a tax penalty if the taxpayer establishes the factual predicates described in either subdivision (a) or (b). In this case, Mr. Al-Mansur met all the predicates mandated by Revenue and Taxation Code Section 4985.2 subdivisions (a) and (b) including substantial *Fraud.*

132.    Thus, in the instant case, a *waiver of all penalties, interests and fees is mandatory* because the Plaintiff has established the requisite factual predicates. (See *AvalonBay Communities, Inc. v. County of Los Angeles;* 197 Cal.App.4th 890 , 898-899 [discussing the interpretation of similar language in Rev. & Tax. Code, § 4985.2 ] also *Gajanan Inc. et al., Plaintiffs and Respondents, v. City and County of San Francisco* (2011), 2022 *BL 139594.*

## **Principal Payment for the Proper Amount of Tax Due**

133.    In order to meet the remaining criteria of Revenue and Taxation Code §4985.2(a), Mr. Al-Mansur was required to provide:

" . . . *the principal payment for the proper amount of the tax due . . . no later than June 30 of the fourth fiscal year following the fiscal year in which the tax became delinquent.*"

134.    The Plaintiff did so by delivering to the Tax Collector's office a certified check for the full amount of the principal tax on February 19, 2020.

135.    The statutory language in Revenue and Taxation Code § 4985.2 (a) is clear and unambiguous. It calls for the "principal payment of the proper amount of the tax due". It does ***not*** state that the principal payment of the proper amount of

**COMPLAINT**

37

the tax due must be paid ". . . *along* with all penalties, costs and interest accrued on the principal tax due."

136.  The fundamental task of statutory interpretation is to determine the Legislature's intent in order to effectuate the purpose of the law. *People v. Lewis,* (2021) 11 Cal. 5th 952, 961.

137.  Examining the words of a statute is the first interpretive step, including affording the words of the law a plain and commonsense meaning. *People v. Gonzales* (2018) 6 Cal.5th 44, 55. "If the language is clear, courts must generally, follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." *City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616.

138.  The words used in Revenue and Taxation Code § 4985.2(a) are plain. They do not require any special construction to understand that the Legislature intended to provide relief from penalties for a select group of taxpayers.

139.  In *Marlton Recovery Partners LLC v. Cty. of Los Angeles* (2015) 242 Cal App.4th 510, 514, respondent County of Los Angeles and Mark Saladino, the Treasurer-Tax collector for the County of Los Angeles, refused to cancel tax penalties where the principal payment of the proper amount of the tax due was **not** paid by *Marlton.*

140.  According to a letter written by Tax Collector Saladino,

**COMPLAINT**

38

*"As the statute indicates, the principal amount of the taxes must be paid first in order for a cancellation request to be granted. Our records indicate that the principal amount of taxes has not been paid on the Property since the 2005/2006 tax year except for some parcels regarding the 2011/2012 tax year. Consequently, penalties cannot be cancelled for the tax years where the principal amount has not been paid."*

141.  In the *Marlton* case, the letter of the LA County Tax Collector confirms the requirements under Revenue and Taxation Code § 4985.2(a). In doing so, the Tax Collector also affirms the precise steps taken by the Plaintiff, Mr. Al-Mansur, in this action as he sought relief from the penalties and costs assessed on Market Street property taxes.

142.  Mr. Al-Mansur tendered a certified check for the *"principal amount of the tax due"* (*but 134 days later, the Defendant, Collector Levy rejected his payment.*). After doing so, Mr. Al-Mansur requested that " . . . ***any penalties, costs and other charges . . .*** " *be cancelled.*

143.  However, the Collector would only agree to cancel four years of penalties despite the fact that, when the requirements of Revenue and Taxation Code § 4985.2(a) are met, the tax collector is divested of any discretion concerning cancellation of the accrued penalties and costs. *Ashlan Park Center LLC u. Crow,* (2015) 233 Cal. App.4th 1274,1280 quoting *People ex rel Strumpfer v. Westoaks Investment #27,* (2006), 139 Cal. App.4th 1039, 1050

144.  The decision by Defendant Levy to reject Mr. Al-Mansur's payment, deny cancellation of the delinquent penalties and fees and ultimately follow through

**COMPLAINT**

1    on his threat to *take* Mr. Al-Mansur's Market Street property, is an abuse of
2    discretion and a Regulatory Taking by the Defendant Levy. The Alameda
3    County Defendants malicious and collusion constitute a violation of the
4    Takings Clause under the 5th Amendment of the US Constitution, among other
5    Constitutional violations

7  145.  An Administrative Official choosing to exercise statutory discretion must do so
8        in a manner that is consistent with a proper interpretation of the applicable law.
9        *Common Cause of California v Board of Supervisors of Los Angeles County,*
10       (1989) 49 Cal. App.3rd 432, 442; *Anderson v. Phillips* (1975) 13 Cal.3d 733,
11       737.

## **Principal Payment of Taxes Due (Revenue and Taxation Code Section 4985.2, subdivisions (a) and (b))**

16  146.  Contrary to the position of the County Attorney at page 5 of its opposition
17       (*RG21091455, Alameda County Superior Court, Opposition Alameda County*
18       *Tax Collector- Opposition to Application for Temporary Restraining*
19       *Order filed 02/08/2022*), the payment tendered by the Plaintiff under Revenue
20       and Taxation Code § 4985.2(a) wasn't a partial payment to be "*applied to*
21       *penalties, interest and costs before the balance can be applied to the taxes due.*"

23  147.  As discussed above, Revenue and Taxation Code § 4985.2(a) provides a special
24       legislative exemption for select taxpayers whose delinquent payments were
25       reasonably caused by circumstances beyond their control. Provided the [*entire*]
26       principal amount of the tax due is paid on a timely basis under the statute, the

**COMPLAINT**

penalties, costs and other expenses are to be cancelled once the statutory criteria have been met. See [**EXHIBIT G, EXHIBIT H**]

148. When the provisions of Revenue and Taxation Code § 4985.2(a) are satisfied as they are in this case, Defendant Levy lost any claimed power to reject the principal tax payment or to claim  the payment received should have been applied to claimed penalties, costs or other expenses.

149. Mr. Mansur provided a certified check for the full amount of the principal taxes due on the Market Street property. The fact that the Collector abused his authority by rejecting the payment or that Levy's office now claims the payment should have been applied to penalties doesn't cleanse the government's action of its illegality.

150. The Alameda County Defendants argue that they cannot separate taxes owed for specific tax years because, by statute, partial payments must first be applied to all penalties, interests and costs before the balance can be applied to taxes due. Revenue and Taxation Code §§ 2636, 2708. Revenue and Taxation Code Sections 2636, "Acceptance of Partial Payment" and Revenue and Taxation Code § 2708 "Partial Payment of Taxes" both provide:

151. **[1]** Notwithstanding *any other provision of law*, **[2]** *in the case of a* ***DEFICIENCY in the payment of taxes due*** **[3]** *and payable pursuant to this chapter*, **[4]** the tax collector, with the approval of the board of supervisors, may accept such partial payment from the taxpayer. Such partial payments are to be applied first to all penalties,  interest and costs with the balance being applied to the taxes due. The difference between the amount paid by the taxpayer and

**COMPLAINT**

the amount due shall be treated as a delinquent tax in the same manner as any other delinquent tax. Cal. Rev. & Tax. Code §§ 2636, 2708 (emphasis added).

152.   The Alameda County Defendants argument and references to *Rev. & Tax. Code §§ 2636, 2708, Revenue and Taxation Code sections 2636, "Acceptance of Partial Payment" and 2708 "Partial Payment of Taxes"* is **inapplicable** in this case.

153.   The Plaintiff, *Mr. Al-Mansur, paid the principal taxes in full, thus **there was no deficiency in the payment of taxes due***.

154.   Secondly, Mr. Al-Mansur's payment is a predicate of Section 4985.2 and must be paid to initiate the cancellation predicate. The required predicate in Section 4985.2(a) is **NOT** a *"partial payment"*.

## The *"Pay First, Litigate Later"* Rule Is Inapplicable

155.   In the Opposition (*RG21091455, Alameda County Superior Court, Opposition Alameda County Tax Collector- Opposition to Application for Temporary Restraining Order filed 02/08/2022*) brief filed by the County Attorney, the government cites the case of *First Aid Servs., Inc. v. California Employment Dev. Dept.* (2005) 133 Cal. App.4th 1470 for the proposition that Mr. Al-Mansur is required to pay his taxes first and then pursue administrative and judicial remedies later to recoup his payment.

156.   However, the '*pay first, litigate later*' rule is inapplicable to this case for several reasons.

**COMPLAINT**

157. Initially, Mr. Al-Mansur **DID** pay first. In compliance with the provisions of Revenue and Taxation Code Section 4985.2, subdivisions (a) and (b), the *Plaintiff hand-carried a certified check for the full amount of the principal taxes due* on his property to the office of the Tax Collector.

158. Contrary to law, Defendant Levy rejected the offered payment even though Mr. Al-Mansur's efforts satisfied all of the statutory criteria and prerequisites under Revenue and Taxation Code § 4985.2(a).

159. Secondly, the clear provisions of Revenue and Taxation Code § 4985.2(a) provide a narrow exception to the '*pay all taxes and penalties*' rule cited by the government. When a taxpayer such as Mr. Al-Mansur satisfies the *reasonable cause* provisions of the statute, the taxpayer is entitled to timely pay the *entire* principal amount of the tax due while also requesting relief from any penalties, costs and other charges.

160. Compliance with Revenue and Taxation Code § 4985.2(a) provides a limited statutory exception to the requirement that the taxpayer also pay all delinquent penalties. Collector Levy abused his assigned responsibilities by refusing to accept the principal tax payment and to dismiss the penalties as requested and mandated by law.

161. In the present case, Mr. Al-Mansur attempted to address the improprieties of the Alameda County Defendants, and the validity of several special assessments levied on his property in recent years for waste removal and ownership

registration filing before the Alameda Board of Supervisors after contacting, corresponding and speaking with Defendant, Shahidah Williams-Lacy, Esq.

162.    However, in February 2024, after contacting, corresponding and speaking with Defendant, Shahidah Williams-Lacy, Esq., Policy Director, District 5, Supervisor, Keith Carson's office, Mr. Al-Mansur was informed by the Defendant, Shahidah Williams-Lacy, Esq. that "*the office would not be able to assist you*" by Defendant, Shahidah Williams-Lacy, Esq.

163.    The Alameda County Regular or Penalty Assessment Appeal Filing Period states that such an Administrative Appeal may only be filed between July 2 and September 15 each year.

164.    Unfortunately, the Defendant, Shahidah Williams-Lacy, Esq., Policy Director, District 5, Supervisor, Keith Carson's office, declined to assist Mr. Al-Mansur in presenting or filing an Administrative Appeal before the Alameda County Board of Supervisors regarding the allegations and improprieties of the Alameda County Defendants, and in her refusal, failed in her *ministerial duties.[4]*

165.    Lastly, the "*pay first, litigate second*" *rule is negated* in a situation, as in the instant case, when the pursuit of administrative remedies are ". . . *inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.*"

---

[4]  A *'ministerial duty'* is one generally imposed upon a person in public office who, by virtue of that position, is obligated 'to perform in a prescribed manner required by law when a given state of facts exists.'" Flores v. Cal. Dep't of Corr. and Rehab., 224 Cal. App. 4th 199,205 (2014) (citations omitted).

**COMPLAINT**

166. See *In re Electric Refund Cases*, (2010) 184 Cal. App.4th 1490, 1503-1504; *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, (9th Cir. 2004) 370 F.3d 994, 1000).

## TAKING CLAUSE VIOLATIONS

167. Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector *affirms* his threat to Mr. Al-Mansur during the February 4th, 2020, meeting, when the Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector stated:

*"I will **take your property** and sell it to someone else"*.

168. Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, has *rejected* Mr. Al-Mansur's $149,946.82 timely payment, in full (pursuant to Revenue and Taxation Code § 4985.2(a) of the principal taxes due and has *refused* Mr. Al-Mansur's request for cancellation of all delinquent penalties, interests and fees.

169. Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, now *affirms and implements* the Regulatory Taking of Mr. Al-Mansur's property in violation of Federal and State Constitutional Takings Clause:

170. The **FIRST Taking Violation** occurred on or about **January 27, 2021**, the Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda

County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land, sent Mr. Al-Mansur a Notice of Sale of Tax Defaulted Property exhorting Mr. Al-Mansur to pay $379,010.49 in taxes, penalties, interests and fees to redeem his 2421 Market Street property on or before March 18, 2021. [**EXHIBIT J**]

171. In response, Mr. Al-Mansur filed an Application for Temporary Restraining Order and Preliminary Injunction to Halt Tax Sale on March 11, 2021, which languished, and ultimately was dismissed by the Plaintiff, Mr. Al-Mansur.

172. The Taking of the Market Street property was temporarily halted by the Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land from the noticed Tax Sale list on March 11, 2021, in response to a bankruptcy filing by one of the owners of the Market Street property.

173. The **SECOND Takings Violation**, the Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land *again* notified the Plaintiff, pursuant to a Notice of Sale issued **January 12, 2022**, that the Market Street property is again to be placed on the Tax Sale list with the new sale date identified as March 18, 2022. [**EXHIBIT K**]

**COMPLAINT**

46

## **AGENCY AND COLOR OF LAW ALLEGATIONS**

161. In this case, Plaintiff's 42 U.S.C. § 1983 claims are predicated on TWENTY underlying Constitutional Violations: **(1)**:Violation of Takings Clause, **(2)**:Financial Elder Abuse: *Taking,* **(3)**:Violation of Excessive Fines Clause, **(4)**:Violation of Due Process Clause, **(5)**:Violation of Equal Protection Clause, **(6)**:Fraud (Rule 9(b)), **(7)**:Fraudulent Deprivation of Property, **(8)**:Fraud and Misrepresentation, **(9)**:*Monell Liability,* **(10)**:Intentional Malice, **(11)**:Failed Ministerial Duty, **(12)**:Inverse Condemnation, **(13)**:Disparate Impact-Fair Housing Act (FHA), **(14)**: Equitable Estoppel, **(15)**:*Right to Liberty* (Cal. Const. Art. 2, § **1**), **(16)**:*Right to Liberty* (Cal. Const. Art. 2, § **7**), **(17)**:*Right to Liberty* (Cal. Const. Art. 2, § **19**), **(18)**:*Misrepresentation by a Taxing Authority*: (Violation of the California Civil Code §§ 1709-1710; Violation of the California Revenue and Taxation Code §§ 5900-5911), **(19)**:*Violation of the California Taxpayers' Bill of Rights*, **(20)**:Violations:(*Fraudulent Claims*): *Civil Code, and Revenue and Taxation Code* (California Penal Code § 72; California Revenue and Taxation Code §§ 12601, 12641, 13002, 13004, 26100; California Civil Code §§ 1709-1710).

162. To state a claim under 42 U.S.C. § 1983, a Plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 is not itself a source of substantive rights, but a jurisdictional vehicle for vindicating federal rights elsewhere conferred. See *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2008).

163. **Alameda County DEFENDANTS** are duly authorized employees and agents of the **COUNTY OF ALAMEDA**, who were acting under color of law within the course & scope of their respective duties as Alameda County Treasurer-Tax Collector, Alameda County Chief Deputy Tax Collector, Alameda County Tax Collector Specialist-Tax Defaulted Land Director, Alameda County Tax Specialist-Secured Delinquent Taxes, Alameda County Policy Director, 5th District, Board of Supervisors and with the complete authority and ratification of their principal, Defendant Alameda County.

164. Each of the DEFENDANTS including the **COUNTY OF ALAMEDA**, their employees and agents, participated personally, in the unlawful conduct challenged herein and, to the extent that they did not personally participate, authorized, acquiesced, set in motion, or otherwise failed to take necessary steps to prevent the acts that resulted in the unlawful conduct and the harm suffered by Plaintiff. The challenged acts were a substantial factor and the but-for cause of the violations of Plaintiff's rights resulting in damages herein.

## **FEDERAL FRAUD CLAIM (SCIENTER ACT)**

165. Plaintiff incorporates all preceding allegations set forth in paragraphs 1-164 as if fully rewritten herein.

166. California taxing authorities such as the Defendants, including the California State Board of Equalization (BOE), are involved in programs that have federal oversight and involve federal funding. In such cases, false or misleading statements made to the California State Board of Equalization (BOE), State Auditors, Commissioners and other agencies can fall under federal statutes like

**COMPLAINT**

18 U.S.C. § 1001, particularly when the matters involve federal funds, joint federal-state programs, or tax information shared with federal authorities, thus bringing them within the jurisdiction of a federal agency

167. The Scienter Act (18 U.S.C. § 1001) prohibits knowingly and willfully making a false or misleading statement to a government agency. Plaintiff has established a number of Claims under the Scienter Act, Plaintiff has plead all Claims for Relief under the framework of the following elements with application, particularity and relevance under Federal Rule of Civil Procedure 9(b):[5]

1. **Fraudulent Conduct:** the Defendant's, acting with intent to defraud, knowingly and willfully failed to present for allowance the Plaintiff's full payment to the appropriate State Auditors, Commissioners and the State Board of Equalization, in contravention to California Revenue and Taxation Codes §§ 2601-2616, 4717, California Government Codes §§ 24353, 68101, 68085 and in violation of the California Penal Code § 72, thereby depriving the Plaintiff of his property rights, subjecting him to unjust financial penalties and potential property loss.

2. Defendant knowingly presented false and fraudulent claims to the California State Auditors, Commissioners and the State Board of Equalization, by asserting that the Plaintiff's property taxes were delinquent, which resulted in the wrongful assessment of additional penalties and the improper listing of the Plaintiff's property as delinquent.

3. The placement of Plaintiff's property on the Delinquent Property Tax list constituted a false claim, as the property was not legally or factually delinquent.

---

[5] *United States v. Gaudium*, 46 F.3d 147 (9th Cir. 1995): This case established the pleading standard for federal fraud claims under Rule 9(b); *United States v. Blaszczak*, 518 F.3d 1026 (9th Cir. 2008): This case clarifies the elements of a federal fraud claim and the need for particularity in pleading.

49

**COMPLAINT**

4.     **False or Misleading Statement:** The Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector initial acceptance of Plaintiffs payment, acceptance of Plaintiffs request for cancellation of penalties, interest and fees, waiver of penalties and fees was an explicit representation that Plaintiff met all requirements and would not face additional financial burdens. The subsequent rescission of the waiver contradicts this initial representation.

5.     **Materiality:** The rejection of $149,946.82, which represents the principal payment of taxes due pursuant to Revenue and Taxation Code § 4985.2 subdivision (a) and (b), waiver of penalties and fees is material because it significantly impacts the financial obligations associated with the property.

6.     **Scienter: As mentioned above and herein,** Plaintiff has plead with particularity that the Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, and the Defendant's knowingly and willfully made a number of false statements and failed to present for allowance the Plaintiff's full payment to the appropriate State Auditors, Commissioners and the State Board of Equalization, in contravention to California Revenue and Taxation Codes §§ 2601-2616, 4717, California Government Codes §§ 24353, 68101, 68085 and in violation of the California Penal Code § 72, thereby depriving the Plaintiff of his property rights, subjecting him to unjust financial penalties and potential property loss.

7.     Plaintiff has achieved the elements of the Scienter Act by providing evidence and facts that the Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector actions are subject to Federal Jurisdiction, and as a result lacked a good faith basis for the *delayed notification of a perceived underpayment*, rejection of the principal payment, in full of taxes due and cancellation of the initial waiver and that the rescission was not due to a legitimate error.

**COMPLAINT**

50

8.      **Reliance:** Plaintiff relied on the payment of $149,946.82, which represents the principal payment of taxes due pursuant to Revenue and Taxation Code § 4985.2 and the initial waiver as a good faith, altering the Plaintiffs financial plans, investment backed expectations and economic decisions regarding the property.

9.      **Injury:** The rejection of the $149,946.82, which represents the principal payment of taxes due pursuant to Revenue and Taxation Code § 4985.2 subdivision (a) and (b), rescission of the waiver caused harm to Plaintiff and the threat of property loss. The Defendants violations: (1) "***has placed*** an *economic impact and burden* upon the Plaintiff," (2) "***has*** interfered with distinct *investment-backed expectations*" of the Plaintiff and (3) "the *character of the governmental action* is ***arbitrary and capricious*** and disproportionately targets Plaintiff, leading to an unjust and significant financial hardship." *Penn Central Transportation Co. v. City of New York,* 438 U.S. at 124, 98 S.Ct. 2646.

## IN SUPPORT OF NINTH CLAIM FOR RELIEF: VIOLATION OF 14TH AMENDMENT: *MONELL LIABILITY*

168.    Plaintiff incorporates by this reference the allegations set forth in paragraphs 165-167 as though set forth fully herein.

169.    At all times material herein, since the 2015–2016 Alameda County Grand Jury Report, the **Alameda County Defendants** knew, or should have reasonably known, regarding the lack of ethical policies at the Alameda County departmental level which has led to allegations of abuse of their authority and mistreatment of citizens.

170.    The **Alameda County Defendants**, are surely aware of the findings of the 2022–2023 Alameda County Grand Jury Final Report, which again has found

**COMPLAINT**

51

the abuse and mistreatment of citizens to be true, and [again] recommending policies to eliminate it, as they recommended in the 2015–2016 Alameda County Grand Jury report

171. A complaint filed with the 2022–2023 Alameda County Grand Jury claimed that the Alameda County Board of Supervisors has taken no action to implement the 2015–2016 Grand Jury recommendation that *Alameda County adopt a code of ethics policy, including a mechanism for reporting unethical conduct, covering all county employees.*

172. *Status of Alameda County Ethics Policy and Code of Conduct;* To determine the status and availability of an Alameda County ethics policy, code of conduct, and whistleblower program, the Grand Jury searched the Alameda County Board of Supervisors and agency websites for relevant documents and asked County Officials and Managers about the status and disposition of such documents.

173. *Neither witnesses nor web searches produced any ethics policy, code of conduct or whistleblower program. **None of the elected or appointed county officials*** that spoke with the Grand Jury could provide or point the Grand Jury to an ethics policy or code of conduct that applied to all county officials and employees.

**COMPLAINT**

174.    Page 66 of the 2022-2023 *Alameda County Grand Jury Report:* **[EXHIBIT M]**;

Table 1 - Bay Area Counties with Established Ethics Programs

| Bay Area County | Countywide Ethics Policy | Countywide Code of Ethical Conduct | Whistleblower Program | Utilizes Outsource Company/Document Handling Software |
|---|---|---|---|---|
| Alameda | No | No | No | |
| Contra Costa | No* | No | Yes (Welfare fraud and Gov Corruption) | |
| Marin | Yes | Yes | Yes | |
| Napa | Yes | ? | Yes (Health & Human Services Compliance Line) | |
| San Francisco | Ethics Commission | Yes | Yes with a robust public facing interface and annual report of complaints/disposition | Granicus (online submissions) |
| San Mateo | Yes | Yes | Yes with an easy to use reporting mechanism | Navex Global/Ethicspoint |
| Santa Clara | AB1234 training | Yes | Yes with an annual report of complaints/disposition | Lighthouse Services |
| Santa Cruz | ** | Yes*** | Yes | |
| Solano | No**** | No | Yes | |
| Sonoma | AB1234 training | Yes-Probation Dept | Yes | |

See also **[EXHIBIT L]**

175.    By inadequately supervising, training, controlling, and disciplining COUNTY OF ALAMEDA ('Alameda County'), Defendants agents and employees, and failing to institute recommended policies, and by maintaining unconstitutional policies, customs, and practices, the actions and allegations by the Alameda County Defendants were done with a deliberate indifference to citizens' rights, causing Plaintiff's loss of rights.

176.    As evidenced by the recommendations of the 2015–2023 Alameda County Grand Jury reports, the Alameda County Defendants and other officials and agents, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged herein.

**COMPLAINT**

177. Despite having knowledge as stated above, the Alameda County Defendants and agents condoned, tolerated and through actions and inactions thereby ratified such policies.

178. As determined and discovered by the 2015–2023 Alameda County Grand Jury reports, the Alameda County Defendants and agents acted with deliberate indifference to the foreseeable consequences of policies with respect to Plaintiff's constitutional rights.

179. The Alameda County Defendants continued the unethical behavior as identified by the 2015–2023 Alameda County Grand Jury reports, by perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and wrongful acts, acted with intentional, reckless, and callous disregard for the constitutional rights of the citizens of Alameda County and the Plaintiff.

180. Excerpt from the **2022-2023 Alameda County Grand Jury Report**:

> "*Alameda County has __no ethics policy__ or code of conduct that applies to all county officials, employees, vendors and volunteers. The County also lacks a whistleblower program for use by employees and the general public. Despite repeated findings from prior Grand Juries on ethical violations, and a specific recommendation to establish an ethics policy and reporting mechanism in 2015, the Board of Supervisors has not acted for nearly a decade. Alameda County's lack of an Ethics Policy and Code of Conduct specific to the County __indicates that ethical government is not a priority.__*"
>
> **[EXHIBIT M;** *Conclusion*", Page 68]

**COMPLAINT**

54

181.   Where an agency is uncertain about the effects of an agency action, it may not rely on "'*substantial uncertainty*' as a justification for its actions." *Greater Yellowstone Coal., Inc. v. Servheen*, 665 F.3d 1015, 1028 (9th Cir. 2011).

182.   Instead, it must "*rationally explain why the uncertainty*" supports the chosen approach. Id. Finally, **an agency's "*internally inconsistent analysis*" in its rule "*is arbitrary and capricious*.**" *Nat'l Parks Conservation Ass'n v. EPA*, 788 F.3d 1134, 1141 (9th Cir. 2015).

183.   The unethical policies, practices, and customs implemented, maintained and willfully accepted by the Defendants in this case, are affirmatively linked to the lack of an Agency, Countywide and Departmental Ethics Policy, resulting in the violations of Plaintiff's Constitutional Rights, and causing Plaintiff to suffer actual Real Property losses.

# FEDERAL CIVIL RIGHTS CLAIMS

### FIRST CLAIM FOR RELIEF
### FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983)
### VIOLATION OF TAKINGS CLAUSE OF THE 5TH AMENDMENT
### (against all defendants and conspirators)

184.   Plaintiff incorporates by this reference the allegations set forth in paragraphs 168-183 as though set forth fully herein.

185.   Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, failed to notify Plaintiff within the statutory period,

**COMPLAINT**

*rejected* Mr. Al-Mansur's $149,946.82 timely payment (pursuant to Revenue and Taxation Code § 4985.2) of the principal taxes due and *refused* Mr. Al-Mansur's request for cancellation of all delinquent penalties, interests and fees in contravention to Revenue and Taxation Code § 4985.2.

186.  Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, placed and advertised the Plaintiff's property on the Alameda County Delinquent Property Tax Auction list and fraudulently advertising the Plaintiffs property as available for bidding on BID4ASSETS.COM, on or around August 3, 2020.

187.  Thus, *affirming and implementing* the Regulatory Taking of the Plaintiffs property in violation of the Plaintiffs Federal Civil Rights pursuant to 42 U.S.C. § 1983 under the Takings Clause of the 5th Amendment:

188.  The **FIRST** violation of the Plaintiffs Federal Civil Rights pursuant to 42 U.S.C. § 1983 under the Takings Clause of the 5th Amendment occurred on or about **January 27, 2021**, the Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land, sent Mr. Al-Mansur a Notice of Sale of Tax Defaulted Property exhorting Mr. Al-Mansur to pay $379,010.49 in taxes, penalties, interests and fees to redeem his 2421 Market Street property on or before March 18, 2021. [**EXHIBIT J**].

**COMPLAINT**

189. The **SECOND** violation of the Plaintiffs Federal Civil Rights pursuant to 42 U.S.C. § 1983 under the Takings Clause of the 5th Amendment, the Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land *again* notified the Plaintiff, pursuant to a Notice issued **January 12, 2022**, that the Market Street property is again to be placed on the Alameda County Delinquent Taxes list with the new auction date identified as March 18, 2022. [**EXHIBIT K**]

190. Defendant's conduct, as described above, constitutes a violation of the Plaintiffs Federal Civil Rights pursuant to 42 U.S.C. § 1983 under the Takings Clause of the 5th Amendment

191. SCOTUS held "the Fifth Amendment...was designed to bar Government from forcing people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005) (internal quotation marks omitted). (quoting *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960)).

192. In essence, under the *Penn Central* analysis for Regulatory Takings claim, *government action that singles out a landowner from similarly situated landowners raises the specter of a Regulatory Taking.*

193. *Penn Central* requires that the Court consider: (1) "[t]he *economic impact* of the regulation on the claimant," (2) "the extent to which the regulation has

**COMPLAINT**

interfered with distinct *investment-backed expectations*," and (3) "the *character of the governmental action*." 438 U.S. at 124, 98 S.Ct. 2646.

194.  The ***first and second*** *Penn Central factors are the primary factors. Lingle*, 544 U.S. at 538–39, 125 S.Ct. 2074. "The outcome [of this inquiry] ... depends largely upon the particular circumstances [in the] case" at hand. *Palazzolo*, 533 U.S. at 633, 121 S.Ct. 2448 (O'Connor, J., concurring) (quoting *Penn Central*, 438 U.S. at 124, 98 S.Ct. 2646) (internal quotation marks omitted).

195.  Under the *Penn Central analysis*, the Defendant's actions have imposed an economic disincentive burden, effectively amounting to a violation of the Plaintiffs Federal Civil Rights pursuant to 42 U.S.C. § 1983 under the Takings Clause of the 5th Amendment of the Plaintiff's property:

- **Economic Impact of the Defendant's Violations**: The Defendants violations have caused a significant diminution in the economic value of Plaintiff's property. Prior to the violations, the property was valued at $1,300,000. After the violations, based upon a very conservative estimate, the property's value has decreased to $600,000, representing a 47% decrease in the property value or an actual dollar amount of $600,000 in lost value. [6]

- **Interference with Investment-Backed Expectations**: Plaintiff inherited the property with the reasonable expectation of keeping the

---

[6] Considering the imposed financial burden and the negative impact of the property being placed on the Delinquent Property Tax Sale List, a conservative estimate might assume a significant reduction in value. The exact decrease can vary, but for the purposes of this estimate, a typical range for properties under such distress could see a 20-50% reduction in value, depending on local market conditions and buyer perception.

**COMPLAINT**

property as intended and imposed by the estate's inheritance agreement between the Plaintiff and his deceased Grandmother. The Defendants violations have directly interfered with these expectations, rendering the intended use economically unfeasible and at risk of loss.

- **Character of the Governmental Action**: The Defendants violations constitute a severe restriction on Plaintiff's property rights and function more as a physical invasion. The character of Defendant's action in refusing the Plaintiffs principal payment in full of the principal taxes due, failing to notify Plaintiff of any underpayment withing the statutory period, rescinding the waiver and placing the property on the delinquent tax sale is *arbitrary and capricious*. It constitutes an unfair economic burden on Plaintiff that lacks a legitimate public purpose. This specific violation disproportionately targets Plaintiff, leading to an unjust and significant financial hardship.

196. The United States Supreme Court has repeatedly held that the property rights protected by the Takings Clause are those property rights created by State law. *Ruckelshaus v. Monsanto Co.,* U.S. at 104 S.Ct. at 2872; *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 161, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980).

197. The California Constitution expressly delegates power to cities and counties. The Alameda County Defendants have the power to create and enforce laws to protect public health and safety to the extent they do not conflict with California state laws. See *Cal. Const.* Article XI §7; *Miller v. Board of Public Works*, 195

**COMPLAINT**

1  Cal. 477 (1925). However, an entity's authoritative power is restricted by U.S.

2  Constitutional 5th Amendment "Takings Clause" as well as Due Process and

3  Equal Protection.

4

5  198. The Plaintiff has succeeded in proving a Takings Violation and a substantive

6  Due Process claim, the Plaintiff has clearly demonstrated that he was deprived

7  of a constitutionally protected *property interest*." *Gerhart v. Lake Cnty.,*

8  *Montana,* 637 F.3d 1013, 1019 (9th Cir. 2011).

9

10  199. Thus, it is undisputed that the Plaintiff has a protectable *property interest* and

11  has a "legitimate claim of *entitlement* to it." i.e. "The Property"

12

13  200. There are "physical takings and regulatory takings." *Tahoe-Sierra Preservation*

14  *Council,* 535 U.S. at 321. In the latter type of taking, the Fifth Amendment is

15  violated if the government regulation "*does not substantially advance*

16  *legitimate state interests* **or** denies an owner economically viable use of his

17  land." *Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1016 (1992) (quoting

18  *Agins v. Tiburon,* 447 U.S. 255, 260 (1980)).

19

20  201. *The Nollan Principle,* [citation] *Nollan v. California Coastal Commission,* 483

21  U.S. 825, 107 S. Ct. 3141 (1987); Established that a government regulation can

22  be a Taking if the *demanded condition* [*of charging excessive penalties, fees*

23  *and interest*] is not an "*essential nexus*" to the public purpose [*of collecting*

24  *taxes pursuant to the Revenue and Taxation Code*].

25

26  202. In this case, the Defendants, **Henry C. Levy**, in his official capacity as Alameda

27  County Treasurer-Tax Collector and **Julie P. Manaois**, in her official capacity

28

**COMPLAINT**

60

as Alameda County Chief Deputy Tax Collector, failing to notify Plaintiff within the statutory period, *refusing* the Plaintiff's *principal* payment of delinquent past due taxes, in full and *rescinded* the cancellation of penalties, interests and fees for an arbitrary reason unrelated to collecting the *principal* delinquent taxes, for which the Plaintiff argues constitutes a violation of his Federal Civil Rights pursuant to 42 U.S.C. § 1983 under the Takings Clause of the 5th Amendment and a violation of the *Nollan Principle*.

203. In summation, the Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, abused his discretion by *demanding a condition* [*of charging excessive penalties, fees and interest*] which is not an "*essential nexus*" to the public purpose [*of collecting taxes pursuant to the Revenue and Taxation Code*]. See *California Revenue & Taxation Codes §§ 2602, 2614, 2615, California Government Codes §§ 24001 and 27001*

204. As a matter of law and precedence, a *Regulatory* Takings claim does not have to explicitly allege that the Taking was for public use. *Mot. at 13* (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S.104, 123 (1978) and *Berman v. Parker*, 348 U.S. 26, 31-33 (1954)).

205. In fact, the Supreme Court has held that "*neither a physical appropriation nor a public use* has ever been a necessary component of a '*Regulatory Taking.*'" *Tahoe-Sierra Preservation Council*, 535 U.S. at 326 (emphasis added).

206. The Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity

**COMPLAINT**

as Alameda County Tax Collector Specialist-Tax Defaulted Land, unjust enforcement and imposition caused a complete *Regulatory and Physical Taking of Plaintiff's property* without just compensation as a violation of his Federal Civil Rights pursuant to 42 U.S.C. § 1983 under the Takings Clause of the 5th Amendment and a violation of the *Nollan Principle*.

207.   The effect of Defendants' intentional, malicious acts was designed to cause maximum harm, with evil aforethought, and constituted an unconstitutional violation of the Taking Clause under the 5th Amendment of the United States Constitution under the *Nollan Principle*.

208.   In addition, the Plaintiff has met the factors outlined in *Penn-Central's* three-factor test *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978).

209.   Relying on *Nollan Principle and* having met all the *factors* of the *Penn Central Transportation Co. v. City of New York* at 469, "*analysis*", the Plaintiff contends that a Taking occurred when the Alameda County Defendants unconstitutional violation of the Taking Clause under the 5th Amendment of the United States Constitution satisfied the following factors:

210.   The Defendants violations: (1) "***has placed*** an *economic impact and burden* upon the Plaintiff," (2) "***has*** interfered with distinct *investment-backed expectations*" of the Plaintiff and (3) "the *character of the governmental action is **arbitrary and capricious** and disproportionately targets Plaintiff, leading to an unjust and significant financial hardship.*" Penn Central Transportation Co. v. City of New York, 438 U.S. at 124, 98 S.Ct. 2646.

**COMPLAINT**

211. By performing the alleged acts in the manner described Alameda County Defendants directly and proximately harmed plaintiff, as herein alleged, entitling Plaintiff to recover damages for said constitutional violations pursuant to 42 U.S.C. §1983.

212. Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to Constitutional & Property Rights unless Alameda County Defendants are enjoined from implementing and enforcing the deprivation of the Plaintiff's Real Property via the Alameda County Delinquent Tax Auction.

213. Pursuant to 42 USC §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief, to invalidate and restrain enforcement of unconstitutional deprivation of the Plaintiff's Real Property via the Alameda County Delinquent Tax Auction.

214. Consequently, pursuant to 42 USC §§ 1983 and 1988, the Plaintiff is requesting and entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief, to invalidate and restrain the enforcement of the unconstitutional violation of the Taking Clause under the 5th Amendment of the United States Constitution of Plaintiff's Real Property.

215. Plaintiff found it necessary to engage counsel to vindicate legal rights. Plaintiff is entitled to attorney fees under 42 USC § 1988 (enforced by § 1983) and Cal. CCP § 1036 (attorney fees for "inverse condemnation") and as alleged herein.

**COMPLAINT**

**SECOND CLAIM FOR RELIEF**
**FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983)**
**FINANCIAL ELDER ABUSE**
**VIOLATION OF THE TAKINGS CLAUSE**
**UNDER THE 5TH AMENDMENT**
**(against all defendants and conspirators)**

216.  Plaintiff incorporates by this reference the allegations set forth in paragraphs 184-215 as though set forth fully herein.

217.  As of March 2022, Plaintiff has met the Financial Elder Abuse age threshold for protected status at the time of the allegations of misconduct by the Defendants. The threshold is typically 65 years of age. See, e.g., *Cal. Welf. & Inst. Code* § 15610.27.

218.  The Takings Clause violations on January 27th, 2021, and January 12th, 2022, may have occurred before the Plaintiff turned 65 years of age. However, the continued retention of the Plaintiff's property on the tax sale list past March 2022, after the Plaintiff turned 65 years of age, supports an ongoing and continuous act of financial abuse.

219.  Under the Elder Abuse statute, wrongful retention of property, particularly in the context of a property sale, can constitute financial elder abuse, especially when the Plaintiff has reached the age threshold and the property remains subject to sale. *Paterno v. State of California*, 113 Cal. App. 4th 998 (2003); *Mahan v. Charles W. Chan Insurance Agency, Inc.*, 14 Cal. App. 5th 841 (2017); *Conservatorship of Gregory D. Noe*, 241 Cal. App. 4th 508 (2015)

**COMPLAINT**

64

220. *Financial Abuse* of an elder victim ordinarily requires that a *person* or *entity takes*, secretes, appropriates, or *retains property of the victim, or assists with the taking*, secreting, appropriating, or *retention of property*, for a wrongful use or *with intent to defraud. California Welfare & Institutions Code* § 15610.30; *Knox v. Dean*, 205 Cal. App. 4th 417, 140 Cal. Rptr. 3d 569 (4th Dist. 2012) (exploitation of victim's property by caregiver); *Bonfigli v. Strachan*, 192 Cal. App. 4th 1302, 122 Cal. Rptr. 3d 447 (1st Dist. 2011), as modified on denial of reh'g, (Mar. 24, 2011); *Hoffart v. Wiggins*, 226 Or. App. 545, 204 P.3d 173 (2009) (wrongful retention). Assisting another in performing any of these actions will suffice to create liability as well. *Cal. Welf. & Inst. Code* § 15610.30(a)(2), (3).

221. *A claim of Financial Elder Abuse arises when an elder or dependent adult is deprived of any property right*, whether or not the property is held directly by the victim or the victim's representative. The claim may arise therefore by means of any agreement, donative transfer, or testamentary bequest. *Cal. Welf. & Inst. Code* § 15610.30(c). The claim is often statutorily defined in the alternative as ***taking or retaining property*** [i.e. *Taking Clause of the 5th Amendment*] either for a wrongful use or with a *fraudulent intent. Cal. Welf. & Inst. Code* § 15610.30(a)(1); 34 V.I.C. § 470(a).

222. The Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land in the preceding allegations and those alleged in this specific claim constitute

Financial Elder Abuse under California Welfare & Institutions Code § 15610.30, as they involved the *Taking* and appropriating of Plaintiff's property for wrongful use and with *intent to defraud*.

223. The Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land, failed to notify Plaintiff within the statutory period of any underpayment, *rejected* Mr. Al-Mansur's $149,946.82 timely payment (pursuant to Revenue and Taxation Code § 4985.2 subdivision (a) and (b)) of the principal taxes due and *refused* Mr. Al-Mansur's request for cancellation of all delinquent penalties, interests and fees in contravention to Revenue and Taxation Code § 4985.2.

224. The Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land, placed and advertised the Plaintiff's property on the Alameda County Delinquent Property Tax Auction list and maliciously advertised the Plaintiffs property as available for bidding on BID4ASSETS.COM, on or around August 3, 2020.

225. Thus, *affirming and implementing* the Regulatory Taking of the Plaintiffs property in violation of the Plaintiffs Federal Civil Rights pursuant to 42 U.S.C. § 1983 and allegations of Financial Elder Abuse and violation of the Takings Clause under the 5th Amendment of the United States Constitution.

226. It can be inferred that the Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land and **Shahidah J. Williams (Lacy)**, in her official capacity as Alameda County Policy Director, 5th District, Board of Supervisors, had *actual knowledge* by the fact that any person in the Defendants position would have known of the wrongfulness and harm caused by his actions. *Wood v. Jamison*, 167 Cal. App. 4th 156, 83 Cal. Rptr. 3d 877 (2d Dist. 2008); *Das v. Bank of America, N.A.*, 186 Cal. App. 4th 727, 112 Cal. Rptr. 3d 439 (2d Dist. 2010), *review denied*, (Oct. 13, 2010).

227. Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land and **Shahidah J. Williams (Lacy)**, in her official capacity as Alameda County Policy Director, 5th District, Board of Supervisors, in their official capacities and respective positions, had *constructive knowledge* that the Taking of the Plaintiffs Real Property, harmed the Plaintiff, when the Plaintiff sought protection from Alameda County Superior Court, the United States Bankruptcy Court, Northern District of California and the Alameda Board of Supervisors. Thus, the Defendants actions constitute violations of the Financial Abuse provision of California's Elder Abuse Statute.

228. Under the provision, *a person or entity "is deemed to have taken, secreted, appropriated, obtained, or retained property* for a wrongful use if, among other

things, the person or entity takes, secretes, appropriates, obtains, or retains the property and *the person or entity knew or should have known* that this conduct is likely to be harmful to the elder or dependent adult." See *Cal. Welf. & Inst. Code* § 15610.30(b).

229.    Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land and **Shahidah J. Williams (Lacy)**, in her official capacity as Alameda County Policy Director, 5th District, Board of Supervisors and their actions constitute Financial Elder Abuse under California Welfare & Institutions Code § 15610.30 and violation of the Elder Abuse and Dependent Adult Civil Protection Act (EADACPA).

230.    Plaintiff is entitled to remedies provided under Elder Abuse and Dependent Adult Civil Protection Act (EADACPA), California Welfare & Institutions Code § 15610.30 and   California Welfare & Institutions Code § 15657, including compensatory damages, punitive damages, and attorney's fees.

231.    Consequently, pursuant to 42 USC §§ 1983 and 1988, the Plaintiff is requesting and entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief, to invalidate and restrain the enforcement of the unconstitutional Financial Elder Abuse violation and deprivation of the Plaintiff's Real Property via the Alameda County Delinquent Tax Auction.

**COMPLAINT**

1    pursuant to the Takings Clause Under The 5th Amendment of the United States

2    Constitution.

3

4

5

6                    **THIRD CLAIM FOR RELIEF**
**FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983)**
7                    **VIOLATION OF EXCESSIVE FINES CLAUSE**
**OF THE 8TH AND 14TH AMENDMENTS**
8                    **(against all defendants and conspirators)**

9

10   232.   Plaintiff incorporates by this reference the allegations set forth in paragraphs

11          216-231 as though set forth fully herein.

12

13   233.   On or about **January 27, 2021**, the Defendants, **Henry C. Levy**, in his official

14          capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her

15          official capacity as Alameda County Chief Deputy Tax Collector and **Theody**

16          **Virrey**, in his official capacity as Alameda County Tax Collector Specialist-

17          Tax Defaulted Land, informed Mr. Al-Mansur via correspondence, a *Notice of*

18          *Sale of Tax Defaulted Property* requiring him to pay $149,946.82 [*which he did*

19          *5 months earlier but they rejected the payment in full*] in delinquent past due

20          principal taxes and instead the Alameda County Defendants *imposed* a 42%+

21          increase, totaling **$229,063.67+** in *penalties, interests and fees* to redeem The

22          Property.

23

24   234.   In contravention and violation of the Excessive Fines Clause of the 8th and 14TH

25          Amendments of the US Constitution, and the Plaintiff, Mr. Al-Mansur's

26          reliance upon Revenue and Taxation Code § 4985.2, *in response* the Alameda

27          County Defendants, **Henry C. Levy**, in his official capacity as Alameda County

28

**COMPLAINT**

Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land, imposed $229,063.67 in *penalties, interests and fees, representing a disproportionate increase of 42% of the* $149,946.82 in *principal taxes paid in full* by the Plaintiff, but *refused* by the Alameda County Defendants.

235. *In response* the Alameda County Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land initiated an unconstitutional violation of the Taking Clause under the 5th Amendment of the United States Constitution and a violation of the Excessive Fines Clause of the 8th and 14TH Amendments of the US Constitution.

236. The Alameda County Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land placed Mr. Al-Mansur's property on the delinquent tax roll, criminally, maliciously and fraudulently advertised the Plaintiffs property as available for bidding on BID4ASSETS.COM via the Alameda County Tax Defaulted Property Auction.

237. The Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, failed to perform his ministerial duties and abused his

**COMPLAINT**

discretion by *rejecting* Mr. Al-Mansur's $149,946.82 timely payment (pursuant to Revenue and Taxation Code § 4985.2) of the principal taxes due, in full, failed to notify Plaintiff within the statutory period of an underpayment and *refused* Mr. Al-Mansur's request for cancellation of *all delinquent penalties, interests and fees* as mandated in Revenue and Taxation Code § 4985.2, notwithstanding California Appellate and Supreme Court precedence.

238. The above-mentioned Defendant actions provide a framework for the court to evaluate whether the imposition of $229,063.67 in *penalties, interests and fees, representing a disproportionate increase of 42% of the*   $149,946.82 in *principal taxes paid in full* by the Plaintiff is excessive in this case.

239. The United States Court of Appeals for the Ninth Circuit has noted that the Supreme Court's decision in *Timbs v. Indiana*, 139 S. Ct. 682, 687, 203 L. Ed. 2d 11 (2019), incorporated the Excessive Fines Clause of the Eighth Amendment to the states through the Fourteenth Amendment. Thus, the *Timbs* decision affirmatively opens the door for Eighth Amendment challenges to fines imposed by State and Local authorities.

240. The United States Court of Appeals for the Ninth Circuit has therefore extended the four-factor analysis set forth in *United States Bajakajian*, 524 U.S. 321, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (*1998) to govern municipal penalties, fees and fines.* See *Pimentel* v. City of Los *Angeles*, 974 F.3d 917, 920, 2020 U.S. App. LEXIS 28925, *1

241. *In re Affordable Patios & Sunrooms*, No. 3:20-BK-50017 BTB, 2022 WL 1115413, at *6 (B.A.P. 9th Cir. Apr. 13, 2022) "[A] *percentage-based penalty*

**COMPLAINT**

71

1    *that makes no reference to specific costs indicates <u>an intent to punish</u>, rather*

2    *than to compensate.*" citing *Wash. v. Hovan, Inc. (In re Hovan, Inc.)*, 96 F.3d

3    1254, 1258 (9th Cir. 1996), and "*tax penalties levied in addition to interest*

4    *typically are punitive.*" *Id.*

5

6    242.  When Courts are *distinguishing between taxes and penalties* in the context of

7          an Excessive Fines Clause violation, the court should look to the actual

8          operation of the provision in question; indeed, the Supreme Court has

9          reaffirmed this principle. *United States v. Reorganized CF & I Fabricators of*

10         *Utah, Inc.,* 518 U.S. 213, 116 S.Ct. 2106, 2111–14, 135 L.Ed.2d 506

11         (1996) (citing, *inter alia, United States v. Sotelo,* 436 U.S. 268, 275, 98 S.Ct.

12         1795, 1800, 56 L.Ed.2d 275 (1978); *City of New York v. Feiring,* 313 U.S. 283,

13         285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941); *New Jersey v. Anderson,* 203

14         U.S. 483, 492, 27 S.Ct. 137, 140, 51 L.Ed. 284 (1906)).

15

16   243.  Therefore, to determine whether the Alameda County Defendants assessments

17         are non-compensatory *penalties*, we look behind the statutory label ("*penalty*")

18         and examine the "*actual effects*" of the assessments. *See id. United States v.*

19         *Reorganized CF & I Fabricators of Utah, Inc* at 116 S.Ct. at 2111.

20

21   244.  SCOTUS summarized this functional analysis as follows:

22              'A tax is an enforced contribution to provide for the support of government;

23              *a <u>penalty</u>, as the word is here used, is <u>an exaction imposed by statute as</u>*

24              *<u>punishment</u>* for an unlawful act.' *Id.* at, 116 S.Ct. at 2113 (quoting *United*

25              *States v. La Franca,* 282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551

26              (1931)); *see id.* ("*if the concept of penalty means anything, it means*

27              *<u>punishment</u>* for an unlawful act or omission")

28

**COMPLAINT**

72

245.    Plaintiff alleges that the Alameda County Defendants violated this prohibition, by a Regulatory Taking of his real property, then *imposing excessive penalties, interests and fees* upon the redemption of his real property and placing his real property on the delinquent tax roll and sale, among other profound constitutional injuries as a *punitive action* [i.e. punishment]. *Fitzpatrick v. City of Los Angeles*, 2023 U.S. Dist. LEXIS 17220, *118-119, 2023 WL 3318748

246.    A fine is unconstitutionally excessive under the Eighth Amendment if its amount is grossly disproportional to the gravity of the defendant's offense. In this case the Plaintiff did NOT commit any "*offenses*".

247.    To determine whether a fine is grossly disproportional to the underlying offense, four factors are considered: **(1)** *the nature and extent of the underlying offense*; **(2)** *whether the underlying offense related to other illegal activities*; **(3)** *whether other penalties may be imposed for the offense*; and **(4)** *the extent of the harm caused by the offense.*

248.    In the context of the *FIRST United States v. Bajakajian* factor, if culpability is high or behavior reckless, the nature and extent of the underlying violation is more significant. As in the instant case, the Plaintiff's *culpability is low, thus the nature and extent of the violation is minimal. Pimentel v. City of Los Angeles*, 974 F.3d 917, 920, 2020 U.S. App. LEXIS 28925, *1

249.    Moving to the *SECOND Bajakajian* factor, we must determine *whether the underlying offense relates to other illegal activities.* See *$100,348 in U.S.*

**COMPLAINT**

*Currency*, 354 F.3d at 1122.  The Plaintiff's efforts to pay his tax obligation does **NOT** relate to any illegal activities, nor do the parties argue as much.

250. Similarly, the *THIRD Bajakajian* factor — *whether other penalties may be imposed for the violation*.  The Plaintiff did not commit a violation of any sort.

251. Under the *FOURTH United States v. Bajakajian* factor, the court must determine the *extent of the harm caused by a violation*. The most obvious and simple way to assess this factor is to observe the monetary harm resulting from the violation. The Plaintiff's effort to pay the delinquent past due taxes in full does not harm or deviate from the intent and mandates of the Revenue and Taxation Code.

252. In the instant case, there is no real dispute that the Alameda County government would not be harmed by the cancellation of penalties, interest and fees pursuant to Revenue and Taxation Code § 4985.2, California Appellate and Supreme Court precedence.

253. In the instant case, it appears that the Alameda County Defendants conditioned their responses and actions as *punitive*. By threatening the Plaintiff with ultimatums that were conditioned upon the Plaintiffs acceptance. When the Plaintiff did NOT adhere to the Defendants threats and ultimatums, the Defendants initiated a *punitive* response and effort.

254. Firstly, they imposed *punitive, disproportionate and excessive penalties, interests and fees*. Secondly, they illegally initiated a Regulatory Taking of the Plaintiff's Real Property. Thus, when analyzing Alameda County Defendant's

**COMPLAINT**

actions under the Excessive Fines Clause, the issue is not whether it is "civil or criminal, but rather whether it is a *punishment*." *Id.* "

255. A *punitive fine* violates the Eighth Amendment's 'Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense.'" *United States v. Blackwell*, 459 F.3d 739, 771 (6th Cir.2006) (quoting *United States v. Bajakajian*, 524 U.S. 321, 334, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998)).

256. In the instant case, the Plaintiff committed no offense, nor illegalities.

257. The question of whether the $229,063.67 in *penalties, interests and fees* imposed by the Alameda County Defendants is a "*punishment*" is a question of law.

258. That question is clearly answered in the relevant statute and case law; *Part 11 of the Revenue and Taxation Code (Sections 401-5907)*, which definitively correlates *penalties* as *punishment. U.S. v. $ 405,089.23 U.S. Currency*, 33 F.3d 1210, 1220 (9th Cir. 1994), as amended 56 F.3d 41 (9th Cir. 1995) (character as punishment determined by looking at the relevant statute).

259. It is quite evident that the abovementioned factors, have clearly illustrated and determined that the *penalties, interests and fees* imposed by the Alameda County Defendants are disproportionately severe and punitive, and that they do **NOT** serve a legitimate governmental objective, in addition to imposing an undue hardship on the Plaintiff, Mr. Al-Mansur.

**COMPLAINT**

260. By performing the alleged acts in the manner described the Alameda County Defendants directly and proximately harmed plaintiff, as herein alleged, entitling Plaintiff to recover damages for said constitutional violations pursuant to 42 U.S.C. §1983 incorporated in the Excessive Fines Clause under the 8th and 14th Amendments.

## FOURTH CLAIM FOR RELIEF
## VIOLATION OF DUE PROCESS CLAUSE OF 14th AMENDMENT
### (against all defendants and conspirators)

261. Plaintiff incorporates by this reference the allegations set forth in paragraphs 232-260 as though set forth fully herein.

262. Plaintiff has a fundamental property interest in 2421 Market Street, Oakland, California in that valuable consideration was paid to acquire it, which is protected by the Due Process Clause of the Fourteenth Amendment.

263. Plaintiff has a protected property interest in his timely payment of the principal amount of delinquent taxes and the cancellation of penalties, interests, and fees as provided under Revenue and Taxation Code § 4985.2 subdivisions (a) and (b).

264. The Plaintiff asserts a claim for violation of procedural due process under the Fourteenth Amendment of the United States Constitution. The Plaintiff alleges that the Defendants, acting under color of state law, deprived him of his constitutional right to due process by failing to provide timely notification of

**COMPLAINT**

76

an underpayment of taxes as required under RTC § 4985.2(b) and the Taking of Plaintiffs Real Property.

265. Notification Delay: The Plaintiff met with the Defendants on February 4, 2020, and was notified of the principal taxes due via email on February 6, 2020. The Plaintiff paid the full principal amount of $149,946.82 on February 19, 2020, but was not notified of any underpayment until 30 days later.

266. Statutory Violation: Under RTC § 4985.2(b), both the Plaintiff and the Defendants were aware (via letter) that payment represented the taxes due exclusive of the penalties, interest, and fees. However, under RTC § 4985.2(b), the Defendants still had an obligation to formally notify the Plaintiff of the shortage within 10 days after becoming aware of the underpayment. The Defendants are required to notify the taxpayer of any underpayment within 10 days. The Defendants' failure to notify the Plaintiff within this statutory window denied the Plaintiff the opportunity to correct any error within the mandated timeframe.

267. Due Process Violation: The Plaintiff's right to procedural due process was violated when the Defendants failed to provide timely notice, depriving the Plaintiff of an opportunity to rectify the alleged underpayment in accordance with the statutory framework. The Fourteenth Amendment guarantees that no person shall be deprived of life, liberty, or property without due process of law. The Plaintiff was entitled to receive timely and adequate notice of any alleged

**COMPLAINT**

underpayment in order to avoid penalties. *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983)[7]

268. Even after denying the Plaintiff notification, the Defendants' *continued* to violate the Plaintiffs Due Process Rights by *rejecting* Mr. Al-Mansur's $149,946.82 timely payment (pursuant to Revenue and Taxation Code § 4985.2) of the principal taxes due and, *refusing* Mr. Al-Mansur's request for cancellation of all delinquent penalties, interests and fees, then *granting* the request for cancellation and later *rescinding* it, along with *placing* the property on the Delinquent Property Tax Auction list and *fraudulently* advertising the Plaintiffs property as available to accept bids on BID4ASSETS.COM. All the above mentioned constitutes a Deprivation of Plaintiff's Protected Property Interest without Due Process of law.

269. Defendants failed to provide adequate notice or a meaningful opportunity to be heard before rejecting Plaintiff's principal payment of taxes due, rescinding the waiver and imposing additional penalties, in violation of Plaintiff's Due Process rights.

270. Defendants acted with intentional misrepresentation and reckless disregard for the truth by first confirming and accepting Plaintiffs payment, in full of delinquent taxes, penalties and fees, then Defendants failed to notify the Plaintiff of a "*underpayment*", yet the Defendants granted Plaintiffs Waiver Request pursuant to Revenue and Taxation Code § 4985.2 subdivision (a) and

---

[7] *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983): The U.S. Supreme Court held that Due Process requires that timely and adequate notice be given before depriving individuals of their property. The Defendants' failure to notify the Plaintiff of the underpayment within the statutory 10-day window is a clear violation of this principle.

**COMPLAINT**

(b) and then 5 months later rejected Plaintiffs payment in full and rescinding Plaintiffs waiver of $28,754.77 in penalties, interest and fees without adequate explanation or legal basis, fulfilling the 9th Circuit's "Scienter" standard for *Fraud*.

271. Harm: As a result of the Defendants' failure to provide timely notice, the Plaintiff now faces penalties, interests, and fees, despite having made a good faith payment of the principal taxes within the statutory period. This delay deprived the Plaintiff of the opportunity to resolve the issue within the prescribed 10-day period, constituting a violation of due process.

272. As a direct result of Defendants' actions, Plaintiff suffered significant financial harm, including the loss of property value from $1,300,000 to $600,000 and additional penalties totaling approximately $700,000.

273. The Alameda County Defendants' unconstitutional enforcement thereof violates Plaintiff's substantive Due Process rights secured by the 14th Amendment to US Constitution.  Under the Due Process Clause of the 14th Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law."

274. The fundamental liberties include most of the rights enumerated in the Bill of Rights. See *Duncan v. Louisiana*, 391 U.S. 145, 147–149 (1968).

275. Defendants' actions as illustrated and alleged herein, expressly deprived Plaintiff of rights and liberties unlawfully. Defendants, specifically Defendant **Shahidah J. Williams (Lacy)**, did not afford and refused to assist Plaintiff with

**COMPLAINT**

a constitutionally adequate hearing [*as a matter of law*] to report the allegations contained herein, before the Alameda County Board of Supervisors.

276.   The abovementioned and previously mentioned allegations and actions of the Defendants were all made in reliance on procedurally deficient, substantively unlawful processes, nonexistent policy "directives" and a pattern of unconstitutional conduct of the Alameda County Defendants.

277.   Plaintiff was directly and proximately deprived of the entire potential of Plaintiffs property Investment-Backed Expectations, and consequently, lost the economic viability of the property by the Regulatory and Physical Taking of the Plaintiffs property by the Defendants.

278.   Because Defendants' decisions were made in reliance upon an arbitrary and capricious interpretation of the law---with respect to the ***notification delay*** and in ***refusing*** the timely payment of $149,946.82, in full of the delinquent taxes, penalties, interests and fees and ***rejecting*** the Plaintiffs request for cancellation of the penalties, interests and fees pursuant to Revenue and Taxation Code Section 4985.2 subdivisions (a) and (b).

279.   Then 5 months later the Defendants, ***returned*** Plaintiffs payment in full of the delinquent taxes, penalties, interests and fees, ***rescinded*** the waiver and cancellation of $28,754.77, then ***maliciously and fraudulently placed*** Plaintiffs Real Property on the Delinquent Property Tax Auction list and advertising the Plaintiffs property as available to accept bids on BID4ASSETS.COM, Plaintiff was directly and proximately deprived of Property Rights---absent substantive Due Process--violating US 14th Amendment.

**COMPLAINT**

## FIFTH CLAIM FOR RELIEF
## VIOLATION OF EQUAL PROTECTION CLAUSE OF 14th AMENDMENT
### (against all defendants and conspirators)]

280.    Plaintiff incorporates by this reference the allegations set forth in paragraphs 261-279 as though set forth fully herein.

281.    The Equal Protection Clause of the 14th Amendment to U.S. Constitution functions as a guarantee that no person or group will be denied protection under the law that is enjoyed by similar persons or groups. In other words, people similarly situated must be similarly treated. Equal protection is extended when the rules of law are applied equally in all like cases and when persons are exempt from obligations greater than those imposed upon others in like circumstances.

282.    Plaintiffs colorable claim for violation of the *Equal Protection Clause* has merit because Plaintiff has membership in a protected class, and has noted that fact, *Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)*, and that the Plaintiff was intentionally treated differently from similarly situated individuals and that there was no rational basis for the difference in treatment, *Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)*.

283.    Defendants' actions in initially *rejecting* Mr. Al-Mansur's $149,946.82 timely payment (pursuant to Revenue and Taxation Code § 4985.2 ) of *the principal taxes due,* in full, *failing* to notify Plaintiff within the statutory period of any

**COMPLAINT**

81

underpayment, *refusing* Mr. Al-Mansur's request for cancellation of all delinquent penalties, interests and fees, then *granting* the request for cancellation and later *rescinding* it, along with *placing* the property on the Delinquent Property Tax Auction list and *fraudulently* advertising the Plaintiffs property as available to accept bids on BID4ASSETS.COM violated the Equal Protection Clause of 14th Amendment, both facially and as-applied to Plaintiff.

284. The 14th Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

285. Plaintiff has a protected property interest in his timely payment of the principal amount of delinquent taxes and the cancellation of penalties, interests, and fees as provided under Revenue and Taxation Code § 4985.2.

286. All the above-mentioned violations constitute an intentional and discriminatory treatment of Plaintiff compared to other similarly situated taxpayers whose tax obligations were accepted in full. Including those who met the predicates mandated by the Revenue and Taxation Code Section 4985.2 subdivisions (a) and (b) and were granted waivers without any rescindment, thereby violating Plaintiff, Mr. Al-Mansur's Right to Equal Protection under the law.

287. Defendants failed to provide a rational basis for *rejecting* Mr. Al-Mansur's $149,946.82 timely payment (pursuant to Revenue and Taxation Code § 4985.2) of *the principal taxes due*, in full, *failing* to notify Plaintiff within the statutory period of any underpayment, *refusing* Mr. Al-Mansur's request for cancellation of all delinquent penalties, interests and fees, then *granting* the request for cancellation and later *rescinding* it, along with *placing* the property

**COMPLAINT**

on the Delinquent Property Tax Auction list and *maliciously* advertising the Plaintiffs property as available to accept bids on BID4ASSETS.COM, and imposing additional penalties, thereby violating Plaintiff, Mr. Al-Mansur's Right to Equal Protection under the law.

288. Defendants acted with *intentional misrepresentation and reckless disregard for the truth* by *rejecting* Mr. Al-Mansur's $149,946.82 timely payment (pursuant to Revenue and Taxation Code § 4985.2) of *the principal taxes due, in full*, *failing* to notify Plaintiff within the statutory period of any underpayment, *refusing* Mr. Al-Mansur's request for cancellation of all delinquent penalties, interests and fees, then *granting* the request for cancellation and later *rescinding* it, along with *placing* the property on the Delinquent Property Tax Auction list and *fraudulently* advertising the Plaintiffs property as available to accept bids on BID4ASSETS.COM, and imposing additional penalties without adequate explanation or legal basis, fulfilling the 9th Circuit's "Scienter" standard for *Fraud*.

289. As a direct result of Defendants' actions, Plaintiff suffered significant financial harm, including the loss of property value from $1,300,000 to $600,000 and additional penalties totaling approximately $700,000.

290. Equal protection requires the state to govern impartially—not draw arbitrary distinctions between real property owners based solely on differences that are irrelevant to a legitimate governmental purpose.

291. Defendants arbitrarily authorized the *refusal, rejection and taking* of Plaintiffs Real Property ---rather than crediting the Plaintiffs tax payment, in full ---

**COMPLAINT**

83

instead Defendants *took* the Plaintiffs Real Property and *placed* the property on Alameda County Delinquent Property Tax Auction list and *maliciously* advertised the Plaintiffs property as available to accept bids on BID4ASSETS.COM,

292. *Strict scrutiny* under the Equal Protection Clause applies where, as here, the classification impinges on a *fundamental* right (i.e. meeting one's tax obligation), including a Right to Due Process, a right to be treated equally, a right to own property, and the right to meet one's tax obligation with full credit and acceptance of property tax payments by the taxing authorities.

293. Defendants cannot survive a *strict scrutiny* test because their arbitrary **"classification and rejection of the Rights of the Plaintiff"** is not a narrowly tailored measure that furthers a compelling government interest, for the reasons stated above and on facts alleged.

## SIXTH CLAIM FOR RELIEF
## FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983)
## Fraud (Rule 9(b))
## (against all defendants and conspirators)

294. Plaintiff incorporates by this reference the allegations set forth in paragraphs 280-293 as though set forth fully herein.

295. Plaintiff brings this Claim for Relief against Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax

**COMPLAINT**

1    Collector and **Theody Virrey**, in his official capacity as Alameda County Tax

2    Collector Specialist-Tax Defaulted Land, *alleging* Fraud under the Scienter Act

3    (18 U.S.C. § 1001) for *failing* to notify Plaintiff within the statutory period of

4    any underpayment *as a matter law*, the *refusal* of the principal taxes due paid

5    by the Plaintiff pursuant to Revenue and Taxation Code § 4985.2 (a) (b) by the

6    Defendants *and rescission* of the cancellation of penalties, interests, and fees

7    under Revenue and Taxation Code § 4985.2 by the Defendants and by *imposing*

8    *an excessive and punitive demand* in violation of Plaintiffs Federal Civil Rights

9    under 42 U.S.C. § 1983 pursuant to the Excessive Fines Clause of the 8TH and

10   14TH Amendments by the Defendants, for no justifiable or legal reason.

296. The Plaintiffs Claim for Relief for Violation of Federal Civil Rights (42 U.S.C. § 1983) for alleged Fraud under (Rule 9(b)), which outlines the elements of Fraud under the 9th Circuit's "Scienter" standard and demonstrates how the Defendants actions meet these elements with particularity under Federal Rule of Civil Procedure 9(b).

297. 42 U.S.C. § 1983, in relevant part, creates a cause of action for "the deprivation of any right[], privilege[], or immunit[y] secured by the Constitution" by individuals acting "under color of" law. 42 U.S.C. § 1983. **"To state a claim under § 1983**, a plaintiff must allege two essential elements: (1) *that a right secured by the Constitution or laws of the United States was violated*, and (2) *that the alleged violation was committed by a person acting under the color of State law*." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

**COMPLAINT**

298.  Plaintiff has a protected property interest as reflected in Plaintiff's timely payment of the principal amount of delinquent taxes and the cancellation of penalties, interests, and fees as provided under Revenue and Taxation Code §4985.2.

299.  Defendants intentionally misrepresented their authority and *intention by accepting* the Plaintiffs $149,946.82 payment of delinquent taxes due and waiving penalties, interests, and fees pursuant to Revenue and Taxation Code § 4985.2, then after 134 days, Defendants refused the Plaintiffs payment of delinquent taxes due and rescinded the waiver of penalties, interests, and fees. *In re Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which discusses the necessity of pleading facts that allow the court to infer intent.

300.  Plaintiff alleges that the Alameda County Defendants violated this prohibition, by a *Regulatory and Physical Taking* of his real property, then *imposing excessive penalties, interests and fees* upon the redemption of his real property and placing his real property on the delinquent tax roll and sale, among other profound constitutional injuries as a *punitive action* [i.e. punishment]. *Fitzpatrick v. City of Los Angeles*, 2023 U.S. Dist. LEXIS 17220, *118-119, 2023 WL 3318748

301.  Then exhorting the Plaintiff to rely on these misrepresentations to extort the Plaintiff of his property, by imposing an excessive and punitive fee demand to redeem his property from the Delinquent Property Tax Roll and scheduled bid auction conducted on the worldwide internet via BID4ASSETS.COM. *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541 (9th Cir. 1994), the court

**COMPLAINT**

emphasized that misrepresentations must be stated with particularity, including the *specific actions*.

302. Defendants knew or recklessly *disregarded the truth* by *refusing* the Plaintiffs payment for the delinquent past due taxes, in full. Concurrently, the Defendants knew or recklessly disregarded the truth and knew that the waiver would not be honored, as evidenced by their later rescindment and imposition of additional penalties. *In re Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which discusses the necessity of pleading facts that allow the court to infer intent.

303. Defendants' *conduct constitutes* Fraud under Rule 9(b), as they acted with intentional misrepresentation and reckless disregard for the truth by conveying misleading and false statements to a government entity while under Federal Jurisdiction, fulfilling the 9th Circuit's "Scienter" standard. *In re Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003), requiring that Scienter be specifically alleged.

482. Plaintiff justifiably *relied* on Defendants' representations and paid the principal taxes due, in full pursuant to Revenue and Taxation Code § 4985.2 (a), (b), expecting that the Defendants would adhere to the mandates of the Revenue and Taxation Code Section 4985.2, subdivisions (a) and (b), and by adhering to the provisions of the California Revenue and Taxation Code §§ 755. *In re Lazar v. Superior Court*, 12 Cal.4th 631 (1996), which addresses reliance in fraud claims.

483. **Fraudulent Conduct:** the Defendant's, acting with intent to defraud, knowingly and willfully failed to present for allowance the Plaintiff's full

1    payment to the appropriate State Auditors, Commissioners and the State Board

2    of Equalization, in contravention to California Revenue and Taxation Codes §§

3    2601-2616, 4717, among others and California Government Codes §§ 24353,

4    68101 and 68085, thereby depriving the Plaintiff of his property rights,

5    subjecting him to unjust financial penalties and potential property loss.

7    304.    Defendant knowingly presented false and fraudulent claims to the California

8    State Auditors, Commissioners, and the State Board of Equalization, by

9    asserting that the Plaintiff's property taxes were delinquent, which resulted in

10    the wrongful assessment of additional penalties and the improper listing of the

11    Plaintiff's property as delinquent.

13    305.    As a direct result of Defendants' fraudulent conduct, Plaintiff suffered

14    significant financial harm, including the loss of property value from $1,300,000

15    to $600,000 and additional penalties totaling approximately $400,000. *In re*

16    *City of Oakland v. Comcast Cable Communications, LLC*, 47 F. Supp. 3d 927

17    (N.D. Cal. 2014), discussing the necessity of showing damages.

19    306.    Under Rule 9(b), a Plaintiff "must state with particularity the circumstances

20    constituting fraud." Fed. R. Civ. P. 9(b). Particularity includes "'the who, what,

21    when, where, and how of the misconduct charged,' including what is false or

22    misleading about a statement, and why it is false[.] The Plaintiff has met the

23    predicates of Fed. R. Civ. P. 9(b) as incorporated in all preceding allegations

24    as if fully rewritten in this Complaint and attached Evidence.

26    307.    However, as it relates to the predicates and *standards* of Fed. R. Civ. P. 9(b),

27    "*this standard* [Fed. R. Civ. P. 9(b)] '*does not require absolute particularity or*

**COMPLAINT**

1    *a recital of the evidence.*'" Id. (quoting 5A *Charles Alan Wright & Arthur R.*

2    *Miller*, Federal Practice and Procedure § 1298 (3d ed. 2016)).

3

4    308.  Further, "*a complaint need not allege 'a precise time* frame,' *'describe in detail*

5    *a single specific transaction' or identify the 'precise method' used to carry out*

6    *the fraud.*" Id. (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

7

8    309.  By performing the alleged acts in the manner described the Alameda County

9    Defendants directly and proximately harmed plaintiff, as herein alleged,

10    entitling Plaintiff to recover damages for said constitutional violations pursuant

11    to 42 U.S.C. § 1983 incorporated in the Violation of Federal Civil Rights (42

12    U.S.C. § 1983) for alleged Fraud under (Rule 9(b)).

13

14

15

16                    **SEVENTH CLAIM FOR RELIEF**

17    **FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983)**

18          **Fraudulent Deprivation of Property Without Due Process**

19                    **(against all defendants and conspirators)**

20    310.  Plaintiff incorporates by this reference the allegations set forth in paragraphs

21    294-309 as though set forth fully herein.

22

23    311.  Plaintiff brings this Claim for Relief against Defendants, **Henry C. Levy**, in his

24    official capacity as Alameda County Treasurer-Tax Collector, **Julie P.**

25    **Manaois**, in her official capacity as Alameda County Chief Deputy Tax

26    Collector and **Theody Virrey**, in his official capacity as Alameda County Tax

27    Collector Specialist-Tax Defaulted Land, *alleging* Fraudulent Deprivation of

28

**COMPLAINT**

1    Property Without Due Process under the Scienter Act (18 U.S.C. § 1001) the

2    Defendants failed to provide adequate notice or a meaningful opportunity to be

3    heard before refusing the Plaintiffs payment of delinquent taxes due, in full,

4    rescinding the waiver and imposing additional penalties, in violation of

5    Plaintiff's Due Process rights under the 14th Amendment., for no justifiable or

6    legal reason.

7

8    312.   Defendants, **Henry C. Levy**, in his official capacity as Alameda County

9    Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda

10    County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity

11    as Alameda County Tax Collector Specialist-Tax Defaulted Land, Fraudulent

12    Deprivation of Property Without Due Process is a violation of the Financial

13    Elder Abuse statute. See *Cal. Welf. & Inst. Code* § 15610.30, refers to "real or

14    personal property," and under general California law, "real property" is

15    coextensive with lands, tenements, and hereditaments"

16

17    313.   The Plaintiffs Claim for Relief for Violation of Federal Civil Rights (42 U.S.C.

18    § 1983) for alleged Fraudulent Deprivation of Property Without Due Process

19    under (Rule 9(b)), which outlines the elements of Fraud under the 9th Circuit's

20    "Scienter" standard and demonstrates how the Defendants actions meet these

21    elements with *particularity* under Federal Rule of Civil Procedure 9(b).

22

23    314.   42 U.S.C. § 1983, in relevant part, creates a cause of action for "the deprivation

24    of any right[], privilege[], or immunit[y] secured by the Constitution" by

25    individuals acting "under color of" law. 42 U.S.C. § 1983. **"To state a claim**

26    **under § 1983,** a plaintiff must allege two essential elements: (1) *that a right*

27    *secured by the Constitution or laws of the United States was violated*, and (2)

28

**COMPLAINT**

90

*that the alleged violation was committed by a person acting under the color of State law.*" *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

315.  Plaintiff has a protected property interest as reflected in Plaintiff's timely payment of the principal amount of delinquent taxes and the cancellation of penalties, interests, and fees as provided under Revenue and Taxation Code § 4985.2.

316.  Defendants intentionally misrepresented their authority and *intention by accepting* the Plaintiffs $149,946.82 payment of delinquent taxes due and waiving penalties, interests, and fees pursuant to Revenue and Taxation Code § 4985.2, then after 134 days, Defendants refused the Plaintiffs payment of delinquent taxes due and rescinded the waiver of penalties, interests, and fees. *In re Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which discusses the necessity of pleading facts that allow the court to infer intent.

317.  On March 20th, 2022, the Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land, waived the penalties and fees under Revenue and Taxation Code 4985.2(a and (b) and five months later, without any legal basis, rescinded this waiver and rejected the plaintiff's payment. *In re Johnson v. Duffy*, 588 F.2d 740 (9th Cir. 1978), requires that the plaintiff allege specific acts of fraudulent conduct.

318.  Defendants failed to provide adequate notice or a meaningful opportunity to be heard before rescinding the waiver and *imposing excessive penalties, interests and fees* upon the redemption of his real property and placing his real property on the delinquent tax roll and sale, among other profound constitutional injuries as a *punitive action* [i.e. punishment], in violation of Plaintiff's Due Process Rights under the 14th Amendment.

319.  The Plaintiff's right to Due Process under the Fourteenth Amendment was violated when the Defendants placed the Plaintiff's property on the Delinquent Property Tax Auction list without proper notice and an opportunity to be heard. *In re Zinermon v. Burch*, 494 U.S. 113 (1990), discusses due process violations under 42 USC §1983.

320.  Plaintiff alleges that the Alameda County Defendants violated this prohibition, by a Fraudulent Deprivation of Property Without Due Process under (Rule 9(b)) of his real property, then *imposing excessive penalties, interests and fees* upon the redemption of his real property and placing his real property on the delinquent tax roll and sale, among other profound constitutional injuries as a *punitive action* [i.e. punishment]. *Fitzpatrick v. City of Los Angeles, 2023 U.S. Dist. LEXIS 17220, *118-119, 2023 WL 3318748*

321.  Then exhorting the Plaintiff to rely on these misrepresentations to extort the Plaintiff of his property, by imposing an excessive and punitive fee demand to redeem his property from the Delinquent Property Tax Roll and scheduled bid auction conducted on the worldwide internet via BID4ASSETS.COM. *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541 (9th Cir. 1994), the court

**COMPLAINT**

emphasized that misrepresentations must be stated with particularity, including the *specific actions*.

322. Defendants knew or recklessly *disregarded the truth* by the *refusal* of the Plaintiffs payment for the delinquent past due taxes, in full. Concurrently, the Defendants knew or recklessly disregarded the truth and knew that the waiver would not be honored, as evidenced by their later rescindment and imposition of additional penalties.

323. Defendants' *conduct constitutes* Fraudulent Deprivation of Property Without Due Process under Rule 9(b), as they acted with intentional misrepresentation and reckless disregard for the truth by conveying misleading and false statements to a government entity while under Federal Jurisdiction, fulfilling the 9th Circuit's "Scienter" standard. *In re Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003), requiring that Scienter be specifically alleged, also *In re Lombardi v. City of El Cajon\**, 117 F.3d 1117 (9th Cir. 1997), discusses the requirement of intent or recklessness for §1983 claims involving fraud.

324. Plaintiff justifiably *relied* on Defendants' representations and paid the principal taxes due, in full pursuant to Revenue and Taxation Code § 4985.2 (a)(b), expecting that the Defendants would adhere to the mandates of the Revenue and Taxation Code Section 4985.2, subdivisions (a) and (b), and by adhering to the provisions of the California Revenue and Taxation Code §§ 755. *In re Lazar v. Superior Court*, 12 Cal.4th 631 (1996), which addresses reliance in fraud claims.

325. As a direct result of Defendants' fraudulent conduct, Plaintiff suffered significant financial harm, including the loss of property value from $1,300,000 to $600,000 and additional penalties totaling approximately $700,000. *In re City of Oakland v. Comcast Cable Communications, LLC*, 47 F. Supp. 3d 927 (N.D. Cal. 2014), discussing the necessity of showing damages.

326. In addition, because of the Defendant's fraudulent actions, the Plaintiff's property was placed on the Delinquent Property Tax Auction list, causing financial harm, additional penalties, and the potential loss of property. *In re Carey v. Piphus*, 435 U.S. 247 (1978), requires showing actual injury or damages caused by the deprivation of rights.

327. Under Rule 9(b), a Plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Particularity includes "'the who, what, when, where, and how of the misconduct charged,' including what is false or misleading about a statement, and why it is false[.] The Plaintiff has met the predicates of Fed. R. Civ. P. 9(b) as incorporated in all preceding allegations as if fully rewritten in this Complaint and attached Evidence.

328. However, as it relates to the predicates and *standards* of Fed. R. Civ. P. 9(b), "*this standard* [Fed. R. Civ. P. 9(b)] '*does not require absolute particularity or a recital of the evidence.*'" Id. (quoting 5A *Charles Alan Wright & Arthur R. Miller*, Federal Practice and Procedure § 1298 (3d ed. 2016)). Further, "a complaint need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise method' used to carry out the fraud." Id. (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

**COMPLAINT**

94

329.    The Plaintiff has clearly illustrated the Defendants' conduct that constitutes Fraudulent Deprivation of Property Without Due Process under Rule 9(b), and the Plaintiff has met the predicates of Fed. R. Civ. P. 9(b), as incorporated in all preceding allegations as if fully rewritten in this Claim, Complaint and attached Evidence.

330.    By performing the alleged acts in the manner described the Alameda County Defendants directly and proximately harmed plaintiff, as herein alleged, entitling Plaintiff to recover damages for said constitutional violations pursuant to 42 U.S.C. § 1983 incorporated in the Violation of Federal Civil Rights (42 U.S.C. § 1983) for alleged Fraudulent Deprivation of Property Without Due Process under (Rule 9(b)).

331.    At all relevant times, the Defendants were acting under the color of state law as the Agents of Alameda County. *In re West v. Atkins*, 487 U.S. 42 (1988), clarifies that actions taken by state officials in their official capacity are under color of state law.

# EIGHTH CLAIM FOR RELIEF
# VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983)
## Fraud and Misrepresentation (18 U.S.C. § 1001)

332.    Plaintiff incorporates by this reference the allegations set forth in paragraphs 310-331 as though set forth fully herein.

**COMPLAINT**

333.  The Scienter Act (18 U.S.C. § 1001) prohibits knowingly and willfully conveying misleading and false statements to a government entity while under Federal Jurisdiction. The Defendants' actions constitute fraud and misrepresentation as affirmed under the Scienter Act (18 U.S.C. § 1001), (Rule 9(b)).

334.  California taxing authorities such as the Defendants, including the California State Board of Equalization (BOE), are involved in programs that have federal oversight and involve federal funding. In such cases, false or misleading statements made to these California State Board of Equalization (BOE), State Auditors, Commissioners and other agencies can fall under federal statutes like 18 U.S.C. § 1001, particularly when the matters involve federal funds, joint federal-state programs, or tax information shared with federal authorities, thus bringing them within the jurisdiction of a federal agency.[8]

335.  Several property tax relief programs in California and Alameda County are either funded or supported by federal funding or involve federal oversight. Programs like the Homeowner Assistance Fund (HAF) and the Low-Income Housing Tax Credit (LIHTC), along with emergency assistance measures during the COVID-19 pandemic, involve significant federal participation. Although property tax administration is primarily handled at the state and local levels, the federal government plays a crucial role through financial support and regulatory oversight, particularly in programs aimed at assisting low-income and financially distressed homeowners.

---

[8] In cases involving federal properties or projects funded by federal dollars, California taxing authorities, including the California State Board of Equalization (BOE), may be subject to federal oversight when assessing and collecting taxes on properties owned by the federal government or entities that operate under federal contracts. Additionally, federal grants for state programs or property tax relief programs funded by federal dollars involve federal audits and oversight, bringing state agencies under federal jurisdiction.

96

**COMPLAINT**

336. Defendants, by their actions as detailed above, and referencing specifically in the SIXTH and SEVENTH CLAIMS, Defendants knowingly and willfully made false statements and omissions within the jurisdiction of a federal agency, intending to deceive Plaintiff, State and Federal Taxing and Oversight Authorities.

337. Fraudulent Conduct and Misrepresentation: the Defendant's, acting with intent to defraud, knowingly and willfully failed to present for allowance the Plaintiff's full payment to the appropriate State Auditors, Commissioners and the State Board of Equalization, in contravention to California Revenue and Taxation Codes §§ 2601-2616, 4717, among others and California Government Codes §§ 24353, 68101 and 68085,  thereby depriving the Plaintiff of his property rights, subjecting him to unjust financial penalties and potential property loss.

338. Defendant knowingly presented false and fraudulent claims to the California State Auditors, Commissioners and the State Board of Equalization, by asserting that the Plaintiff's property taxes were delinquent, which resulted in the wrongful assessment of additional penalties and the improper listing of the Plaintiff's property as delinquent.

339. The placement of Plaintiff's property on the Delinquent Property Tax list constituted a false claim, as the property was not legally or factually delinquent.

**COMPLAINT**

340. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff suffered significant financial harm and damages as incorporated, alleged herein and in all preceding allegations and claims as if fully rewritten herein.

341. The Plaintiff has clearly illustrated the Defendants' conduct that constitutes Fraud and Misrepresentation under 18 U.S.C. § 1001, and the Plaintiff has met the predicates of Fed. R. Civ. P. 9(b), as incorporated in all preceding allegations as if fully rewritten in this Claim, Complaint and attached Evidence.

342. By performing the alleged acts in the manner described the Alameda County Defendants directly and proximately harmed plaintiff, as herein alleged, entitling Plaintiff to recover damages for said constitutional violations pursuant to 42 U.S.C. § 1983 incorporated in the Violation of Federal Civil Rights (42 U.S.C. § 1983) for alleged Fraud and Misrepresentation under 18 U.S.C. § 100.

343. At all relevant times, the Defendants were acting under the color of state law as the Agents of Alameda County. *In re West v. Atkins*, 487 U.S. 42 (1988), clarifies that actions taken by state officials in their official capacity are under color of state law.

# NINETH CLAIM FOR RELIEF
# VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983)
## *MONELL LIABILITY*
## (against all defendants and conspirators)

344.  Plaintiff incorporates by this reference the allegations set forth in paragraphs 332-343 as though set forth fully herein.

345.  Plaintiff brings this Claim for Relief against Defendants, **County of Alameda**, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land and **Shahidah J. Williams (Lacy)**, in her official capacity as Alameda County Policy Director, 5th District, Board of Supervisors *alleging* Violation of the 14th Amendment Under *Monell Liability* (42 U.S.C. § 1983) as fulfilled under the Scienter Act (18 U.S.C. § 1001).

346.  The Defendants' actions were taken pursuant to an official policy, custom, and practice of Alameda County or lack thereof any policy, customs or directives, which led directly to the deprivation of Plaintiff's property interest, in violation of Plaintiff's Due Process rights under the 14th Amendment.

347.  The Alameda County Defendants are surely aware of the findings of the 2022–2023 Alameda County Grand Jury Final Report, which again has found the abuse and mistreatment of citizens to be true, and [again] recommending policies to eliminate it, as they recommended in the 2015–2016 Alameda County Grand Jury report.

348.  A complaint filed with the 2022–2023 Alameda County Grand Jury Report claimed that the Alameda County Board of Supervisors has taken no action to implement the 2015–2016 Grand Jury recommendation that *Alameda County*

**COMPLAINT**

1

2

3

4
*adopt a code of ethics policy, including a mechanism for reporting unethical conduct, covering all county employees. See 2015–2016 and 2022–2023 Alameda County Grand Jury Reports* [**EXHIBIT(S) L, M**]

5

6

7

8

9
349.   Thus, as mentioned above, the Defendants' actions met the predicates of *Monell Liability*, and were taken pursuant to an official policy, custom, or practice of Alameda County, which led directly to the deprivation of Plaintiff's property interest.

10

11

12

13

14

15
350.   Specifically, the Defendants' actions were carried out pursuant to an official policy or custom of mishandling delinquent property tax payments and arbitrarily refusing property tax payments, rescinding waivers of penalties and fees, and *imposing excessive penalties, interests and fees* upon the redemption of real property.

16

17

18

19

20
351.   The Defendants have placed Plaintiffs real property on the Delinquent Tax Property Roll and Auction, among other profound constitutional injuries as *punitive actions* [i.e. punishment] against the Plaintiff and citizens of Alameda County.

21

22

23

24

25

26

27

28
352.   The Plaintiffs Claim for Relief for Violation of Federal Civil Rights (42 U.S.C. § 1983) for alleged Violation of the 14th Amendment Under *Monell Liability*, and by the   Defendants conveying misleading and false statements to a government entity while under Federal Jurisdiction, which fulfills the 9th Circuit's "Scienter" , the Plaintiff has demonstrated how the Defendants actions met the elements of *Monell Liability* with *particularity* under Federal Rule of

**COMPLAINT**

Civil Procedure 9(b) and has shown that the Defendants acted with intentional misrepresentation and reckless disregard for the truth.

353. Defendants knew or recklessly *disregarded the truth* by the *refusal* of the Plaintiffs payment for the delinquent past due taxes, in full. Concurrently, the Defendants knew or recklessly disregarded the truth and knew that the waiver would not be honored, as evidenced by their later rescindment and imposition of additional penalties.

354. The Defendant **Shahidah J. Williams (Lacy)**, in her official capacity as Alameda County Policy Director, 5th District, Board of Supervisors *refusal* to assist Plaintiff, Mr. Al-Mansur in seeking an administrative remedy further exemplifies the policy, custom, or practice of deliberate indifference to the rights of individuals and affirms the findings of the Alameda County Grand Jury.

355. In summation, the Alameda County Defendants acted with deliberate indifference to Mr. Al-Mansur's constitutional rights by refusing Plaintiffs payment, in full of the delinquent past due taxes, rescinding the waiver of penalties and fees without notice or explanation, and *placing* his real property on the Delinquent Property Tax Roll and Auction, among other profound constitutional injuries as a *punitive action* [i.e. punishment], thereby subjecting him to Excessive Fines and denying him Due Process and Equal Protection.

356. Under *Monell v. New York City Department of Social Services*, a municipality is a *"person"* for § 1983 purposes and can therefore be held liable for constitutional injuries attributable to itself.

**COMPLAINT**

101

357. Any constitutional injury by a municipality must occur "pursuant to (1) an *official policy*; (2) a *pervasive practice or custom*; (3) a *failure to train, supervise, or discipline*; or (4) a *decision or act by a final policymaker.*"

358. As the Alameda County Grand Jury Reports have affirmed, and the Plaintiff has met all of the following predicates to establish Municipal Liability under *Monell*, "(1) [Plaintiff was] deprived of a constitutional right; (2) the municipality [Alameda County] lacks a policy; (3) the policy [or lack thereof] amounted to deliberate indifference to [Plaintiffs] constitutional rights; and (4) the policy was the moving force behind the constitutional violations."

359. As a direct result of Defendants' *reckless disregard for the truth and deliberate indifference to the rights of individuals,* Plaintiff suffered significant financial harm, including the loss of property value from $1,300,000 to $600,000 and additional penalties totaling approximately $700,000. *In re City of Oakland v. Comcast Cable Communications, LLC,* 47 F. Supp. 3d 927 (N.D. Cal. 2014), discussing the necessity of showing damages.

360. By performing the alleged acts in the manner described the Alameda County Defendants directly and proximately harmed plaintiff, as herein alleged, entitling Plaintiff to recover damages for said constitutional violations pursuant to 42 U.S.C. §1983 incorporated in the Violation of the 14th Amendment under *Monell Liability* (42 U.S.C. § 1983) as fulfilled under the Scienter Act (18 U.S.C. § 1001),(Rule 9(b)).

**COMPLAINT**

# TENTH CLAIM FOR RELIEF
# VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983)
## Intentional Malice of the 5th, 8th, and 14th Amendments
## (against all defendants and conspirators)

361.  Plaintiff incorporates by this reference the allegations set forth in paragraphs
      344-360 as though set forth fully herein.

362.  Plaintiff brings this Claim for Relief against Defendants, the **County of
      Alameda**, **Henry C. Levy**, in his official capacity as Alameda County
      Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda
      County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity
      as Alameda County Tax Collector Specialist-Tax Defaulted Land and
      **Shahidah J. Williams (Lacy)**, in her official capacity as Alameda County
      Policy Director, 5th District, Board of Supervisors *alleging* Violation of Federal
      Civil Rights (42 U.S.C. § 1983) under Intentional Malice of the 5th, 8th, and
      14th Amendments as affirmed under the Scienter Act (18 U.S.C. § 1001), (Rule
      9(b)).

363.  Plaintiff has a protected property interest in his timely payment of the principal
      amount of delinquent taxes and the cancellation of penalties, interests, and fees
      as provided under Revenue and Taxation Code § 4985.2.

364.  Defendants *intentionally* misrepresented their authority and intent to accept and
      credit Plaintiffs tax payments, waive penalties, interests, and fees under
      Revenue and Taxation Code § 4985.2, inducing Plaintiff to rely on these
      representations and make an excessive and punitive payment to redeem
      Plaintiffs property from a scheduled bid auction sponsored by the Defendants.

**COMPLAINT**

365.    The Defendants *intentionally* mishandled the payment and rescinded the waiver of penalties and fees without legal justification and *intentionally* delayed processing Mr. Al-Mansur's payment and cancelled the waiver of penalties and fees to cause financial harm and stress. *In re Hope v. Pelzer*, 536 U.S. 730 (2002), discusses the requirement for deliberate and intentional misconduct to establish constitutional violations.

366.    Defendants knew or recklessly disregarded the truth that the waiver would not be honored, as evidenced by their later rescindment and imposition of additional penalties.

367.    Plaintiff justifiably relied on Defendants' representations and paid the principal amount, expecting the waiver of penalties, interests, and fees pursuant to Revenue and Taxation Code § 4985.2

368.    As a direct result of Defendants' fraudulent conduct, Plaintiff suffered significant financial harm, including the loss of property value from $1,300,000 to $600,000 and additional penalties totaling approximately $700,000.

369.    Defendants' conduct constitutes intentional malice under Rule 9(b), as they acted with *intentional misrepresentation or reckless disregard for the truth*, Defendants made misleading and false statements while under Federal Jurisdiction, fulfilling the 9th Circuit's "Scienter" standard. The Defendants' actions were malicious and done with ill will and reckless disregard for Mr. Al-Mansur's rights.

**COMPLAINT**

370.   The Defendants acted with malice by holding Mr. Al-Mansur's payment for 134 days without crediting it and subsequently rescinding the waiver, knowing it would cause significant financial and emotional distress. *In re Smith v. Wade*, 461 U.S. 30 (1983), discusses the standard for malice in constitutional claims.

371.   Defendants' actions violated Plaintiff's rights under the following: **5th Amendment - Due Process:** The Defendants' arbitrary rejection of the Plaintiff's payment of the principal taxes due, rescission of waivers and refusal to credit the payment deprived Mr. Al-Mansur of property without Due Process. **8th Amendment - Excessive Fines:** The Defendants imposed excessive and punitive penalties and fees on Mr. Al-Mansur, amounting to $200,000+, constituting excessive fines. **14th Amendment - Equal Protection:** The Defendants' arbitrary and inconsistent application of Revenue and Taxation Code § 4985.2 disproportionately affected minority property owners, denying them Equal Protection under the law. *In re County of Sacramento v. Lewis*, 523 U.S. 833 (1998), which discusses substantive due process claims under the 14th Amendment.

372.   Defendant **Shahidah J. Williams (Lacy)**, in her official capacity, failed to perform her ministerial duty to assist Plaintiff in resolving the issue, contributing to the violation of Plaintiff's constitutional rights, as mentioned above and incorporated herein.

373.   As a direct result of the Defendants' malicious actions, the Plaintiff's property was placed on the Delinquent Property Tax Auction Roll and scheduled for bid auction to be conducted on the worldwide internet via BID4ASSETS.COM. The Defendants' malicious actions caused increased penalties, financial harm,

**COMPLAINT**

emotional distress, and the potential loss of his property. *In re Carey v. Piphus*, 435 U.S. 247 (1978), requires showing actual injury or damages caused by the deprivation of rights.

374. By performing the alleged acts in the manner described the Alameda County Defendants directly and proximately harmed plaintiff, as herein alleged, entitling Plaintiff to recover damages for said constitutional violations pursuant to 42 U.S.C. § 1983 incorporated in the Violation of Federal Civil Rights (42 U.S.C. § 1983) under Intentional Malice of the 5th, 8th, and 14th Amendments as fulfilled and affirmed under the Scienter Act (18 U.S.C. § 1001), (Rule 9(b)).

**ELEVENTH CLAIM FOR RELIEF**
**VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983)**
**Failed Ministerial Duty of the 5th, 8th, and 14th Amendments**
**(against all defendants and conspirators)**

375. Plaintiff incorporates by this reference the allegations set forth in paragraphs 361-374 as though set forth fully herein.

376. On or about **January 27, 2021**, the Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land, informed Mr. Al-Mansur via correspondence, via a *Notice of Sale of Tax Defaulted Property* requiring him to pay $149,946.82 [*which he did 5 months earlier but they rejected the payment in full*] in delinquent past

**COMPLAINT**

due principal taxes and instead the Alameda County Defendants *imposed* a 42%+ increase, totaling **$229,063.67+** in *penalties, interests and fees* in Violation of Plaintiffs Federal Civil Rights (42 U.S.C. § 1983) under Failed Ministerial Duty of the 5th, 8th, and 14th Amendments as affirmed under the Scienter Act (18 U.S.C. § 1001), (Rule 9(b)).

377.   Plaintiff brings this Claim for Relief against Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land and **Shahidah J. Williams (Lacy)**, in her official capacity as Alameda County Policy Director, 5th District, Board of Supervisors, *alleging* Violation of Federal Civil Rights (42 U.S.C. § 1983) under Failed Ministerial Duty of the 5th, 8th, and 14th Amendments as fulfilled under the Scienter Act (18 U.S.C. § 1001), (Rule 9(b)).

378.   The Defendants' failure to credit the Plaintiff Mr. Al-Mansur's payment and cancel penalties, interests, and fees deprived him of property without due process of law. The Defendants acted with intentional misrepresentation or reckless disregard for the truth in violation and because of their behavior Failed [their] Ministerial Duty under the 5th Amendment **(Due Process)**. *In re People ex rel. Strumpfer v. Westoaks Investment #27*, 139 Cal.App.4th 1038, 1050 (2006), which discusses the requirements under Revenue and Taxation Code § 4985.2.

379.   The Defendants *breached* their ministerial duty by holding Mr. Al-Mansur's payment for 134 days without crediting the payment, in full to the Plaintiffs'

**COMPLAINT**

property account and later rescinding the waiver of penalties and fees without justification. *In re First American Commercial Real Estate Services, Inc. v. County of San Diego*, 196 Cal.App.4th 218, 225 (2011), which discusses the criteria under Revenue and Taxation Code § 4985.2.

380. The Defendants' imposition of excessive and punitive penalties and fees on the Plaintiff, Mr. Al-Mansur, amounting to **$229,063.67+** in *penalties, interests and fees*, which constitutes Excessive Fines in Violation of the 8th Amendment. The Defendants' actions were carried out with malice and intent to punish the Plaintiff, Mr. Al-Mansur excessively and because of their behavior, the Defendants Failed [*their*] Ministerial Duty under the 8th Amendment (**Excessive Fines**)

381. The Defendants' arbitrary and inconsistent application of Revenue and Taxation Code § 4985.2 disproportionately affected minority property owners, denying them equal protection under the law. The Defendants acted with deliberate indifference to the equal protection rights of minority property owners and those designated as "*Protected Class*", as is the Plaintiff.

382. As a result of their behavior, the Defendants Failed [*their*] Ministerial Duty under the 14th Amendment (**Equal Protection**). *In re First American Commercial Real Estate Services, Inc. v. County of San Diego*\*, 196 Cal.App.4th 218, 225 (2011), which discusses the criteria under Revenue and Taxation Code § 4985.2.

383. The Defendants acted with *intentional misrepresentation and reckless disregard for the truth by not performing their ministerial duty* to credit the

**COMPLAINT**

payment, cancel the penalties and *refusing* to assist the Plaintiff's Constitutional right to an Administrative Hearing, knowing it would harm the Plaintiff, Mr. Al-Mansur. See *In re Lombardi v. City of El Cajon*, 117 F.3d 1117 (9th Cir. 1997), which discusses the requirement of intent or recklessness for constitutional claims.

384. Defendant **Shahidah J. Williams (Lacy)**, in her official capacity, failed to perform her ministerial duty to assist Plaintiff in resolving the issue administratively, contributing to the violation of Plaintiff's constitutional rights, as mentioned above and incorporated herein.

385. As a direct result of the Defendants' fraudulent and malicious actions, the Plaintiff's property was placed on the Delinquent Property Tax Auction Roll and scheduled for bid auction to be conducted on the worldwide internet via BID4ASSETS.COM.

386. The Defendants' malicious actions caused increased penalties, financial harm, emotional distress, and the potential loss of his property. See *In re Carey v. Piphus*, 435 U.S. 247 (1978), requires showing actual injury or damages caused by the deprivation of rights.

387. By performing the alleged acts in the manner described the Alameda County Defendants directly and proximately harmed plaintiff, as herein alleged, entitling Plaintiff to recover damages for said constitutional violations pursuant to 42 U.S.C. § 1983 incorporated in the Violation of Federal Civil Rights (42 U.S.C. § 1983) under Failed Ministerial Duty of the 5th, 8th, and 14th Amendments as fulfilled under the Scienter Act (18 U.S.C. § 1001), (Rule 9(b)).

**COMPLAINT**

# TWELTH CLAIM FOR RELIEF

## VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983)
### Inverse Condemnation of the 5th and 14th Amendments
### (against all defendants and conspirators)

388.  Plaintiff incorporates by this reference the allegations set forth in paragraphs 375-387 as though set forth fully herein.

389.  Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, failed to provide notice of underpayment within the statutory period pursuant RTC § 4985.2 (b), *rejected* Mr. Al-Mansur's $149,946.82 timely payment (pursuant to Revenue and Taxation Code § 4985.2 subdivision (a) and (b)) of the principal taxes due and *refused* Mr. Al-Mansur's request for cancellation of all delinquent penalties, interests and fees in contravention to Revenue and Taxation Code § 4985.2 subdivision (a) and (b).

390.  Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, placed and advertised the Plaintiff's property on the Alameda County Delinquent Property Tax Auction list and maliciously advertising the Plaintiffs property as available for bidding on BID4ASSETS.COM, on or around August 3, 2020.

391.  Thus, *affirming and implementing* the Regulatory and Physical Taking of the Plaintiffs property in violation of the Plaintiffs Federal Civil Rights pursuant to 42 U.S.C. § 1983 under Inverse Condemnation of the 5th and 14th Amendments.

**COMPLAINT**

392.    The **FIRST** violation of the Plaintiffs Federal Civil Rights pursuant to 42 U.S.C. § 1983 under the Inverse Condemnation of  the 5th and 14th Amendments, occurred on or about **January 27, 2021**, the Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land, sent Mr. Al-Mansur a Notice of Sale of Tax Defaulted Property exhorting Mr. Al-Mansur to pay $379,010.49 in taxes, penalties, interests and fees to redeem his 2421 Market Street property on or before March 18, 2021. **[EXHIBIT J]**.

393.    The **SECOND** violation of the Plaintiffs Federal Civil Rights pursuant to 42 U.S.C. § 1983 under the Inverse Condemnation of  the 5th and 14th Amendments, the Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land *again* notified the Plaintiff, pursuant to a Notice issued **January 12, 2022** with a redemption payment of **$432,894.00**. Otherwise, the Market Street property will again be placed on the Alameda County Delinquent Taxes list with the new auction date scheduled for March 18, 2022. **[EXHIBIT K]**

394.    Defendant's conduct, as described above, constitutes a violation of the Plaintiffs Federal Civil Rights pursuant to 42 U.S.C. § 1983 under Inverse Condemnation under  the 5th and 14th Amendments.

**COMPLAINT**

395. To establish a claim for inverse condemnation under the 5th and 14th Amendments in the Northern California 9th Circuit District Court, the plaintiff must demonstrate that a governmental action has taken their property for public use without just compensation.

396. Plaintiffs' Inverse condemnation allegation has proven that the Defendants government actions have significantly interfered with the Plaintiff's use and enjoyment of their property, which led to efforts by the Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector's actions lead to the deprivation of the Plaintiffs property rights and investment-backed expectations.

397. **Government Action:** The Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collectors actions, including initially accepting full payment, failure to notify Plaintiff of an underpayment within the statutory period, offering a partial waiver pursuant to Revenue and Taxation Code 4985.2(a), then rejecting payment, cancelling the waiver of penalties, interests and fees as mandated by law and placing the property on the sale list, constitutes a *Government Action*.

398. The Defendants actions lead to the deprivation of the Plaintiffs property rights, investment-backed expectations and a violation of the Plaintiffs Federal Civil Rights pursuant to 42 U.S.C. § 1983 under Inverse Condemnation of the 5th and 14th Amendments. In re *Lingle v. Chevron U.S.A. Inc.\**, 544 U.S. 528 (2005), which discusses regulatory takings.

.

**COMPLAINT**

112

399. **Reasonable Investment-Backed Expectations:** The Plaintiff reasonably expected their full and timely payment to resolve the tax delinquency. The California Revenue and Taxation Code 4985.2(a) incentivizes full payment by offering a waiver of penalties, interest, and fees. The Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, initial acceptance of Plaintiffs payment, in full, lack of notice of underpayment, and partial waiver created a " *taking*" of the Plaintiff's reasonable investment-backed expectations and a violation of the Plaintiffs Federal Civil Rights pursuant to 42 U.S.C. § 1983 under Inverse Condemnation of the 5th and 14th Amendments. See In re *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978), which discusses factors in regulatory takings, including interference with investment-backed expectations.

400. **Denial of Economically Viable Use:** The Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector placement of the Plaintiffs property on the Delinquent Taxes Auction despite the full payment for principal and delinquent taxes hindered the Plaintiff's ability to use or sell the property at a fair market value. An investment property's value relies on predictable ownership and the ability to sell without undue tax burdens.

401. **Lack of Just Compensation:** The threat of a tax sale, even if the property isn't ultimately sold, has created a significant economic loss for the Plaintiff. Without receiving any compensation for this loss in value, the government action violates the Plaintiffs Federal Civil Rights pursuant to 42 U.S.C. § 1983 under Inverse Condemnation of the 5th and 14th Amendments.

402. As a direct result of the Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, fraudulent and malicious actions, the Plaintiff's property was placed on the Delinquent Property Tax Auction Roll and scheduled for bid auction to be conducted on the worldwide internet via BID4ASSETS.COM. The Defendants' malicious actions caused increased penalties, financial harm, emotional distress, and the potential loss of his property. *In re Carey v. Piphus*, 435 U.S. 247 (1978), requires showing actual injury or damages caused by the deprivation of rights.

403. By performing the alleged acts in the manner described the Alameda County Defendants directly and proximately harmed plaintiff, as herein alleged, entitling Plaintiff to recover damages for said constitutional violations pursuant to 42 U.S.C. §1983 incorporated in the Violation of Federal Civil Rights (42 U.S.C. § 1983) under Inverse Condemnation of the 5th, 8th, and 14th Amendments as fulfilled under the Scienter Act (18 U.S.C. § 1001), (Rule 9(b)).

## THIRTEENTH CLAIM FOR RELIEF
## VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983)
### Disparate Impact under the Fair Housing Act (FHA)
### (against all defendants and conspirators)

404. Plaintiff incorporates by this reference the allegations set forth in paragraphs 388-403 as though set forth fully herein.

405. The Defendants' actions under color of state law have deprived Mr. Al-Mansur of his constitutional rights, warranting relief under 42 U.S.C. § 1983. As established in *Monell v. Department of Social Services of the City of New*

**COMPLAINT**

*York*, 436 U.S. 658 (1978), municipalities and their officials can be held liable for constitutional violations.

406.   Since 2017, the Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector and **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector, by the impositions of higher property tax assessments, have *increased* the Plaintiffs Yearly Tax Installment by **76.96%** and the Property Tax Rate has *increased* **1.5825%** from 2017 to the Present. **[EXHIBIT D]**

407.   On or about **January 27, 2021**, the Defendants, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land, informed Mr. Al-Mansur via correspondence, a *Notice of Sale of Tax Defaulted Property* requiring him to pay $149,946.82 [*which he did 5 months earlier but they rejected the payment in full*] in delinquent past due principal taxes and instead the Alameda County Defendants *imposed* a **42%+ increase**, totaling $229,063.67+ in *penalties, interests and fees* to redeem The Property.

408.   The Disparate Impact of the abovementioned practices on African American communities constitutes a violation of the Fair Housing Act (FHA) and the Equal Protection Clause of the 14th Amendment.

409.   As established in *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015), Plaintiffs can

**COMPLAINT**

challenge practices that have a Disparate Impact on minority communities without proving discriminatory intent. The Defendants' refusal to credit the tax payment and the inconsistent application of Revenue and Taxation Code § 4985.2 disproportionately impacts African American communities, as evidenced by the *increase* of the Plaintiffs' Yearly Tax Installment by **76.96%** and the *increase* of the Plaintiffs' Property Tax Rate by **1.5825%**, thus leading to higher rates of property tax sales and loss of homes.

410. Under the Equal Protection Clause, as discussed in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), the discriminatory intent and Disparate Impact of the Defendants' actions violate the 14th Amendment. The refusal to properly credit tax payments and subsequent penalties imposed on Mr. Al-Mansur exemplify this.

411. **Neutral Policy or Practice:**
The Defendants' practice of rescinding previously granted waivers of penalties and fees and refusing timely payments of delinquent property taxes without clear justification, constitutes a *facially neutral policy*. *See In re Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015), which recognizes Disparate Impact claims under the FHA.

412. **Disproportionate Adverse Effect:**
The Defendants' actions in rescinding waivers and refusing payments disproportionately affects minority property owners, as evidenced by the higher rates of delinquent property tax sales and the percentage of increase in the property tax rates in predominantly minority neighborhoods. *See In re Pfaff v.*

*HUD*, 88 F.3d 739 (9th Cir. 1996), discusses the requirement to show disparate impact on a protected class.

413. **Causation:**

The Defendants' policy of inconsistent application of Revenue and Taxation Code § 4985.2, particularly the rescission of waivers and refusal of payments, directly causes the disproportionate adverse impact on minority property owners, including Mr. Al-Mansur.  *See In re Mt. Holly Gardens Citizens in Action, Inc. v. Township of Mount Holly*, 658 F.3d 375 (3rd Cir. 2011), which addresses the causal link in Disparate Impact claims.

414. **Justification:**

The defendants' policy lacks a legitimate, non-discriminatory justification, as the rescission of waivers and refusal of payments appear arbitrary and discriminatory. Less discriminatory alternatives, such as consistent application of Revenue and Taxation Code § 4985.2, would achieve the same goals without Disparate Impact.  *See In re Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015), discussing the burden on defendants to prove justification.

415. Defendants' actions violated Plaintiff's rights under the following:

1. **5th Amendment - Due Process:** The Defendants' arbitrary rescission of waivers and refusal to credit the payment deprived Mr. Al-Mansur of property without Due Process.

2. **8th Amendment - Excessive Fines:** The Defendants imposed excessive and punitive penalties and fees on Mr. Al-Mansur, amounting to $200,000+, constituting excessive fines.

**COMPLAINT**

3. **14th Amendment - Equal Protection:** The Defendants' arbitrary and inconsistent application of Revenue and Taxation Code § 4985.2 disproportionately affected minority property owners, denying them Equal Protection under the law. *In re County of Sacramento v. Lewis*, 523 U.S. 833 (1998), which discusses substantive due process claims under the 14th Amendment.

416. As a direct result of the Defendants, the **County of Alameda, Henry C. Levy,** in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois,** in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land and **Shahidah J. Williams (Lacy),** in her official capacity as Alameda County Policy Director, 5th District, Board of Supervisors, *fraudulent and malicious actions,* the Plaintiff's property was placed on the Delinquent Property Tax Auction Roll and scheduled for bid auction to be conducted on the worldwide internet.

417. The Defendants' *malicious actions caused increased penalties, financial harm, emotional distress, and the potential loss of his property. In re Carey v. Piphus,* 435 U.S. 247 (1978), requires showing actual injury or damages caused by the deprivation of rights.

418. By performing the alleged acts in the manner described the Alameda County Defendants directly and proximately harmed plaintiff, as herein alleged, entitling Plaintiff to recover damages for said constitutional violations pursuant to 42 U.S.C. § 1983 incorporated in the Violation of Federal Civil Rights (42 U.S.C. § 1983) under Disparate Impact under the Fair Housing Act (FHA) in violation of the 5th, 8th, and 14th Amendments as fulfilled under the Scienter Act (18 U.S.C. § 1001), (Rule 9(b)).

**COMPLAINT**

118

# FOURTEENTH CLAIM FOR RELIEF
## VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983)
### Equitable Estoppel
### (against all defendants and conspirators)

419.    Plaintiff incorporates by this reference the allegations set forth in paragraphs 404-418 as though set forth fully herein.

420.    The Plaintiff asserts a claim for Equitable Estoppel under Federal Common Law. The Plaintiff argues that the Defendants should be estopped from enforcing any penalties, interest, or fees due to their failure to comply with statutory notification requirements under RTC § 4985.2(b).

421.    Good Faith Compliance by Plaintiff: On February 19, 2020, the Plaintiff paid the principal taxes in full and delivered a letter affirming that the payment was exclusive of penalties, interests and fees, in reliance on the Defendants' initial demand for payment. The Plaintiff acted in good faith and made the payment within the statutory window required under RTC § 4985.2 (a) and (b).

422.    Defendants' Delay in Notification: The Defendants failed to notify the Plaintiff of the alleged underpayment until 30 days later, in violation of the 10-day notice requirement under RTC § 4985.2(b). The Defendants' delay in providing this notification misled the Plaintiff into believing that his payment was sufficient and complete.

**COMPLAINT**

423. Inequitable Conduct by Defendants: By failing to adhere to the statutory notification requirements, the Defendants created an inequitable situation where the Plaintiff was deprived of the opportunity to correct any underpayment within the required statutory period of 10 days. As a result, the Plaintiff now faces penalties, interest, and fees that would have been avoided had proper notice been given See *In Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51 (1984)[9]

424. Equitable Estoppel Applies: The Defendants should be estopped from enforcing penalties and fees because their own actions, including the delayed notification, prevented the Plaintiff from taking timely corrective action. Equity demands that a party cannot benefit from its own failure to follow statutory procedures, particularly when that failure causes harm to another party. See *In County of San Diego v. California Water & Tel. Co.*, 30 Cal.2d 817 (1947)[10]

## PENDENT STATE LAW CLAIMS

**FIFTEENTH CLAIM FOR RELIEF**
**VIOLATION OF THE CALIFORNIA CONSTITUTION**
**Right to Liberty (Cal. Const. Art. 1, §1)**
**(against all defendants and conspirators)**

---

[9] *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51 (1984): The U.S. Supreme Court recognized that equitable estoppel can apply against the government when it engages in **affirmative misconduct** that leads to unfair outcomes. The Defendants' failure to comply with the statutory 10-day notice requirement constitutes affirmative misconduct that should bar the enforcement of penalties.

[10] *County of San Diego v. California Water & Tel. Co.*, 30 Cal.2d 817 (1947): The court held that equitable estoppel applies when a government entity's failure to follow statutory procedures prevents a party from fulfilling their obligations. The Plaintiffs argued that the Defendants' failed to provide timely notification which estopped them from imposing penalties and fees.

120

**COMPLAINT**

425.    Plaintiff incorporates by this reference the allegations set forth in paragraphs 419-424 as though set forth fully herein.

426.    Since 1879 the California Constitution has provided intrinsic and unalienable rights and liberties to its citizens. Chief among those rights and liberties are those found in Article 1, Section 1 which provides, in pertinent part:

> Article 1, Section 1:
> All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

427.    Defendants' rejection of Plaintiffs delinquent tax payment [in full] of $149,946.82 and the Defendants cancellation of Plaintiffs request for waiver of fees, interest and penalties pursuant to Revenue and Taxation Code §4985.2, and the Regulatory Taking of Plaintiffs Real Property interfered with Plaintiff's rights and liberties under Article 1, §§ 1, 7, 19 of CA Constitution, but have further deprived Plaintiff of the use, enjoyment & ability to meet Plaintiffs' property tax obligations due to the arbitrary, capricious, and discriminatory actions of the Defendants, and their misrepresentations and callous disregard for the truth as alleged herein and in all preceding allegations as if fully rewritten herein.

428.    Plaintiff has a protected liberty interest in his property and in the fair and just application of tax laws, tax payment obligations, including the cancellation of penalties and fees as provided under Revenue and Taxation Code § 4985.2.

429. Defendants' actions in initially rejecting Plaintiff's principal payment of taxes due [in full], granting the waiver and later rescinding it, along with placing the property on the delinquent tax sale list and imposing additional penalties, constitute a deprivation of Plaintiff's protected liberty interest.

430. Defendants Levy and Manaois acted with intentional misrepresentation and reckless disregard for the truth by first rejecting Plaintiffs full payment of delinquent taxes in the amount of $149,946.82, confirming the waiver of $28,754.77 in penalties, interest, and fees for only 4 years instead of all penalties, interest, and fees as per Revenue and Taxation Code § 4985.2(a) and then rescinding it without adequate explanation or legal basis, fulfilling the 9th Circuit's "Scienter" standard.

431. Defendant Williams failed to perform her ministerial duty to assist Mr. Al-Mansur in seeking an administrative remedy, further depriving Plaintiff of his protected liberty interest.

432. As a direct result of Defendants' actions, Plaintiff suffered significant financial harm, including the loss of property value from $1,300,000 to $600,000 and additional penalties totaling approximately $700,000.

433. By performing the alleged acts in the manner described the Alameda County Defendants directly and proximately harmed plaintiff, as herein alleged, entitling Plaintiff to recover damages for said constitutional violations pursuant to 42 U.S.C. § 1983 incorporated in the Violation of Federal Civil Rights (42 U.S.C. § 1983) under Article 1, Section 1 of California Constitution, as fulfilled and plead in this venue under the Scienter Act (18 U.S.C. § 1001), (Rule 9(b)).

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SIXTEENTH CLAIM FOR RELIEF**
**VIOLATION OF THE CALIFORNIA CONSTITUTION**
**Right to Liberty (Cal. Const. Art. 1, §7)**
**(against all defendants and conspirators)**

434.    Plaintiff incorporates by this reference the allegations set forth in paragraphs 425-433 as though set forth fully herein.

    1.    Article 1, Section 7 of California Constitution provides, in pertinent part: A Person may not be deprived of Life, Liberty, or Property without Due Process of law or denied Equal Protection of the laws.

435.    California's constitutional guarantee of equal protection and the 14th Amendment's guarantee of equal protection are substantially equivalent and analyzed in a similar fashion. *Kenneally v. Medical Board*, 27 CA.4th 489 (1994).

436.    In addition, California's constitutional guaranty of equal protection under Article 1 §7 of the Constitution has been judicially defined to mean that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in their pursuit of happiness. *People v. Romo*, 14 Cal.3d 189 (1975); *Gray v. Whitmore*, 17 Cal.App.3d 1 (1971).

437.    Defendants' rejection of Plaintiffs delinquent tax payment [in full] of $149,946.82 and the Defendants cancellation of Plaintiffs request for waiver of

**COMPLAINT**

fees, interest and penalties pursuant to Revenue and Taxation Code § 4985.2, and the Regulatory Taking of Plaintiffs Real Property interfered with Plaintiff's rights and liberties under Article 1, §§ 1, 7, 19 of CA Constitution, but have further deprived Plaintiff of the use, enjoyment & ability to meet Plaintiffs property tax obligations due to the arbitrary, capricious, and discriminatory actions of the Defendants, and Defendants misrepresentations and callous disregard for the truth as alleged herein and in all preceding allegations as if fully rewritten herein.

438.   Plaintiff has a protected liberty interest in his property and in the fair and just application of tax laws, tax payment obligations, including the cancellation of penalties and fees as provided under Revenue and Taxation Code § 4985.2.

439.   Defendants' actions in initially rejecting Plaintiff's principal payment of taxes due [in full], granting the waiver and later rescinding it, along with placing the property on the delinquent tax sale list and imposing additional penalties, constitute a deprivation of Plaintiff's protected liberty interest and violates Plaintiffs California Constitutional liberty rights.

440.   Defendants Levy and Manaois acted with intentional misrepresentation and reckless disregard for the truth by first rejecting Plaintiffs full payment of delinquent taxes in the amount of $149,946.82, confirming the waiver of $28,754.77 in penalties, interest, and fees for only 4 years instead of all penalties, interest, and fees as per Revenue and Taxation Code § 4985.2(a) and then rescinding it without adequate explanation or legal basis, fulfilling the 9th Circuit's "Scienter" standard.

**COMPLAINT**

441.  Defendant Williams failed to perform her ministerial duty to assist Mr. Al-Mansur in seeking an administrative remedy, further depriving Plaintiff of his protected liberty interest and violates Plaintiffs California Constitutional liberty rights.

442.  As a direct result of Defendants' actions, Plaintiff suffered significant financial harm, including the loss of property value from $1,300,000 to $600,000 and additional penalties totaling approximately $700,000.

443.  By performing the alleged acts in the manner described the Alameda County Defendants directly and proximately harmed plaintiff, as herein alleged, entitling Plaintiff to recover damages for said constitutional violations pursuant to 42 U.S.C. § 1983 incorporated in the Violation of Federal Civil Rights (42 U.S.C. § 1983) under Article 1, Section 7 of California Constitution, as fulfilled and plead in this venue under the Scienter Act (18 U.S.C. § 1001), (Rule 9(b)).

## SEVENTEENTH CLAIM FOR RELIEF
## VIOLATION OF THE CALIFORNIA CONSTITUTION
### Right to Liberty (Cal. Const. Art. 1, §19)
### (against all defendants and conspirators)

444.  Plaintiff incorporates by this reference the allegations set forth in paragraphs 434-443 as though set forth fully herein.

445.  Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector *affirms* his threat to Mr. Al-Mansur during the

**COMPLAINT**

February 4th, 2020, meeting, when the Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector stated:

"*I will **take your property** and sell it to someone else*".

446.    As alleged and plead in this action, the malicious and fraudulent actions of the Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, has *affirmed and implemented* the Regulatory and Physical Taking of Mr. Al-Mansur's property in violation of Federal and State Constitutional Takings Clause.

447.    Defendant, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector has followed through with his threat to take the Plaintiffs Real Property with malice disregard for State, Federal and Constitutional law.

448.    Article 1, Section 19 of California Constitution provides, in pertinent part:

> *Private property may be taken or damaged for a public use and **only** when just compensation*, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation.

449.    California courts regularly hold the *California Constitution provides just compensation to property owners when their land is taken* for public use because the law seeks to bar the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the

**COMPLAINT**

1   public as a whole. *Jefferson Street Ventures, LLC v. City of Indio*, 236 C.A.4th

2   1175 (2015).

3

4   450.   Moreover, the principle behind the concept of just compensation for property

5   taken for public use is to put the owner in as good a position pecuniarily as he

6   or she would have occupied if his or her property had not been taken. *City of*

7   *Carlsbad v. Rudvalis*, 109 CA.4th 667 (App. 4 Dist. 2003).

8

9   451.   Finally, the constitutional guarantee of just compensation for property taken by

10   the government is not only intended to protect the landowner, but it also protects

11   the public by limiting its liability to losses that can fairly be attributed to the

12   taking. *Emeryville Redev. v. Harcros Pigments, Inc.*, 101 CA.4th 1083 (2002).

13

14   452.   Defendants' rejection of Plaintiffs delinquent tax payment [in full] of

15   $149,946.82 and the Defendants cancellation of Plaintiffs request for waiver of

16   fees, interest and penalties pursuant to Revenue and Taxation Code §4985.2,

17   and the Regulatory and Physical Taking of Plaintiffs Real Property interfered

18   with Plaintiff's rights and liberties under Article 1, §§ 1, 7, 19 of CA

19   Constitution, but have further deprived Plaintiff of the use, enjoyment & ability

20   to meet Plaintiffs property tax obligations due to the arbitrary, capricious, and

21   discriminatory actions of the Defendants, and Defendants misrepresentations

22   and callous disregard for the truth as alleged herein and in all preceding

23   allegations as if fully rewritten herein.

24

25   453.   Plaintiff has a protected liberty interest in his property and in the fair and just

26   application of tax laws, tax payment obligations, including the cancellation of

27   penalties and fees as provided under Revenue and Taxation Code § 4985.2.

28

**COMPLAINT**

454.    Defendants' actions in initially granting the waiver and later rescinding it, along with placing the property on the delinquent tax sale list and imposing additional penalties, constitute a deprivation of Plaintiff's protected liberty interest and violates Plaintiffs California Constitutional liberty rights.

455.    Defendants Levy and Manaois acted with intentional misrepresentation and reckless disregard for the truth by first rejecting Plaintiffs full payment of delinquent taxes in the amount of $149,946.82, confirming the waiver of $28,754.77 in penalties, interest, and fees for only 4 years instead of all penalties, interest, and fees as per Revenue and Taxation Code § 4985.2(a) and then rescinding it without adequate explanation or legal basis, fulfilling the 9th Circuit's "Scienter" standard.

456.    Defendant Williams failed to perform her ministerial duty to assist Mr. Al-Mansur in seeking an administrative remedy, further depriving Plaintiff of his protected liberty interest and violates Plaintiffs California Constitutional liberty rights.

457.    Defendants *Regulatory and Physical Taking* of Plaintiffs Real Property violated Plaintiff's liberty & property rights under United States and California Constitutions.

458.    As a direct result of Defendants' actions, Plaintiff suffered significant financial harm, including the loss of property value from $1,300,000 to $600,000 and additional penalties totaling approximately $700,000.

**COMPLAINT**

128

459.  By performing the alleged acts in the manner described the Alameda County Defendants directly and proximately harmed plaintiff, as herein alleged, entitling Plaintiff to recover damages for said constitutional violations pursuant to 42 U.S.C. § 1983 incorporated in the Violation of Federal Civil Rights (42 U.S.C. § 1983) under Article 1, Section 19 of California Constitution, as fulfilled and plead in this venue under the Scienter Act (18 U.S.C. § 1001), (Rule 9(b)).

**EIGHTHTEENTH CLAIM FOR RELIEF**
**Misrepresentation by a Taxing Authority**
**Violation of the California Civil Code §§ 1709-1710;**
**Violation of the California Revenue and Taxation Code §§ 5900-5911**
**(against all defendants and conspirators)**

460.  Plaintiff incorporates by this reference the allegations set forth in paragraphs 444-459 as though set forth fully herein.

461.  Plaintiff brings this Claim for Relief against Defendants, **County of Alameda**, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land and **Shahidah J. Williams (Lacy)**, in her official capacity as Alameda County Policy Director, 5th District, Board of Supervisors acting as a representatives of the **County of Alameda**, intentionally or negligently made false representations regarding the acceptance of the Plaintiff's property tax payment and the subsequent actions to be taken.

**COMPLAINT**

129

462. **Misrepresentation**: The Defendant's, in their communications with the Plaintiff, falsely represented that the Plaintiff's full payment would be rejected due to reasons that were not substantiated by law or policy.

463. Defendants further misrepresented the legal consequences of this rejection by placing Plaintiff's property on the Delinquent Property Tax list and assessing an additional 18% fee, actions that were not warranted under the circumstances and were in direct violation of California tax laws.

464. The Defendant's knew or should have known that these representations were false, and that the Plaintiff was entitled to have the full payment accepted without the imposition of additional fees or penalties.

465. Plaintiff justifiably relied on the Defendant's representations, expecting that the payment would be processed in accordance with California law, and was subsequently harmed when the Defendant's failed in their ministerial duties and responsibilities to honor an administrative remedy, acceptance of the payment in full and cancellation of penalties, interests and fees pursuant to Revenue and Taxation Code § 4985.2(a). However, the Defendant's instead imposed additional financial and economic burdens upon the Plaintiff.

466. As a result of Defendant's misrepresentation, Plaintiff suffered economic damages, including the wrongful assessment of additional fees, harm to the property's financial status, and the potential for further penalties and loss

## NINETEENTH CLAIM FOR RELIEF
### Violation of the California Taxpayers' Bill of Rights
### (California Revenue and Taxation Code §§ 5900-5911)
### (against all defendants and conspirators)

467.   Plaintiff incorporates by this reference the allegations set forth in paragraphs 460-466 as though set forth fully herein.

468.   The California Taxpayers' Bill of Rights was enacted to ensure that taxpayers are provided with fair and equitable treatment by the state's tax authorities, including protection against unnecessary fees and penalties, and the right to fair and courteous treatment in the collection of taxes.

469.   Plaintiff brings this Claim for Relief against Defendants, **County of Alameda**, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land and **Shahidah J. Williams (Lacy)**, in her official capacity as Alameda County Policy Director, 5th District, Board of Supervisors acting as a representatives of the **County of Alameda**, violated the Plaintiff's rights under the California Taxpayers' Bill of Rights by rejecting the Plaintiff's full payment of the property tax, without a legitimate basis, and subsequently placing the Plaintiff's property on the Delinquent Property Tax list.

470.   The rejection of the payment and the subsequent actions taken by the Defendants were arbitrary, capricious, and without legal justification, violating Plaintiff's rights under California Revenue and Taxation Code §§ 5900-5911.

**COMPLAINT**

471. Defendant's conduct directly contravened the Plaintiff's right to make full and timely payment of property taxes and to be free from unwarranted fees, penalties, and harassment by tax authorities.

472. As a direct and proximate result of the Defendant's violation of the California Taxpayers' Bill of Rights, Plaintiff suffered economic damages, including the wrongful assessment of an additional 18% fee on the property tax rate and the placement of the property on the delinquent property tax list, causing harm to Plaintiff's financial standing and creditworthiness.

## TWENTIETH CLAIM FOR RELIEF
### (Fraudulent Claims), Civil Code, and Revenue and Taxation Code
### (California Penal Code § 72; California Revenue and Taxation Code §§ 12601, 13002, 13004, 26100; California Civil Code §§ 1709-1710)
#### (against all defendants and conspirators)

473. Plaintiff incorporates by this reference the allegations set forth in paragraphs 467-472 as set forth fully herein.

474. California Penal Code § 72 provides that every person who, with intent to defraud, presents for allowance or payment any false or fraudulent claim to any public board or officer in the state, or knowingly presents any false or fraudulent claim for the payment of public money, is guilty of a felony.

475. **Fraudulent Conduct:** the Defendant's, acting with intent to defraud, knowingly and willfully failed to present for allowance the Plaintiff's full payment to the appropriate State Auditors, Commissioners and the State Board of Equalization, in contravention to California Revenue and Taxation Codes §§

**COMPLAINT**

132

2601-2616, 4717, among others and California Government Codes §§ 24353, 68101 and 68085, thereby depriving the Plaintiff of his property rights, subjecting him to unjust financial penalties and potential property loss.

476. Defendant knowingly presented false and fraudulent claims to the California State Auditors, Commissioners and the State Board of Equalization, by asserting that the Plaintiff's property taxes were delinquent, which resulted in the wrongful assessment of additional penalties and the improper listing of the Plaintiff's property as delinquent.

477. The placement of Plaintiff's property on the Delinquent Property Tax list constituted a false claim, as the property was not legally or factually delinquent.

478. This false claim was made with the intent to defraud both the Plaintiff and the State of California by misrepresenting the actual payment status and creating the appearance of a delinquency where none existed, thereby unlawfully increasing the tax revenue for the county and state.

479. By failing to report the Plaintiff's payment and instead presenting a false claim, the Defendant violated California Penal Code § 72, which is designed to prevent public officers from engaging in fraudulent activities that harm taxpayers and the state.

480. **Violation of Revenue and Taxation Code:** The Defendant's conduct also violated various provisions of the California Revenue and Taxation Code, including but not limited to:

- **California Revenue and Taxation Code § 12601:** Prohibiting the intentional misrepresentation of tax information.

- **California Revenue and Taxation Code § 2602:** Requires the tax collector to perform all duties related to the collection of taxes as prescribed by law.

- **California Revenue and Taxation Code § 2611.6:** Requires the tax collector to accurately report the receipt of payments, even if payments are sent to an incorrect address or there is a failure to send a tax bill.

- **California Revenue and Taxation Code §§ 2614 & 2615:** Mandate that tax collectors record all payments received and issue appropriate receipts, ensuring proper accounting and transparency.

- **California Government Code § 27005:** Obligates the treasurer to maintain proper accounting records for all transactions involving public money, ensuring accuracy and compliance with legal procedures.

- **California Revenue and Taxation Code § 2922:** provides detailed procedures for the assessment and collection of delinquent taxes, including the responsibilities of tax collectors in managing these accounts. These sections collectively ensure that tax collectors adhere to the legal requirements and maintain accuracy and fairness in the collection process.

481.   Correct and Truthful Reporting of All Tax Payments Received:

- **California Revenue and Taxation Code § 4985.2:** Addresses the cancellation of penalties, interest, and fees for late tax payments, provided that certain conditions (like fraud, reasonable cause and circumstances beyond the taxpayer's control, etc.) are met. The code requires that

**COMPLAINT**

accurate records of payments and penalties be maintained
and reported.

- **California Government Code § 23005:** Specifies the duties
  of local officials to ensure correct reporting of financial
  transactions, including tax payments.

482.  Defendant's actions in rejecting the Plaintiff's full payment and subsequently
reporting a delinquency without justification violated these statutory provisions
and directly harmed the Plaintiff by subjecting him to unwarranted penalties
and the loss of property rights.

483.  In addition to violating the California Penal Code and Revenue and Taxation
Code, the Defendant's actions constitute fraud under California Civil Code §§
1709-1710, which defines deceit and fraudulent misrepresentation.

484.  Defendant, by misrepresenting the payment status to the State Auditors,
Commissioners and the State Board of Equalization, in contravention to
California Revenue and Taxation Codes §§ 2601-2616 and 4717, and California
Government Codes §§ 24353, 68101 and 68085, and by placing the Plaintiff's
property on the Delinquent Property Tax list, intentionally misled the Plaintiff
and the State of California, causing economic harm, reputational damage and
potential loss to the Plaintiff.

485.  As a direct and proximate result of Defendant's fraudulent conduct, Plaintiff
has suffered significant financial harm, including the wrongful assessment of
additional fees, damage to creditworthiness, and the potential loss of property.

**COMPLAINT**

## **RELIEF REQUESTED**

486.    WHEREFORE, Plaintiff requests that this Court:

487.    Issue a Finding under 28 USC § 2201 and 28 USC § 1343(a) containing:

488.    Issue a Finding that the Defendants, **COUNTY OF ALAMEDA**, as a political subdivision of the State of California, organized under California law, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land committed a violation of the following:

489.    **(1)**:Violation of Takings Clause, **(2)**:Financial Elder Abuse: *Taking,* **(3)**:Violation of Excessive Fines Clause, **(4)**:Violation of Due Process Clause, **(5)**:Violation of Equal Protection Clause, **(6)**:Fraud (Rule 9(b)), **(7)**:Fraudulent Deprivation of Property, **(8)**:Fraud and Misrepresentation, **(9)**:*Monell Liability,* **(10)**:Intentional Malice, **(11)**:Failed Ministerial Duty, **(12)**:Inverse Condemnation, **(13)**:Disparate Impact-Fair Housing Act (FHA), **(14)**: Equitable Estoppel, **(15)**:*Right to 7iberty* (Cal. Const. Art. 2, §1), **(16)**:*Right to Liberty* (Cal. Const. Art. 2, §7), **(17)**:*Right to Liberty* (Cal. Const. Art. 2, §19), **(18)**:*Misrepresentation by a Taxing Authority*: (Violation of the California Civil Code §§ 1709-1710; Violation of the California Revenue and Taxation Code §§ 5900-5911), **(19)**:*Violation of the California Taxpayers' Bill of Rights*, **(20)**:Violations:(*Fraudulent Claims*): *Civil Code, and Revenue and Taxation Code* (California Penal Code § 72; California Revenue and Taxation Code §§ 12601, 13002, 13004, 26100; California Civil Code §§ 1709-1710).

490. Declare that their actions constituted Financial Elder Abuse under California Welfare & Institutions Code § 15610.30 and violation of the Elder Abuse and Dependent Adult Civil Protection Act (EADACPA) in contravention to Federal, State and Municipal law.

491. Issue a Finding that the Defendants, *failed to notify* Plaintiff of an underpayment within the 10 day period pursuant to the Revenue and Taxation Code § 4985.2 subdivision (b), *rejected* Mr. Al-Mansur's $149,946.82 timely payment (pursuant to Revenue and Taxation Code § 4985.2 subdivision (a)) of the principal taxes due and *refused* Mr. Al-Mansur's request for cancellation of all delinquent penalties, interests and fees in contravention to Revenue and Taxation Code § 4985.2 subdivision (a,) and (b) in full on February 19, 2020, then *placing* and advertising the Plaintiff's property on the Alameda County Delinquent Property Tax Auction list and fraudulently advertising the Plaintiffs property as available for bidding on the internet, on or around August 3, 2020.

492. Issue a Finding that the Defendants, *affirmed and implemented* the Regulatory and Physical Taking of the Plaintiffs property in violation of the Plaintiffs Federal Civil Rights pursuant to 42 U.S.C. § 1983 under the Takings Clause of the 5th Amendment.

493. Plaintiff requests that this Court issue a finding that the Defendants, **COUNTY OF ALAMEDA**, as a political subdivision of the State of California, organized under California law, **Henry C. Levy**, in his official capacity as Alameda County Treasurer-Tax Collector, **Julie P. Manaois**, in her official capacity as Alameda County Chief Deputy Tax Collector and **Theody Virrey**, in his

official capacity as Alameda County Tax Collector Specialist-Tax Defaulted Land actions and allegations, *as set forth in this complaint and all alleged claims herein,* are in contravention with Federal, State and Municipal law and as a result of their actions, be deemed, null and void, and of no effect, and adjudged as:

1) unconstitutional under the Fifth Amendment;

2) unconstitutional under the Eighth Amendment;

3) unconstitutional under the Fourteenth Amendment;

4) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the United States and the State of California Constitutions;

5) contrary to constitutional right, power, privilege, or immunity in violation of the United States and the State of California Constitutions;

6) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right in violation of United States and the State of California Constitutions.

7) unlawful product of a conspiracy to violate plaintiff's constitutional & property rights, violating 42 USC § 1985, enforced by 42 USC § 1983

494.  Plaintiff requests that this Court issue a finding that the alleged acts by the Alameda County Defendants directly and proximately harmed plaintiff, as herein alleged, entitling Plaintiff to recover damages for said constitutional violations pursuant to 42 U.S.C. § 1983 incorporated in the Violation of Federal Civil Rights (42 U.S.C. § 1983) including under Disparate Impact under the Fair Housing Act (FHA) in violation of the 5th, 8th, and 14th Amendments as allegations affirmed under the Scienter Act (18 U.S.C. § 1001), (Rule 9(b)).

**COMPLAINT**

138

495. Set aside and hold unlawful all Defendants' Acts, Impositions, Assessments, Penalties, Policies and Orders as set forth above.

496. Permanently enjoin Defendants & all persons and/or entities in active concert or participation with Defendants, from enforcing the unlawful Impositions, Assessments, Penalties, Policies and Orders.

497. Issue a TRO and/or Preliminary Injunction preventing Defendants from enforcing or implementing the Impositions, Assessments, Penalties, Policies and Orders until this Court decides the merits of this lawsuit.

498. Permanently enjoin Defendants and all persons and/or entities in active concert or participation with Defendants from enforcing the unlawful Impositions, Assessments, Penalties, Policies and Orders unless they are issued in accordance with all procedural and substantive Due Process requirements of the United States and the State of California Constitutions.

499. Award Plaintiff damages arising out of all Section 1983 Claims and specifically under the 5th, 8th and 14th Amendments of the United States Constitution and Article 1, Section 19 of the California Constitution's Takings Clause(s).

500. Award Plaintiff punitive damages against all Defendants whose acts were found *intentional and malicious* by the court or jury, including but not limited to:

**COUNTY OF ALAMEDA,** as a political subdivision of the State of California, organized under California law;

**HENRY LEVY,** Alameda County Treasurer-Tax Collector, in his personal capacity;

**COMPLAINT**

**JULIE P. MANAOIS**, Alameda County Chief Deputy Tax; Collector, in her personal capacity;

**THEODY VIRREY**, Alameda County Tax Collector Specialist-Tax Defaulted Land, in his personal capacity;

**SHAHIDAH J. WILLIAMS (LACY)**, Alameda County Board of Supervisors Policy Director, Keith Carson's Office, Board of Supervisor, 5th District, in her personal capacity.

501. Award Plaintiff the waiver, by Order of the Court, of all delinquent and current taxes, penalties, interest, and fees to fully redeem the 2421 Market Street property assessed to the property from the Alameda County Tax Assessors office.

502. Award Plaintiff a waiver, by order of the Court, of liens, taxes, penalties, interests, and fees attached to the Title of 2421 Market Street property by the Alameda County Tax Assessors office, County of Alameda, and the City of Oakland.

## STATEMENT OF DAMAGES

503. Plaintiff, Sabir Al-Mansur, pursuant to this Complaint for Declaratory Relief, Injunctive Relief, and Damages, provides the following Statement of Damages sought in this action:

504. Punitive Damages:

Plaintiff requests punitive damages against the defendants for intentional and malicious acts as found by the court or jury. Punitive damages are sought to deter future similar conduct and to punish the defendants for their malicious and willful disregard for Plaintiff's rights. The estimated amount for Punitive Damages is:  **$1,800,000**

**COMPLAINT**

140

505. <u>Compensatory Damages</u>:

Plaintiff has suffered significant financial losses as a direct result of the actions of the defendants, including the loss of property value and the imposition of penalties, interests, and fees. Plaintiff seeks compensation for these losses in the following amounts:

- <u>Loss in Property Value</u>: **$700,000** (estimated reduction in market value from $1,300,000 to $600,000)
- <u>Penalties, Interests, and Fees</u>: **$700,000** (estimated additional charges due to delinquent taxes)

<u>Total Compensatory Damages</u>: **$1,400,000**

506. <u>Fair Market Value of Property</u>:

Plaintiff seeks the fair market value of the property at 2421 Market Street based on certified valuations from 2019 and 2024 (whichever is greater). The 2019 valuation places the property at approximately **$1,300,000**.

507. <u>Waiver of Delinquent and Current Taxes, Penalties, and Fees</u>:

Plaintiff requests the waiver of all delinquent and current taxes, penalties, interests, and fees related to the 2421 Market Street property, which are currently estimated at **$800,000**.

508. **SUMMARY OF DAMAGES**:

<u>Punitive Damages</u>: **$1,800,000**

<u>Compensatory Damages</u>: **$1,400,000**

<u>Fair Market Value of Property</u>: **$1,300,000**

<u>Waiver of Delinquent and Current Taxes, Penalties, etc.</u>: **$800,000**

**COMPLAINT**

509. <u>TOTAL ESTIMATED DAMAGES SOUGHT</u>:
**$5,200,000** to **$6,200,000** (subject to court findings and future valuations)

## DEMAND FOR JURY TRIAL

PLAINTIFF' demands trial by jury of all matters so triable as a matter of right.

## VERIFICATION

I, Sabir Al-Mansur, am the Plaintiff in the above-entitled action. I have read and reviewed the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury, under the laws of the United States of America and the State of California, that the foregoing is true and correct, and that this Complaint was executed in Oakland, Alameda County, California

Dated: 10/2/2024

_____
SABIR AL-MANSUR
Plaintiff, *In Pro Se*

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

**RECORDING REQUESTED BY**
Orange Coast Title Company #525-1998097-85
**AND WHEN RECORDED MAIL DOCUMENT TO:**

**NAME** Mr. Sabir Jamil Al-Mansur

**STREET ADDRESS** 855 44th Street

**CITY, STATE & ZIP CODE** Oakland, CA 94608



2019176513    09/06/2019 12:32 PM
OFFICIAL RECORDS OF ALAMEDA COUNTY
MELISSA WILK
RECORDING FEE:        30.00
COUNTY TAX:          55.00
CITY TAX:           500.00

3    PGS

**SPACE ABOVE FOR RECORDER'S USE ONLY**

# Grant Deed

### Title of Document

**Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).**

☑ Exempt from the fee per GC 27388.1 (a) (2); This document is subject to Documentary Transfer Tax

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☐ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

☐ Exempt from the fee per GC 27388.1 (a) (1); executed or recorded by the federal government in accordance with The Uniform Federal Lien Registration Act (Title 7(commencing with Section 2100) of Part 4 of the Code of Civil Procedure).

☐ Exempt from the fee per GC 27388.1 (a) (1); executed or recorded by the state or any county, municipality, or other political subdivision of the state.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

**RECORDING REQUESTED BY:**
Orange Coast Title Company of Northern California

**AND WHEN RECORDED MAIL TO:**

Mr. Sabir Jamil Al-Mansur

855 44th Street
Oakland, CA. 94608

THIS SPACE FOR RECORDER'S USE ONLY:

**Title Order No.:** 525-1998097-85        **Escrow No.:** 020129-KL
**AP#:** 005-0432-014-01       **GRANT DEED**

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

**DOCUMENTARY TRANSFER TAX is $55.00  CITY TRANSFER TAX $500.00**

[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area  [X] City of Oakland **AND**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Gross Mortgage Corporation, a California Corporation**

hereby GRANT(s) to:

**Sabir Jamil Al-Mansur, an Unmarried Man**

the real property in the City of Oakland, County of Alameda, State of California, described as:

**LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT 'A' AND MADE A PART HEREOF.Also Known as**:
2421 Market Street, Oakland, CA  94607

Dated June 3, 2019        Gross Mortgage Corporation, a California Corporation

By: _____
Barry R. Gross, President/Secretary

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _Contra Costa_
On _7/9/2019_ before me, _Matthew Lee Oliver_ A Notary Public personally appeared _Barry R Gross_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

MATTHEW LEE OLIVER
Notary Public – California
Contra Costa County
Commission # 2218735
My Comm. Expires Oct 19, 2021

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS SHOWN ABOVE:

**EXHIBIT 'A'**

The land referred to herein is situated in the City of Oakland, County of Alameda, State of California and is described as follows:

Portion of Block 637, as said block is shown on Boardman's Map of Oakland and Vicinity (per W.F. Boardman City and County Surveyor), on file in the Office of the County Recorder of Alameda County, described as follows:

Beginning at a point on the Western line of Market Street, distant thereon Northerly 89 feet from the Northern line of 24th Street, and running thence along said line of Market Street, Northerly 50 feet; thence at a right angle Westerly 90 feet; thence at a right angle Southerly 50 feet; thence at a right angle Easterly 90 feet to the point of beginning.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B



mail.google.com/mail/u/2/#search/theody/FMfcgxwGCtQrTRCxntSzlHLvxsDVMWhP

# Gmail

🔍 theody

## meet w/ Mr. Almansur   Inbox ×

**Tejada, Felicia - Treasurer** <Felicia.Tejada@acgov.org>
to Henry, Theody, me

Mon, Jan 27, 2020, 1:09 PM

**Feb**
**4**
**Tue**

**meet w/ Mr. Almansur**
View on Google Calendar

**When**   Tue Feb 4, 2020 11:30am – 12pm (PST)
**Where**   Treasurer's Conference Room, 1221 Oak St., Room 131, Oakland, CA
**Who**   Levy, Henry - Treasurer, Virrey, Theody -Treasurer, Tejada, Felicia  Treasurer*

**Agenda**
Tue Feb 4, 2020

No earlier events

11:30am   meet w/ Mr. Almansur

No later events

Discuss property: 2421 Market St. Oakland

**One attachment** • Scanned by Gmail ⓘ

📄 invite.ics   Download

↩ Reply      ↩ Reply all      → Forward

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

# EXHIBIT C

17
18
19
20
21
22
23
24
25
26
27
28

**BETA** | **BUSINESS ~~TATE~~ & TAX ATTORNEYS**

SOLUTIONS THROUGH PARTNERSHIP

A Professional Corporation

February 19, 2020

VIA U.S. MAIL and HAND DELIVERY on February 19, 2020

Mr. Henry C. Levy
Treasurer and Tax Collector
County of Alameda
1221 Oak Street
Oakland, CA 94612-4223

### *Re*: Notice of Tax Sale: 2421 Market Street, Oakland CA (APN 5-432-14-1)

Dear Mr. Levy:

The above-named law firm represents the interests of Sabir Al-Mansur, title holder and owner of property located at 2421 Market Street, Oakland CA 94607. This property is currently the subject of a Tax Sale Notice certified on January 13, 2020. Consistent with Tax Sale Notice and information provided to our client at a meeting with Theody Virrey, Supervisor Tax Defaulted Land and yourself on February 2, 2020, we understand that the redemption amount for back taxes, penalties and costs on the property is currently set at $330,409.87.

Mr. Al-Mansur recognizes and respects the county's right and obligation to collect property taxes on real estate registered on the county's tax rolls. Our client does not contest the underlying amount of $149,946.82 that is due for back taxes on 2421 Market Street. *To satisfy this tax obligation, Mr. Al Mansur will be tendering a certified check for $149,946.82 to your office, contemporaneous with hand-delivery of this correspondence.*

However, it is our client's position that the remaining $182,463.05, attributed to penalties and costs on the property tax, should be cancelled. As is described in greater detail below, the delinquency in payment was due to reasonable cause and circumstances beyond Mr. Al-Mansur's control, despite our client's exercise of ordinary care in the absence of willful neglect, consistent with the provisions of RTC § 4985.2.[1]

In addition, we would respectfully request that your office remove the Market Street parcel from the tax sale and/or postpone the sale for period of ninety days from the March 19, 2020 sale date as is permitted under RTC §§ 3698.8 and 3706.1.

### A. Reasonable Cause and Circumstances Beyond the Taxpayer's Control.

Ownership of the Market Street property has been the subject of ongoing litigation, dispute and controversy since January 2006. As a direct result of the fraud of third parties who sought to surreptitiously divest Mr. Al-Mansur of title, the issue of ownership of the

---

[1] The principal payment for the proper amount of the tax due is being made prior to June 30 of the fourth fiscal year following the tax year in which the tax became delinquent.

property, including liability for property taxes, has been shrouded by uncertainty and confusion for several years.

By way of background, Sabir Al-Mansur ("Sabir") obtained the Market Street property as a gift from his mother, Alva Faison, via a grant deed recorded on December 20, 2000. (See Exhibit A, Certified Title Search on 2421 Market Street). Sabir has always valued the family property and, in an effort to improve the property, he commenced negotiations in 2006 with Brian Fabian II to partner with him on some property upgrades. Although Sabir temporarily deeded the Market Street property to Fabian on January 26, 2006, the negotiations were ultimately unsuccessful and the parties went their separate ways. Title was deeded back to Sabir from Fabian on February 8, 2006. (See Exhibit A)

Nonetheless, without Sabir's knowledge or consent, Fabian proceeded to fraudulently collude with Gross Mortgage Company ("GMC") and its servicing agent, Contractors Capital Corporation ("CCC"), to transfer title on the Market Street property to CCC on January 19, 2006. Fabian did not own the property at that time. Regardless, he attempted to fraudulently convey a Deed of Trust to CCC after wrongfully endorsing a Promissory Note, in the face amount of $445,000, that was purportedly secured by the fake Deed of Trust. (See Exhibits B and C). The sham Deed of Trust, identifying GMC as owner and CCC as trustee of the property, was subsequently recorded in Alameda County Recorder's Office and mailed to GMC in August 2011. (See Exhibit A, Certified Chain of Title)

Sabir first learned of the fraudulent conveyance perpetrated by Fabian in 2008. He took immediate steps to contact GMC and CCC in an effort to resolve the swindle. However, GMC and CCC spurned Sabir's efforts to address the sham title transfer refusing to deed the Market Street property back to its rightful owner.

From that point, Sabir, GMC and CCC engaged in years of litigation, including several state court lawsuits and an action in federal court, seeking a judicial resolution to resolve the disputed ownership of the Market Street property. While Sabir periodically made tax payments on the property, he was never certain about the legal status of his ownership claim, given the competing title assertions aggressively advanced in litigation by GMC and CCC.

On March 14, 2013, Fabian executed a sworn affidavit in which he admitted to his fraudulent conveyance of the Market Street property to CCC and GMC. (Exhibit D). Still, it was not until the parties finally settled their legal disputes, GMC deeded the property back to Sabir and a Grant Deed was recorded in Alameda County in 2019, that the confusion over the actual ownership of the Market Street property was finally resolved. (Exhibit E: Grant Deed).

Under RTC § 4985.2 (a), *"any penalty, costs or other charges resulting from a delinquency may be canceled by the auditor or the tax collector upon a finding of any of the following:*

*(a) Failure to make timely payment is due to reasonable cause and circumstances beyond the taxpayer's control, and occurred notwithstanding the exercise of ordinary care in the absence of willful neglect, provided the principal payment for the proper amount of the tax due is made no later than June 30 of the fourth fiscal year following the fiscal year in which the tax became delinquent."*

When all of the aforementioned requirements of the statute are met, the tax collector is divested of any discretion concerning cancellation of the accrued penalties and costs. Rather, the collector is required to grant the relief requested. *Ashlan Park Center LLC v. Crow*, (2015) 233 Cal. App. 4th 1274,1280 quoting *People ex rel Strumpfer v Westoaks Investment #27*, (2006), 139 Cal. App. 4th 1039, 1050.

According to the court in the Ashlan Park Center case, *"… the statute (RTC § 4985.2 (a)) was intended to provide relief from delinquency penalties to a taxpayer who was prevented by outside forces, beyond its control, from making its tax payment to the tax collector before the delinquency date."* Id at 1279. Identifying outside forces such as illness of the taxpayer, earthquakes or other natural disasters, the court in *Ashlan* also went on to state that the statute might also apply where:

*"…. through the fraud or other wrongdoing of a third party, there was uncertainty about who owned the real property and was liable for payment of the property taxes."* Id.1283.

Ownership of the property at 2421 Market Street has been disputed since 2006 due to the fraud and wrongdoing of Fabian, Gross Mortgage Company and Contractors Capital Corporation. Even after the Alameda Superior Court issued an Order on December 23, 2011 denying GMC's claimed ownership of the building, GMC persisted in its ownership claim. (Exhibit E). Even after the United States federal district court granted a default judgment on December 3, 2012 declaring the property to be owned by Sabir Al-Mansur, GMC persisted in its ownership claim. (Exhibit F). Even after Sabir filed an action for fraud and slander of title against GMC, CCC and Barry Gross in Alameda Superior Court in 2013 to quiet title to the property, the defendants persisted in their ownership claims. (Exhibit G)

It is clear that the fraud and wrongdoing of third parties Fabian, GMC and CCC created *"uncertainty about who owned the real property…"* and who *"was liable for the payment of the property taxes."* The auditor has the authority to cancel any portion of a tax penalty if the charge is *"erroneous."* RTC § 2160. Penalizing Sabir for tax liabilities resulting from the uncertainty and confusion created by the wrongful conduct of third parties would clearly be an *"erroneous"* charge. As such, the office of the tax collector should grant relief from all of the penalties and costs associated with the tax delinquencies dating back to 2006 on property at 2421 Market Street in Oakland.

## B. The Market Street Property Should Be Withdrawn From The Scheduled Tax Sale Because (1) It Would Be In The Best Interests of the County To Do So and (2) Because the Sale Notice is Deficient.

### B. (1) Best Interests of the County

Under RTC § 3698.8, the tax collector may *"… remove a parcel from the tax sale if it is deemed the removal is in the best interests of the county."*

In the present case, the equities clearly favor withdrawing the Market Street property from the scheduled March 2020 tax sale. The wrongful and fraudulent conduct of third parties, leading to confusion over proper title ownership and taxation responsibility, is discussed in detail above. However, there are numerous additional factors that favor withdrawing the property from tax sale.

Initially, the collector's office must not condone fraudulent third-party actions that attempt to strip property owners of their ownership interests and/or cause the imposition of tax penalties as a direct result of their wrongful conduct. To do so would completely upend the stability and certainty of property ownership rights that are so carefully protected by the laws of the state of California. To do so would encourage the very kind of scam that was perpetrated in this case – a fraudulent transfer to swindle the owner out of his title, a cloud on the title leading to delinquent taxes and penalties followed by a tax sale resulting from the unpaid tax obligations.

Sabir Al-Mansur paid property taxes on the Market Street property for six years prior to being victimized by the fraudulent conduct of Brian Fabian, GMC and CCC. The property in question has been owned by Sabir's family for over half a century. Sabir conducts a business at the Market Street address that allows him to feed his family and pay his taxes. In 1998, Sabir began using the Market Street Property to operate Amenta Systems, an I.T. Consulting company. In addition, in 2020, Sabir began using the Market Street Property to operate 360 Global Management, a Management Services company. Also, recently Sabir remodeled one of the commercial units into a Coffee Shop that is scheduled to open in April 2020. The best interests of the county are served by honoring the legitimate property ownership interests of its residents. Indeed, it would be a travesty of justice to allow the wrongdoing of third parties to interfere with Sabir's continuous ownership of the property, particularly after he has already endured a decade of expensive litigation in an effort to cling to his rightful interest in the property.

### B.(2) Deficient Sale Notice

According to RTC § 3704, the notice of intended sale shall include the minimum acceptable bid for the property to be sold along with identification of the redemption amount. In the present case, the minimum bid amount of $330,409.87 includes over $182,463.05 of delinquency penalties and costs erroneously assessed on the property. As is asserted above, the penalties charged in this matter should be cancelled because the fraudulent and wrongful conduct of third parties created reasonable cause for a failure to pay due to uncertainty over legal ownership of the property.

### C. The Scheduled Tax Sale Should Be Postponed for 90 Days Pending a Review and Analysis of this Matter.

Consistent with RTC § 3706.1, the tax collector should exercise his discretionary authority to postpone the scheduled tax sale for 90 days pending a review and analysis of the issues raised in this correspondence. The significant legal and factual questions asserted in this letter militate against a '*rush to judgment*' tax sale that would severely prejudice the legal ownership rights of Mr. Al-Mansur and his family.

Sabir recognizes that the delinquent taxes accrued on his property are a legitimate and significant matter of concern for the county. Indeed, but for the decade long fraudulent conspiracy engaged in by Fabian, GMC and CCC to abscond with title to his property, Sabir would have paid the property taxes on Market Street in full and on time. However, the injustices perpetrated by Fabian, GMC and CCC should not be exacerbated by an injustice inflicted by the county. The tax sale must be postponed or our client will be forced to again

pursue expensive litigation to protect his property by seeking a restraining order to halt the sale.

### D. Conclusion

To summarize, Sabir Al-Mansur requests that $182,463.05, attributed to delinquency penalties and costs on the property tax, be cancelled. The late payments were due to reasonable cause and circumstances beyond Mr. Al-Mansur's control, despite our client's exercise of ordinary care in the absence of willful neglect, consistent with the provisions of RTC § 4985.2.

Our client also respectfully requests that your office remove the Market Street parcel from the tax sale and/or postpone the sale for period of ninety days from the March 19, 2020 sale date as is permitted under RTC §§ 3698.8 and 3706.1.

The interests of justice and the county will be best served by permitting Mr. Al-Mansur to redeem his family property.

Very truly yours,

BUSINESS ESTATE & TAX ATTORNEYS
A Professional Corporation

By: LEIGHTON A. BURREY

Enclosures

Cc: Theody Virrey, Supervisor Tax Defaulted Land
   Sabir Al-Mansur

# EXHIBIT D

# 2016-2017

For Fiscal Year Beginning July 1, 2016 and Ending June 30, 2017

**ALAMEDA COUNTY**
**SECURED PROPERTY TAX STATEMENT**

Donald R. White, Treasurer and Tax Collector
1221 Oak Street, Room 131
Oakland, California 94612

| Parcel Number | Tracer Number | Tax-Rate Area | Special Handling |
|---|---|---|---|
| 5-432-14-1 | 01655700 | 17-046 | |

Location of Property
2421 MARKET ST, OAKLAND
Assessed to on January 1, 2016

ASSESSEE NAME AND ADDRESS ARE NOT AVAILABLE ONLINE
PER CA GOV CODE §6254.21

## THIS IS NOT AN OFFICIAL BILL

**Tax-Rate Breakdown**

| Taxing Agency | Tax Rate | Ad Valorem Tax |
|---|---|---|
| COUNTYWIDE TAX | 1.0000 % | 7,212.07 |
| VOTER APPROVED DEBT SERVICE | | |
| CITY OF OAKLAND | 0.1961 % | 1,414.28 |
| SCHOOL UNIFIED | 0.1151 % | 830.11 |
| SCHOOL COMM COLL | 0.0256 % | 184.63 |
| BAY AREA RAPID TRANSIT | 0.0080 % | 57.70 |
| EAST BAY REGIONAL PARK | 0.0032 % | 23.08 |
| EBMUD SPEC DIST 1 | 0.0028 % | 20.19 |
| **TOTAL AD VALOREM TAX (AV TAX)** | **1.3508 %** | **9,742.06** |

*(PAID PRIOR YEAR TAXES DUE overlaid)*

**Fixed Charges and/or Special Assessments**

| Description | Phone | Amount |
|---|---|---|
| CITY DELINQ GRBAGE | 510-238-7474 | 1,419.36 |
| MOSQUITO ABATEMENT | 800-273-5167 | 3.50 |
| CSA PARAMEDIC | 800-441-8280 | 30.68 |
| CSA VECTOR CONTROL | 800-273-5167 | 14.40 |
| CITY EMERG MEDICAL | 510-238-3704 | 13.98 |
| CITY PARAMEDIC SRV | 510-238-3704 | 11.14 |
| SCHOOL MEASURE G | 510-879-8884 | 195.00 |
| PERALTA CCD MEAS B | 800-792-8021 | 48.00 |
| OUSD MEASURE N | 510-879-8884 | 120.00 |
| VIOLENCE PREV TAX | 510-238-3704 | 102.36 |
| DEL GRBG ASSESS | 510-238-7474 | 911.40 |
| FLOOD BENEFIT 12 | 510-670-6615 | 16.00 |
| HAZ WASTE PROGRAM | 877-786-7927 | 34.40 |
| CSA VECTOR CNTRL B | 800-273-5167 | 7.50 |
| MOSQUITO ASSESS 2 | 800-273-5167 | 4.60 |
| AC TRANSIT MEAS VV | 510-238-3704 | 96.00 |
| CITY LIBRARY SERV | 510-238-3704 | 98.66 |
| EBMUD WETWEATHER | 510-287-2048 | 94.10 |
| EAST BAY TRAIL LLD | 888-512-0316 | 5.44 |
| EBRP PARK SAFETY/M | 888-512-0316 | 12.00 |
| CITY LANDSCP/LIGHT | 510-238-3704 | 102.64 |
| **Total Fixed Charges and/or Special Assessments** | | **3,341.16** |

**Tax Computation Worksheet**

| Description | Full Valuation | x Tax Rate | = Tax Amount |
|---|---|---|---|
| LAND | 277,387 | | |
| IMPROVEMENTS | 443,820 | | |
| FIXTURES | | | |
| TOTAL REAL PROPERTY | 721,207 | | |
| PERSONAL PROPERTY | | | |
| GROSS ASSESSMENT & TAX | 721,207 | 1.3508 % | 9,742.06 |
| HOMEOWNERS EXEMPTION | | | |
| OTHER EXEMPTION | | | |
| TOTAL AD VALOREM TAX | 721,207 | 1.3508 % | 9,742.06 |
| Ad Valorem Tax plus Special Assessments | | | 13,083.22 |

| First Installment | Second Installment | Total Amount Due |
|---|---|---|
| $ 6,541.61 | $ 6,541.61 | $ 13,083.22 |

## Please Read Important Messages

 ** URGENT REMINDER ** UNPAID PRIOR YEAR TAXES ARE DUE AND ARE NOT INCLUDED IN THIS STATEMENT. CALL 510-272-6800.

 A fee of $61.00 will be imposed on all returned or dishonored payments.

ECheck is free of charge; Accepted through June 30, 2017 @ http://www.acgov.org/propertytax/.

 Visa, Mastercard, Discover, or American Express credit cards accepted by phone (510)272-6800 or online @ http://www.acgov.org/propertytax/ through June 30, 2017. A convenience fee equal to 2.3% of the tax amount due will be added to your total payment.

Subscribe to receive email alerts about important property tax dates online @ http://www.acgov.org/propertytax/.

This bill is as of July 24, 2024 5:09 AM and may not include pending payments and roll corrections.

## Please See Reverse For More Information

 **Tax Collector's Office**
Payment Questions/Credit Card Payments
(510) 272-6800

 **Assessor's Office**
Valuation/Exemption
(510) 272-3787   (510) 272-3770



---

## SECOND INSTALLMENT PAYMENT, 2016-2017

PARCEL NO.   5-432-14-1
**2** **INTERNET COPY**   TRACER NO.   01655700

**THIS AMOUNT DUE FEB 1, 2017 ==>**   DELINQUENT



After APRIL 10, 2017 pay   Amounts shown no longer valid.

(Includes delinquent penalty of 10% and $10.00 cost)

Amount Shown is expired. Please call 510-272-6800 for correct amount.

---

## FIRST INSTALLMENT PAYMENT, 2016-2017

PARCEL NO.   5-432-14-1
**1** **INTERNET COPY**   TRACER NO.   01655700

**THIS AMOUNT DUE NOV 1, 2016 ==>**   DELINQUENT



After DECEMBER 10, 2016 pay   Amounts shown no longer valid.

(Includes delinquent penalty of 10%)

Amount Shown is expired. Please call 510-272-6800 for correct amount.

## Percentage Change Calculator

$$\frac{(V_2 - V_1)}{|V_1|} \times 100 = ?$$

*Change from $V_1$ to $V_2$*

$V_1 = $ 13083.22

$V_2 = $ 22628.74

Clear                     Calculate

Answer:

= 72.96% increase

Solution:

Calculate percentage change

from $V_1$ = 13083.22 to $V_2$ = 22628.74

$$\frac{(V_2 - V_1)}{|V_1|} \times 100$$

$$= \frac{(22628.74 - 13083.22)}{|13083.22|} \times 100$$

$$= \frac{9545.52}{13083.22} \times 100$$

$$= 0.7296 \times 100$$

$$= 72.96\% \text{ change}$$

$$= 72.96\% \text{ increase}$$

| Additional Fixed Charges and/or Special Assessments | | |
|---|---|---|
| **Description** | **Phone** | **Amount** |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Additional Fixed Charges and/or Special Assessments** | | |

**IMPORTANT REMINDERS**

1. Partial payments are not acceptable - payments made for less than the total installment due will be returned to the taxpayer.
2. Notices will not be mailed when the second installment is due. Mark your calendar or subscribe to e-mail alerts online @ **www.acgov.org/propertytax.**
3. Filing an application for reduced assessment does not relieve the applicant from the obligations to pay the taxes on the subject property before the applicable due date shown on the tax bill. If a reduction is granted, a proportionate refund of taxes will be made by the County Auditor's Office.
4. New owners and present owners with new construction may be required to pay a Supplemental tax bill. Supplemental tax bills are separate from and in addition to this annual bill and any previous or subsequent Supplemental bills.

## INFORMATION ABOUT YOUR 2016-2017 SECURED TAX BILL

1. **Property Assessment and Attachment of Tax Lien:** The Assessor annually assesses all the property in the county, except state-assessed property, to the person owning, claiming, possessing, or controlling it at 12:01 a.m. January 1, and a lien for taxes attaches at that time preceding the fiscal year for which the taxes are levied.

   (a) If you disagree with a change in the assessed value as shown on the tax bill, you may have the right to an informal assessment review by contacting the Assessor's Office. If you disagree with the results of the informal review, you have the right to file an application for reduction in assessment for the following year with the Alameda County Assessment Appeals Board from July 2 to September 15. The Assessment Appeals Board may be contacted at the County Administration Building, Room 536, 1221 Oak Street, Oakland, California 94612 or by calling (510) 272-6352.

   (b) Application for review and equalization of an assessment made outside of the regular assessment period must be filed with the Alameda County Assessment Appeals Board no later than 60 days from the first notification of that assessment.

2. **Your Tax Collector does not determine the amount you pay in taxes.** Tax amounts are computed by multiplying the property's full value by the tax rates of the various taxing agencies. Fixed charges and/or special assessments such as Flood Control Benefit Assessment, sewer service, special assessment improvement bond charges, delinquent garbage liens, etc. from cities and districts are added to the computed tax amounts to arrive at the total amount due on the bill.

3. **The Total Amount Due is payable in two installments:**

   (a) The 1st installment is due on **NOVEMBER 1, 2016** and is delinquent at 5 p.m. **DECEMBER 10, 2016** after which a 10% penalty attaches.

   (b) The 2nd installment is due on **FEBRUARY 1, 2017** and is delinquent at 5 p.m. **APRIL 10, 2017** after which a 10% penalty and $10 cost attach.

   (c) In order to pay both installments at the same time, remit the **TOTAL AMOUNT DUE** with both installment payment stubs by DECEMBER 10, 2016.

   (d) If above delinquent due dates fall on a Saturday, Sunday, or legal holiday, no penalty is charged if payment is made by 5 p.m. on the next business day.

4. **If the amount due is unpaid at 5 p.m. June 30, 2017,** it will be necessary to pay (a) delinquent penalties, (b) costs, (c) redemption penalties, and (d) a redemption fee. If June 30 falls on a Saturday, Sunday, or legal holiday, no redemption penalties shall attach if payment is made by 5 p.m. on the next business day. Property delinquent for the first year shall be declared defaulted for non-payment of taxes. After 5 years, the Tax Collector has the power to sell tax-defaulted property that is not redeemed.

---

## SEND THIS STUB WITH YOUR 2nd INSTALLMENT PAYMENT

**Due:** **FEBRUARY 1, 2017**

Delinquent:  5 p.m., APRIL 10, 2017

**Do Not Use This Stub After June 30, 2017**
2nd INSTALLMENT PAYMENT CANNOT BE
ACCEPTED UNLESS 1st INSTALLMENT IS PAID

---

## SEND THIS STUB WITH YOUR 1st INSTALLMENT PAYMENT

**Due:** **NOVEMBER 1, 2016**

Delinquent:  5 p.m., DECEMBER 10, 2016

**Do Not Use This Stub After June 30, 2017**
TO PAY BOTH INSTALLMENTS SEND **BOTH** STUBS

---

5. **Full Value Exemption Legend:**

   | | |
   |---|---|
   | **C-** Church | **D-** Welfare/Hospital |
   | **G-** Cemetery | **H-** Homeowner |
   | **M-** Miscellaneous | **R-** Religious |
   | **S-** Public School | **V-** Veteran |
   | **W-** Welfare/Others | **X-** Combination |

6. **Homeowners' Exemption.** If your tax bill shows zero value on the Homeowners' Exemption line and you owned and occupied this property on January 1, 2016, you may be eligible for a partial (80%) homeowners' exemption if you file a claim with the Assessor on or before December 10, 2016. The homeowners' exemption tax reduction is attributable to the state-financed homeowners' tax relief program.

7. **Questions about property valuation, exemptions, payments and fixed charges and/or special assessments** should be directed to the telephone numbers indicated on the front of this bill.

8. **Property Tax Assistance for Senior Citizens, Blind, Or Disabled Persons.** The state budget did not include funding for the Gonsalves-Deukmejian-Petris Senior Citizens Property Tax Assistance Law, which provides direct cash assistance. The Franchise Tax Board (FTB) will **not** issue Homeowner and Renter Assistance (HRA) Program instruction booklets and will not accept HRA claims for the 2015 claim year. For the most current information on the HRA Program, go to ftb.ca.gov and search for **HRA**.

9. **Property Tax Postponement for Senior Citizens, Blind, Or Disabled Persons.** In September 2014, Assembly Bill AB 2231 Chapter 703, Statutes of 2014, reinstated a modified Property Tax Postponement (PTP) program. The State Controller's Office (SCO) will begin accepting new PTP applications beginning October 1, 2016. Go to the SCO website at www.ptp.sco.ca.gov for more information. If you have any questions, call 1.800.952.5661 or email postponement@sco.ca.gov.

# 2023-2024
## INTERNET COPY

**For Fiscal Year Beginning July 1, 2023 and Ending June 30, 2024**

**ALAMEDA COUNTY**
**SECURED PROPERTY TAX STATEMENT**

Henry C. Levy, Treasurer and Tax Collector
1221 Oak Street, Room 131
Oakland, California 94612

| Parcel Number | Tracer Number | Tax-Rate Area | Special Handling |
|---|---|---|---|
| 5-432-14-1 | 01677600 | 17-046 | 970 |

Location of Property
2421 MARKET ST, OAKLAND

Assessed to on January 1, 2023

ASSESSEE NAME AND ADDRESS ARE NOT AVAILABLE ONLINE
PER CA GOV CODE §6254.21

## THIS IS NOT AN OFFICIAL BILL

### Fixed Charges and/or Special Assessments

| Description | Function Code | Phone | Amount |
|---|---|---|---|
| MOSQ MSR K 1982 | | 800-273-5167 | 3.50 |
| CSA PARAMEDIC | | 800-273-5167 | 157.56 |
| VEC CNTRL MSR A 84 | | 800-273-5167 | 14.40 |
| CITY EMERG MEDICAL | | 510-238-2942 | 35.20 |
| CITY PARAMEDIC SRV | | 510-238-2942 | 28.04 |
| OUSD MEASURE H | a,b | 510-879-8611 | 120.00 |
| OUSD 2008MEASURE G | b | 510-879-8884 | 195.00 |
| PERALTA 2018MEAS E | | 800-792-8021 | 48.00 |
| OUSD 2016MEASUREG1 | a,b | 510-879-8884 | 120.00 |
| VIOLENCE PREV TAX | b | 510-238-2942 | 351.68 |
| DEL GRBG ASSESS | | 510-238-7474 | 7,383.20 |
| CITY LIBRARY SRV-D | b | 510-238-2942 | 260.88 |
| 2020 OAK MEASURE Q | b | 510-238-2942 | 476.92 |
| OAKLAND MEASURE AA | b | 510-238-2942 | 662.72 |
| OAKLAND ZOO TAX | b | 510-238-2942 | 272.00 |
| SFBRA MEASURE AA | | 888-508-8157 | 12.00 |
| FLOOD BENEFIT 12 | | 510-670-5212 | 16.00 |
| HAZ WASTE PROGRAM | | 800-273-5167 | 13.28 |
| VECTOR CNTRL ASMT | | 800-273-5167 | 5.68 |
| MOSQUITO ASMT 2008 | | 800-273-5167 | 2.30 |
| EBRPD CFD NO A/C-3 | | 888-510-0316 | 33.12 |
| AC TRANSIT MEAS VV | | 800-273-5167 | 96.00 |
| **SEE SEC 8 ON REVERSE SIDE FOR DTLS** | | | |
| Additional Total from Reverse Side | | | 721.56 |
| **Total Fixed Charges and/or Special Assessments** | | | **11,029.04** |

### Tax Computation Worksheet

| Description | Full Valuation | x Tax Rate | = Tax Amount |
|---|---|---|---|
| LAND | 288,318 | | |
| IMPROVEMENTS | 557,019 | | |
| FIXTURES | | | |
| TOTAL REAL PROPERTY | 845,337 | | |
| PERSONAL PROPERTY | | | |
| GROSS ASSESSMENT & TAX | 845,337 | 1.3722 % | 11,599.70 |
| HOMEOWNERS EXEMPTION | | | |
| OTHER EXEMPTION | | | |
| TOTAL AD VALOREM TAX | 845,337 | 1.3722 % | 11,599.70 |

| Ad Valorem Tax plus Special Assessments | | | 22,628.74 |
|---|---|---|---|

| First Installment | Second Installment | Total Amount Due |
|---|---|---|
| $ 11,314.37 | $ 11,314.37 | $ 22,628.74 |

### Tax-Rate Breakdown

| Taxing Agency | Tax Rate | Ad Valorem Tax |
|---|---|---|
| COUNTYWIDE TAX | 1.0000 % | 8,453.37 |
| VOTER APPROVED DEBT SERVICE | | |
| COUNTY GO BOND | 0.0088 % | 74.38 |
| CITY OF OAKLAND 1 | 0.2035 % | 1,720.26 |
| SCHOOL UNIFIED | 0.0990 % | 836.88 |
| SCHOOL COMM COLL | 0.0418 % | 353.35 |
| BAY AREA RAPID TRANSIT | 0.0134 % | 113.28 |
| EAST BAY REGIONAL PARK | 0.0057 % | 48.18 |
| **TOTAL AD VALOREM TAX (AV TAX)** | **1.3722 %** | **11,599.70** |

**UNPAID PRIOR YEAR TAXES DUE**

---

## Please Read Important Messages

 ** URGENT REMINDER ** UNPAID PRIOR YEAR TAXES ARE DUE AND ARE NOT INCLUDED IN THIS STATEMENT. CALL 510-272-6800.

 A fee of $61.00 will be imposed on all returned or dishonored payments.

 ECheck is free of charge; Accepted through June 30, 2024 @ http://www.acgov.org/propertytax/.

 Visa, Mastercard, Discover, or American Express credit cards accepted by phone (510)272-6800 or online @ http://www.acgov.org/propertytax/ through June 30, 2024. A convenience fee equal to 2.3% of the tax amount due will be added to your total payment.

Subscribe to receive email alerts about important property tax dates online @ http://www.acgov.org/propertytax/.

 This bill is as of July 24, 2024 5:08 AM and may not include pending payments and roll corrections.

## Please See Reverse For More Information

 Tax Collector's Office
Payment Questions/Credit Card Payments
(510) 272-6800

Assessor's Office
Valuation/Exemption
(510) 272-3787   (510) 272-3770

---

### SECOND INSTALLMENT PAYMENT, 2023-2024

**2**   **INTERNET COPY**

PARCEL NO.   5-432-14-1
TRACER NO.   01677600

**THIS AMOUNT DUE FEB 1, 2024 ==>**   **DELINQUENT**



After APRIL 10, 2024 pay

(Includes delinquent penalty of 10% and $10.00 cost)

Amounts Not Valid After
Mon, Jul 1, 2024

Amount shown expired as of Jul 1, 2024.
Please call 510-272-6800 for correct amount.

---

### FIRST INSTALLMENT PAYMENT, 2023-2024

**1**   **INTERNET COPY**

PARCEL NO.   5-432-14-1
TRACER NO.   01677600

**THIS AMOUNT DUE NOV 1, 2023 ==>**   **DELINQUENT**



After DECEMBER 10, 2023 pay

(Includes delinquent penalty of 10%)

Amounts Not Valid After
Mon, Jul 1, 2024



Amount shown expired as of Jul 1, 2024.
Please call 510-272-6800 for correct amount.

## Additional Fixed Charges and/or Special Assessments

| Description | Exemption Code | Phone | Amount |
|---|---|---|---|
| CITY LIBRARY SERV | b | 510-238- | 328.52 |
| EBMUD WETWEATHER | | 866-403-2683 | 135.82 |
| EAST BAY TRAIL LLD | a | 888-512-0316 | 10.88 |
| CITY LANDSCP/LIGHT | b | 510-238-2942 | 246.34 |

| | | | |
|---|---|---|---|
| **Total Additional Fixed Charges and/or Special Assessments** | | | **721.56** |

### IMPORTANT REMINDERS

1. Partial payments are not acceptable - payments made for less than the total installment due will be returned to the taxpayer.
2. Notices will not be mailed when the second installment is due. Mark your calendar or subscribe to e-mail alerts online @ **www.acgov.org/propertytax**.
3. Filing an application for reduced assessment does not relieve the applicant from the obligations to pay the taxes on the subject property before the applicable due date shown on the tax bill. If a reduction is granted, a proportionate refund of taxes will be made by the County Auditor's Office.
4. New owners and present owners with new construction may be required to pay a Supplemental tax bill. Supplemental tax bills are separate from and in addition to this annual bill and any previous or subsequent Supplemental bills.

## INFORMATION ABOUT YOUR 2023-2024 SECURED TAX BILL

1. **Property Assessment and Attachment of Tax Lien:** The Assessor annually assesses all the property in the county except state-assessed property, to the person owning, claiming, possessing, or controlling it at 12:01 a.m. January 1, and a lien for taxes attaches at that time preceding the fiscal year for which the taxes are levied.

   (a) If you disagree with a change in the assessed value as shown on the tax bill, you may have the right to an informal assessment review by contacting the Assessor's Office. If you disagree with the results of the informal review, you have the right to file an application for reduction in assessment for the following year with the Alameda County Assessment Appeals Board from July 2 to September 15. The Assessment Appeals Board may be contacted at the County Administration Building, Room 536, 1221 Oak Street, Oakland, California 94612 or by calling (510) 272-6352.

   (b) Application for review and equalization of an assessment made outside of the regular assessment period must be filed with the Alameda County Assessment Appeals Board no later than 60 days from the first notification of that assessment.

2. **Your Tax Collector does not determine the amount you pay in taxes.** Tax amounts are computed by multiplying the property's full value by the tax rates of the various taxing agencies. Fixed charges and/or special assessments such as Flood Control Benefit Assessment, sewer service, special assessment improvement bond charges, delinquent garbage liens, etc. from cities and districts are added to the computed tax amounts to arrive at the total amount due on the bill.

3. **The Total Amount Due is payable in two installments:**

   (a) The 1st installment is due on **NOVEMBER 1, 2023** and is delinquent at 5 p.m. **DECEMBER 10, 2023** after which a 10% penalty attaches.

   (b) The 2nd installment is due on **FEBRUARY 1, 2024** and is delinquent at 5 p.m. **APRIL 10, 2024** after which a 10% penalty and $10 cost attach.

   (c) In order to pay both installments at the same time, remit the **TOTAL AMOUNT DUE** with both installment payment stubs by DECEMBER 10, 2023.

   (d) If above delinquent due dates fall on a Saturday, Sunday, or legal holiday, no penalty is charged if payment is made by 5 p.m. on the next business day.

4. **If the amount due is unpaid at 5 p.m. June 30, 2024**, it will be necessary to pay (a) delinquent penalties, (b) costs, (c) redemption penalties, and (d) a redemption fee. If June 30 falls on a Saturday, Sunday, or legal holiday, no redemption penalties shall attach if payment is made by 5 p.m. on the next business day. Property delinquent for the first year shall be declared defaulted for non-payment of taxes. After 5 years, the Tax Collector has the power to sell tax-defaulted property that is not redeemed.

5. **Homeowners' Exemption.** If your tax bill shows zero value on the Homeowners' Exemption line and you owned and occupied this property on January 1, 2023, you may be eligible for a partial (80%) homeowners' exemption if you file a claim with the Assessor on or before December 10, 2023. The homeowners' exemption tax reduction is attributable to the state-financed homeowners' tax relief program.

6. **Questions about property valuation, exemptions, payments and fixed charges and/or special assessments** should be directed to the telephone numbers indicated on the front of this bill.

7. **Property Tax Postponement for Senior Citizens, Blind, Or Disabled Persons.** The State Controller's Office (SCO) administers the Property Tax Postponement (PTP) program, which allows eligible homeowners to postpone payment of current-year property taxes on their primary residence. PTP applications are accepted from October 1 to February 10 each year. Go to www.ptp.sco.ca.gov for more information. If you have any questions, call (800)952-5661 or email postponement@sco.ca.gov.

8. **Possible Exemption Codes:**

   a = Senior Citizen

   b = Low Income

   **Exemption codes indicate that a particular exemption type is offered by the levying district. Exemption eligibility requirements and the application process are available by calling the phone numbers provided.**

---

### SEND THIS STUB WITH YOUR 2nd INSTALLMENT PAYMENT

**Due: FEBRUARY 1, 2024**

Delinquent: 5 p.m., APRIL 10, 2024

**Do Not Use This Stub After June 30, 2024**
2nd INSTALLMENT PAYMENT CANNOT BE ACCEPTED UNLESS 1st INSTALLMENT IS PAID

---

### SEND THIS STUB WITH YOUR 1st INSTALLMENT PAYMENT

**Due: NOVEMBER 1, 2023**

Delinquent: 5 p.m., DECEMBER 10, 2023

**Do Not Use This Stub After June 30, 2024**
TO PAY BOTH INSTALLMENTS SEND **BOTH** STUBS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT E

 Gmail

Sabir Al-Mansur <amentasystems@gmail.com>

## APN 5-432-14-1 Almansur

6 messages

**Lacy, Shahidah, BOS Dist5** <Shahidah.Lacy@acgov.org>    Wed, Feb 14, 2024 at 12:36 PM
To: "Amentasystems@gmail.com" <Amentasystems@gmail.com>

Hello

Here is your complete accounting.

Thanks

Shahidah

**Shahidah Williams Esq. | Policy Director**

Pronouns: she/her/hers

Office of Supervisor Keith Carson – District 5

Alameda County Board of Supervisors

O: 510.272.6682 | C: 510.207.6180

Email: Shahidah.Lacy@acgov.org

http://www.acgov.org/board/district5/

**Facebook    Twitter    e-Subscribe**

This email is intended only for the individual or entity to which it is addressed and may contain information which is PRIVILEGED,CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this message is NOT the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.If you have received this communication in error, PLEASE NOTIFY ME IMMEDIATELY BY TELEPHONE, and remove all versions of this document from your possession.

📑 SKM_C450i24021315120.pdf
134K

---

**Sabir Al-Mansur** <amentasystems@gmail.com>                              Wed, Feb 14, 2024 at 1:05 PM
To: "Lacy, Shahidah, BOS Dist5" <Shahidah.Lacy@acgov.org>

Good Afternoon Shahidah, I don't recall requesting an accounting of the current property taxes for 2421 Market Street, APN 5-432-14-1.

Is the attached a demand for payment of the taxes?

Sincerely,
Sabir
[Quoted text hidden]

---

**Lacy, Shahidah, BOS Dist5** <Shahidah.Lacy@acgov.org>                     Wed, Feb 14, 2024 at 2:00 PM
To: Sabir Al-Mansur <amentasystems@gmail.com>

Hello Sabir,


In our conversation you asked for how much was owed. This has the break down of what is the assessed property tax and what is the fine and penalty per year.


Thanks

shahidah

[Quoted text hidden]

**\*\* This email was sent from an external source. If you do not know the sender, do not click on links or attachments. \*\***

---

**Sabir Al-Mansur** <amentasystems@gmail.com>                              Wed, Feb 14, 2024 at 2:23 PM
To: "Lacy, Shahidah, BOS Dist5" <Shahidah.Lacy@acgov.org>

No, I did NOT ask you how much is owed. I gave you an approximate amount as to what was owed.

Are you proffering a demand for the amount owed?

Sincerely,
Sabir
510-593-9093
[Quoted text hidden]

---

**Lacy, Shahidah, BOS Dist5** <Shahidah.Lacy@acgov.org>                     Wed, Feb 14, 2024 at 2:34 PM
To: Sabir Al-Mansur <amentasystems@gmail.com>

As mentioned on the phone I do not work for the tax collectors office they are independently elected official. I have no power or authority to demand any payment from you. In our conversation there was question about the records and the amounts and so I got you copy. Again this is not a demand.

Thanks

Shahidah

[Quoted text hidden]

**Sabir Al-Mansur** <amentasystems@gmail.com>                    Wed, Feb 14, 2024 at 2:51 PM
To: "Lacy, Shahidah, BOS Dist5" <Shahidah.Lacy@acgov.org>

Good Afternoon Shaidah, just for clarity and intent. I contacted Supervisor Carson's office to seek assistance in my communication with Mr. Levy.

In addition, my intention was to inform the elected official in my District, Mr. Keith Carson of the egregious behavior I have experienced with the Assessors Office, under the executive authority of Henry "Hank" Levy.

During our conversation it became quite apparent that as it relates to your position in Mr. Carson's office, you stipulated that the office would not be able to assist me in my efforts to seek an equitable solution to the issue.

In closing, as I mentioned I will continue to seek remedies in other forums.

Your assistance has been greatly appreciated.

Sincerely,
Sabir Al-Mansur
[Quoted text hidden]

# EXHIBIT F

**$ Alameda County**
**Office of the Treasurer**
**and Tax Collector**

Henry C. Levy, Treasurer-Tax Collector                                    Julie P. Manaois, Chief Deputy Tax Collector

March 10, 2020

Attn: Leighton Burrey
Business Estate & Tax Attorneys
15 Altarinda Road, Suite 201
Orinda, CA 94563

RE:     Al-Mansur Sabir, APN 5-432-14-1, property located at 2421 Market St., Oakland

Dear Mr. Burrey:

We are returning check number 001316874 for $149,946.82 dated February 19, 2020 for the following reasons:

1) The amount of the check is short of full payment for the total delinquent taxes. Under RTC section 4985.2(a), a tax collector cannot cancel tax penalties unless the delinquent tax payments were made by the end of the fourth fiscal year following the fiscal year in which the tax became delinquent.

2) The delinquent taxes are from 2007-08 through 2018-19 fiscal year. We are waiving the penalties for 2015-16 through 2018-19 fiscal year thus the amount due is $304,004.33 provided that this amount is paid no later than April 9,2020. If the corrected amount is not paid by April 9, 2020, the penalties for the 2015-16 through 2018-19 fiscal year will be reapplied. Enclosed is the corrected statement.

We have considered your argument against the four-year limitation period for cancellation of delinquent penalties. However, under RTC section 4985.2(a) the limitation period is firm. Even if equitable tolling were permitted, circumstances are insufficient to support tolling because Mr. Al-Mansur asserted ownership throughout litigation and the litigation did not prevent Mr. Al-Mansur from making timely payment of property taxes as owner. If you still plan to appeal, we suggest that you pay the total delinquent taxes by April 9, 2020 before submitting your appeal because penalties continue to accrue.

Please note that the 2019-20 fiscal year first installment is also delinquent and the amount due is $9,431.59. The second installment is due April 10, 2020. The 2019-20 fiscal year is not included in the prior year's delinquent taxes statement. Enclosed is the 2019-20 tax bill.

Please do not hesitate to call or e-mail me for further questions.

Sincerely,

Henry C. Levy
Alameda County Treasurer-Tax Collector

Cc: Almansur Sabir & Poole Jeron Etal - Owners

# United
**C R E D I T   U N I O N**
5901 Gibraltar Drive, Pleasanton, CA 94588
(800)649-0193 • 1stunitedcu.org

**OFFICIAL**    **CHECK**

001316874

49-55
1031

02-19-20



ONE HUNDRED FORTY-NINE THOUSAND NINE
HUNDRED FORTY-SIX AND .82 DOLLARS

**AMOUNT**
******149,946.82

PAY TO THE    HENRY C LEVY, TREASURER AND
ORDER OF     TAX COLLECTOR
             OR AMENTA SYSTEMS
             REF: PARCEL #5-432-14-1

DRAWER: 1st UNITED SERVICES CREDIT UNION

ISSUED BY MONEYGRAM PAYMENT SYSTEMS, INC.
P.O. BOX 9476 MINNEAPOLIS MN 55480
DRAWEE: BOKF NA, EUFAULA, OK

**AUTHORIZED SIGNATURE**

⑈⑊131687⑊⑈ ⑆:103100551⑈:01600111381 07⑈⑈

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT G



# Laws, Regulations & Annotations

PTLG Table of Contents > Property Tax Annotations > D > 330.0000
DELINQUENT TAX PENALTIES > entire

Property Taxes Law Guide – Revision 2017

## Property Tax Annotations

A  B  C  D  E  F  G  H  I  L  M  N  O  P  R  S  T  U  V  W

**D**

## 330.0000 DELINQUENT TAX PENALTIES

**330.0001 Cancellation.** "Under the provisions of Revenue and Taxation Code section 4985.2, payment of a delinquent penalty on property is not a necessary precondition to the cancellation thereof where the principal amount of the tax, exclusive of such penalty, has been paid within the applicable period specified in subdivision (a) of said section. Relief under subdivision (b) of that section is predicated upon the payment of the principal and penalty." OAG 4/26/1979 (No. 79-311, Vol. 62, p. 212).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT H

TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

GEORGE DEUKMEJIAN
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : | No. 79-311 |
| of | : | April 26, 1979 |
| GEORGE DEUKMEJIAN<br>Attorney General | : | |
| Anthony S. Da Vigo<br>Deputy Attorney General | : | |

SUBJECT: CANCELLATION OF DELINQUENT PENALTY—Payment of a delinquent penalty on property is not a necessary precondition to the cancellation thereof where the principal amount of the tax has been paid within the applicable period.

The Honorable Edward F. Buckner, County Counsel, County of Sutter, has requested an opinion on the following question:

Is the payment of a delinquent penalty on property a necessary precondition to the cancellation thereof under the provisions of section 4985.2 of the Revenue and Taxation Code?

CONCLUSION

Under the provisions of section 4985.2 of the Revenue and Taxation Code, payment of a delinquent penalty on property is not a necessary precondition to the cancellation thereof where the principal amount of the tax, exclusive of such penalty, has been paid within the applicable period specified in subdivision (a) of said section. Relief under subdivision (b) of that section is predicated upon the payment of the principal and penalty.

1

79-311

## ANALYSIS

Section 4985.2 of the Revenue and Taxation Code[1] provides as follows:

"(a)Any uncollected delinquent penalty on property provided for in Section 2617, 2618, 2704, 2705, or 2922 may be canceled by the tax collector or the auditor, with the approval of the board of supervisors upon a finding that (1) the assessee's failure to make a timely payment is due to reasonable cause and circumstances beyond the assessee's control, and occurred notwithstanding the exercise of ordinary care and the absence of willful neglect, provided the principal payment for the proper amount of the tax due is made within 90 days after the first delinquency date or within 30 days after the second delinquency date, or, (2) there was an inadvertent error in the amount of payment made by the assessee, provided the principal payment for the proper amount of the tax due is made within 10 days after the notice of shortage is mailed by the tax collector."

"(b) Any assessee seeking to be relieved of the penalty shall file with the board of supervisors a claim for refund conforming with the provisions of Article I (commencing with Section 5096) of Chapter 5 of Part 9. The claim for refund shall be accompanied by a statement under penalty of perjury setting forth the facts upon which the claim for relief is based. The statement shall be filed with the board of supervisors within 60 days after the penalty is paid, or within 60 days following the effective date of this act, whichever is later."

"(c) Nothing herein shall affect the powers of a tax collector or redemption officer pursuant to Section 2512, 2512.5 or 2513."

Subdivision (a) of section 4985.2 provides for the *cancellation* of an *uncollected* penalty, provided that the *principal payment* for the proper amount of the tax is made within a specified period. The terms "cancellation" and "uncollected" clearly connote the existence of an outstanding obligation. The term "principal payment suggests a remission of an underlying obligation exclusive of penalty. Thus, under the provisions of section 4985.2, payment of a delinquent penalty on property is not a necessary precondition to the cancellation thereof where the principal amount of the tax has been paid within the applicable period specified in subdivision (a). Where the principal amount has not been paid within said period, however, relief under subdivision (a) is not available. Of course,

---

[1] Hereinafter, all section references are to the Revenue and Taxation Code unless otherwise indicated.

2

one of the two findings specified in subdivision (a) must be made in order to support the order of cancellation. Subdivision (b) of section 4985.2 prescribes the procedure for claiming a refund of a penalty which has been paid by the taxpayer. Subdivision (b) refers to section 5096 et seq. providing an administrative remedy for the recovery of taxes paid *(cf. Roth v. City of Los Angeles* (1975) 53 Cal. App. 3d 679, 684) including penalties, interest and costs  (§ 5107). Payment of a delinquent penalty is, of course, a necessary precondition to its refund.

It is concluded, therefore, that under the provisions of section 4985.2, payment of a delinquent penalty on property is not a necessary precondition to the cancellation thereof where the principal amount of the tax, exclusive of such penalty, has been paid within the applicable period specified in subdivision (a) of said section. Relief under subdivision (b) of that section is predicated upon the payment of the principal and penalty.

*****

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT I

**UNITED STATES DISTRICT COURT**
**Northern District of California**
1301 Clay Street, Suite 400 South
Oakland, California 94612

www.cand.uscourts.gov

Richard W. Wieking
Clerk

General Court Number
510.637.3530

December 3, 2012

***AMENDED***

RE: <u>CV 12-05535 SBA</u>     <u>SABIR AL-MANSUR-v- BARRY GROSS</u>

Default is entered as to **Defendants: Barry Gross, Gross Mortgage Corporation and
Contractors Capital Corporation** on **12/03/2012.**

RICHARD W. WIEKING, Clerk

by: _____
Jessie Mosley
Case Systems Administrator

NDC TR-4  Rev. 3/89

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

SABIR AL-MANSUR,

          Plaintiff,

  v.

BARRY GROSS et al,

          Defendant.

                             /

Case Number: CV12-05535 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 3, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Sabir Al-Mansur
2419 Market Street
Oakland, CA 94607

Dated: December 3, 2012

                             Richard W. Wieking, Clerk
                             By: Jessie Mosley, Deputy Clerk

NDC TR-4  Rev. 3/89

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT J

Notice of Sale of Tax Defaulted Property

Alameda County Tax Collector's Office

ALMANSUR SABIR & POOLE JERON REGINA LITES
855 44TH ST
EMERYVILLE CA 94608-3401
Assessors Number 2017-110714 2016-063644

January 20, 2021

### IMPORTANT NOTICE TO PARTIES OF INTEREST

Our records indicate you may have a legal interest in the property described below. This property will be offered for sale at public auction to the highest bidder at the place, date, and time indicated. The proposed sale is for the purpose of satisfying unpaid taxes, penalties, and costs.

The amount currently required for redemption is shown below. **THE RIGHT OF REDEMPTION WILL TERMINATE AT THE CLOSE OF BUSINESS OR 5PM, WHICHEVER IS LATER, ON THE LAST BUSINESS DAY PRIOR TO THE COMMENCEMENT DATE OF THE TAX SALE.** If the property is the subject of a bankruptcy proceeding, this notice constitutes a "notice of tax deficiency" pursuant to Section 362(b)(9)(B) of Title 11 of the United States Code.

| Redemption Amount | $ 379,010.49* | if paid by | March 18, 2021 |

The auction will be held online at www.bid4assets.com beginning at 8:30AM on March 19, 2021 and ending at 1:00PM on March 22, 2021. If the parcel is not sold, the right of redemption will revive and continue up to the close of business on the last business day prior to the commencement date of the next scheduled tax sale. Parcel may be reoffered beginning at 8:30AM on May 14, 2021 and ending at 1:00PM on May 17, 2021.

| Assessee's Name | ALMANSUR SABIR & POOLE JERON REGINA LITES |
| Assessor's Parcel No | 5-432-14-1 |
| Address of Property | 2421 MARKET ST, OAKLAND |
| Minimum Bid | $ 379,113.00 |

**\*This amount will be increased by $100.00 if this notice is posted on the property by the Sheriff's Department.**

ONLY CASH, CASHIERS CHECK, CERTIFIED CHECK, OR POSTAL MONEY ORDER WILL BE ACCEPTED TO REDEEM THIS PROPERTY AND MUST BE MADE PAYABLE TO Henry C. Levy, Treasurer and Tax Collector. If you have any questions regarding redemption amounts please call (510) 272-6800.

Note: For any property that has sustained damage due to a local state, or federally declared disaster, and has not been substantially repaired within five years from the date of said disaster, that property may be not be eligible to be offered for sale at county auction for up to 10 years after the date of said disaster. If property described in this notice falls into this category, contact the county tax collector's office immediately at (510) 272-6800. Documentation may be requested by the tax collector showing that the property was damaged as the result of a declared disaster and the date the damage occurred.

### RIGHTS OF PARTIES OF INTEREST AFTER SALE

If the property is not redeemed, and it is sold, you have the right to file a claim with the county for any excess proceeds from the sale. Excess proceeds are the amount to the highest bid in excess of the liens and costs of the sale that are required to be paid from the sale proceeds. To claim the excess proceeds you must be a "party of interest" as defined by California Revenue and Taxation Code section 4675.

A claim for excess proceeds must be filed within ONE YEAR after the tax collector's deed to the purchaser is recorded. The law protects parties of interest by requiring that any assignment to another person of the right to claim excess proceeds can be made only by means of a dated, written document. The document must specifically state that the right to claim excess proceeds is being assigned and that each party to the transaction has informed the other of the value of the right being assigned.

If you have any questions concerning redemption, the proposed sale of the property, or your right to claim excess proceeds, contact Theody Virrey at 510-272-6844.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT K

Notice of Sale of Tax Defaulted Property

Alameda County Tax Collector's Office

January 13, 2022

ALMANSUR SABIR & POOLE JERON ETAL

855 44TH ST

EMERYVILLE, CA 94608-3401

Recorder's Number Unknown

## IMPORTANT NOTICE TO PARTIES OF INTEREST

Our records indicate you may have a legal interest in the property described below. This property will be offered for sale at public auction to the highest bidder, at the place, date, and time indicated. The proposed sale is for the purpose of satisfying unpaid taxes, penalties, and costs.

The amount currently required for redemption is shown below. **THE RIGHT OF REDEMPTION WILL TERMINATE AT THE CLOSE OF BUSINESS OR 5PM, WHICHEVER IS LATER, ON THE LAST BUSINESS DAY PRIOR TO THE COMMENCEMENT DATE OF THE TAX SALE.** If the property is the subject of a bankruptcy proceeding, this notice constitutes a "notice of tax deficiency" pursuant to Section 362(b)(9)(B) of Title 11 of the United States Code.

Redemption Amount:            $ 432,791.84*            If paid by:      March 17, 2022

**The auction will be held online at www.bid4assets.com beginning at 8:30AM on March 18, 2022 and ending at 1:00PM on March 19, 2022. If the parcel is not sold, the right of redemption will revive and continue up to the close of business on the last business day prior to the commencement date of the next scheduled tax sale. Parcel may be reoffered beginning at 8:30AM on May 20, 2022 and ending at 1:00PM on May 21, 2022.**

| | |
|---|---|
| Assessee's Name: | ALMANSUR SABIR & POOLE JERON REGINA LITES |
| Assessor's Parcel No: | 5-432-14-1 |
| Address of Property: | 2421 MARKET ST, OAKLAND |
| Minimum Bid: | $ 432,894.00 |

*This amount will be increased by $100.00 if this notice is posted on the property by the Sheriff's Department.

ONLY CASH, CASHIERS CHECK, CERTIFIED CHECK, OR POSTAL MONEY ORDER WILL BE ACCEPTED TO REDEEM THIS PROPERTY AND MUST BE MADE PAYABLE TO: Henry C. Levy, Treasurer and Tax Collector. If you have any questions regarding redemption amounts please call (510) 272-6800.

*Note: For any property that has sustained damage due to a local, state, or federally declared disaster, and has not been substantially repaired within five years from the date of said disaster, that property may be not be eligible to be offered for sale at county auction for up to 10 years after the date of said disaster. If property described in this notice falls into this category, contact the county tax collector's office immediately at (510) 272-6800. Documentation may be requested by the tax collector showing that the property was damaged as the result of a declared disaster and the date the damage occurred.*

## RIGHTS OF PARTIES OF INTEREST AFTER SALE

If the property is not redeemed, and it is sold, you have the right to file a claim with the county for any excess proceeds from the sale. Excess proceeds are the amount to the highest bid in excess of the liens and costs of the sale that are required to be paid from the sale proceeds. To claim the excess proceeds, you must be a "party of interest" as defined by California Revenue and Taxation Code section 4675.

A claim for excess proceeds must be filed within ONE YEAR after the tax collector's deed to the purchaser is recorded. The law protects parties of interest by requiring that any assignment to another person of the right to claim excess proceeds can be made only by means of a dated, written document. The document must specifically state that the right to claim excess proceeds is being assigned and that each party to the transaction has informed the other of the value of the right being assigned.

If you have any questions concerning redemption, the proposed sale of the property, or your right to claim excess proceeds, contact Theody Virrey at 510-272-6844.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT L



*2015 - 2016*
*ALAMEDA COUNTY GRAND JURY*
*FINAL REPORT*

---

## ALAMEDA COUNTY BOARD OF SUPERVISORS

District One        Scott Haggerty, President
District Two        Richard Valle
District Three      Wilma Chan, Vice President
District Four       Nate Miley
District Five       Keith Carson

---

**ALAMEDA COUNTY GRAND JURY**
1401 Lakeside Drive, Suite 1104
Oakland, California 94612
Phone: (510) 272-6259 / FAX: (510) 465-9647
E-Mail: grandjury@acgov.org / Web: www.acgov.org/grandjury



## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

➢ Do you want to increase the efficiency of local government, save taxpayers' dollars, and improve services?

➢ Are you a good listener?

➢ Can you cooperate with 18 others towards a common goal?

➢ Can you keep a secret? *All of your work must be kept confidential.*

➢ Can you commit yourself to a full year of work?

➢ Can you ask thoughtful questions, review documents, and help write reports?

➢ Can you attend at least two morning meetings each week in Oakland?

➢ Can you contribute a substantial amount of time to the Grand Jury? *(at least 10-20 hours or more per month)*

*The privilege of serving as a Grand Juror comes with many rewards including the satisfaction of making a worthwhile contribution to the improvement of your community.*

**How to Apply**

 Get an application!

 Fill it out!

 Give it to us!

- Online: acgov.org/grandjury/juror.htm
- In person (ask staff in the Court's Jury Room)
- Call, email, or mail:
  Cassie Barner
  Grand Jury Recruitment
  1401 Lakeside Drive, Suite 1104
  Oakland, CA  94612
  cassie.barner@acgov.org
  510-208-9855

*For more information, contact the Grand Jury staff or visit the Grand Jury's website at* acgov.org/grandjury

*The Grand Jury serves on a fiscal year basis, from July 1 through June 30. Applications are accepted throughout the year and are reviewed each spring for service beginning July 1st. You must be over 18, have lived in Alameda County for at least one year, and possess sufficient knowledge of the English language. Grand Jurors are paid $15 per day plus mileage.*

# TABLE OF CONTENTS

| | |
|---|---|
| Alameda County Board of Supervisors | 1 |
| Table of Contents | 3 |
| Foreperson's Letter | 5 |
| Grand Jury Members | 7 |
| Officers and Legal Staff | 8 |
| Grand Jury Committee Assignments | 9 |
| Grand Jury Photograph | 10 |
| Presiding Judges of the Alameda County Superior Court | 11 |
| Introduction to the Alameda County Grand Jury | 13 |
| Political Interference with Oakland Townhouse Project | 19 |
| City of Oakland's Costly Pursuit of Zero Waste Franchise Contracts | 31 |
| The Failure of Eden Township Healthcare District's Mission | 43 |
| Alameda Local Agency Formation Commission | 57 |
| Oversight of County Funded Community Based Organizations | 61 |
| Constraints of the Measure A Oversight Committee | 73 |
| The Public's Right to Know: Electronic Records Retention and Access | 79 |
| The Oakland Unified School District and Charter Schools | 85 |
| Management Issues Within the City of Oakland Revenue Division | 95 |
| Jail Inspections | |
|     Alameda County Juvenile Justice Center - Juvenile Hall Inspection | 103 |
|     Hayward Police Department Jail Inspection | 107 |
|     Fremont Police Department Detention Facility Inspection | 111 |
|     Wiley W. Manuel Courthouse Jail Inspection | 115 |
| Urban Shield 2015 | 119 |

## APPENDIX

| | |
|---|---|
| How to Respond to Findings & Recommendations | 125 |
| Citizen Complaint Guidelines | 127 |
| Grand Jury Citizen Complaint Form | 129 |
| Application to Become a Grand Juror | 131 |

2015-2016 Alameda County Grand Jury Final Report

[This page intentionally left blank]



Alameda County
Grand Jury

1401 Lakeside Drive
Suite 1104
Oakland, California 94612

510.272.6259
fax 510.465.9647
www.acgov.org/grandjury

June 1, 2016

Hon. Morris D. Jacobson, Presiding Judge
Alameda County Superior Court
1225 Fallon Street, Department One
Oakland, California 94612

Dear Judge Jacobson:

On behalf of the 2015-2016 Alameda County Grand Jury, I am pleased to present this Final Report of Civil Investigations to this Court and to the citizens of Alameda County.

To the citizens of Alameda County, we feel it is important for you to understand the Grand Jury history and purpose. The Grand Jury dates back over 800 years to the Magna Carta in 1215, and was brought forth to the Continental Congress in 1789 by James Madison in the Fifth Amendment of the Bill of Rights. The Grand Jury came about in California in 1872 with the adoption of the California Penal Code.

This Final Report is the result of dedicated work performed by the nineteen members of the Alameda County Grand Jury. Our members volunteered one year of their life for public service in order to help improve the local government, law and justice, health and social services, and education and administration throughout Alameda County on behalf of its citizens. The jury applied their extensive and diverse experience to this challenge, and to understand the issues at hand. Additionally, our jurors were extremely dedicated, passionate and worked tirelessly to become content experts on the investigations they performed, and the reports they have written.

The Final Report is a compilation of eight individual investigations. These reports address a wide range of local issues throughout our cities and county. The Grand Jury also completed its mandate to inspect and report on several jail facilities within Alameda County. An account of each is contained in this Final Report, as well as our comments on Urban Shield.

This year, the Grand Jury investigated a variety of complaints and has provided reports on topics we feel are important to the residents in our communities. These topics include:

5

Hon. Morris D. Jacobson
Page Two
June 1, 2016

1) Political interference by the Oakland City Council
2) The City of Oakland's Zero-Waste franchise contracts
3) Eden Township Healthcare District
4) Oversite of county funded Community Based Organizations
5) The Measure A Oversight Committee
6) City retention policies on electronic records and email
7) The Oakland Unified School District and Charter Schools
8) Management of the Oakland Revenue Division

It was my honor to have been given the opportunity to serve as the Foreman of this august panel. It was my pleasure to be a part of this team of diverse citizens who worked together with commitment and perseverance to fulfill their duty. A special thanks goes to the committee and subcommittee chairs, secretaries and pro-tems, who showed excellent leadership and organizational skills over the course of this term. It would also have been impossible to complete the work of this jury without the dedication, knowledge and guidance of both Assistant District Attorney Robert Warren and Legal Assistant Cassie Barner. To them, we offer our sincere thanks. The county is extremely fortunate to have these two individuals focused on the Grand Jury process and proceedings.

In closing, the 2015-2016 Alameda County Grand Jury is proud of its accomplishments, and our service to the citizens of this county.

Sincerely,

TIMOTHY JONES, Foreman
2015-2016 Alameda County Grand Jury

___

construct a number of townhouse units on his property next door to a city councilmember's residence. The property owner invested a substantial amount of time and money in amending his building application in response to multiple levels of review within the city's Planning and Zoning Division.

Building applications fall under the purview of the Oakland Planning and Zoning Division that operates within the city's Planning and Building Department. It has the responsibility to process and issue zoning permits for development projects within the city. The director of Planning and Building (planning director), the department head for this umbrella agency, manages 135 employees and reports to the assistant city administrator.

Small building projects, such as the matter the Grand Jury investigated, are approved by the zoning manager within the Planning and Zoning Division. Case planners, supervised by the zoning manager, are assigned to individual projects to ensure proposed designs comply with city zoning and planning codes. Their decisions can be appealed to the Planning Commission by opponents of any project.

**INVESTIGATION**

During the townhouse project investigation, the Grand Jury heard testimony from several witnesses, including city employees, and reviewed numerous documents, as follows:

- Hundreds of emails pertaining to the townhouse project (obtained from the city);

- The Oakland Government Ethics Act;

- The California Political Reform Act, Government Code section 87100 et seq.;

- The Oakland City Charter Section 218. Non-Interference in Administrative Affairs;

- Oakland's City Council Code of Ethics;

- Oakland's City-wide Code of Conduct - for non-sworn employees, Administrative Instruction 596;

- City of Oakland Planning Commission meetings: staff reports, meeting minutes, and video recordings;

- Oakland's Design Review Committee staff agenda; and

- California Fair Political Practices Commission opinion letters on conflict of interest.

The Grand Jury acknowledges the councilmember's right to contact city staff regarding the townhouse project for the sole purpose of making inquiries. The Grand Jury also acknowledges the right of the councilmember to appeal the staff approval of the project and to publicly testify at planning commission hearings as a private citizen, but not as member of the city council. The Grand Jury did not evaluate the merits of either the property owner's proposed project or the councilmember's objections to the project; rather, the Grand Jury examined the councilmember's use of the power of her elected position to oppose the project.

Townhouse Project

The owner of a vacant lot located in west Oakland proposed building a five-unit townhouse project (later downsized to four units) as permitted under city zoning. In November 2013, the property owner began working with a case planner within the planning department to prepare a design that would meet city requirements, including compatibility with neighboring properties. After reaching out to neighbors and implementing city staff recommendations, the owner's architect drafted a plan that appeared to meet the city's requirements. Shortly after submitting the building application on January 23, 2014, the property owner was contacted by the next-door neighbor who stated that his wife was an Oakland city councilmember and further stated that he and his wife would be working to stop the project if the design was not changed to their liking. This raised concerns for the property owner because his architect had already incorporated city staff recommendations into the project plans and approval of the townhouse project appeared imminent.

Soon thereafter, the councilmember contacted the city's Planning and Building Department director (planning director) to voice objections to the townhouse project. As a result, the planning director contacted the zoning manager and the assigned case planner, notifying them that she would be conducting her own design review of the project. After visiting the site, the planning director determined that the project was poorly designed, despite the fact that the project plans had already been evaluated by a group of city planners at a regular staff meeting. Subsequent to conducting an independent review, the planning director then suggested changes to the design plan. The director also suggested that the property owner present the revised plans to the councilmember and interested neighbors so that the final design could be completed and approved by the city.

While the assigned case planner remained involved, the planning director became the city's point of contact for the project. The Grand Jury heard testimony from witnesses that it was highly unusual for the head of the city Planning and Building Department to become directly involved with a project of

this relatively small size. The Grand Jury heard conflicting evidence as to whether this was common practice.

On March 21, 2014, after making revisions requested by the planning director, the property owner resubmitted the project plans. Shortly thereafter, the zoning manager approved the design review after planning staff determined that the proposed project complied with city zoning and other planning codes. Two weeks later, an appeal of the approval was filed on behalf of the councilmember's spouse.

Several months later, the appeal was considered by the Planning Commission at its August 6, 2014 meeting. At this meeting, the commission delayed ruling on the appeal and directed the property owner and appellants to try to find a mutually acceptable solution.

After the property owner completed revisions to the project, the planning director emailed the councilmember asking if the revisions were acceptable. The councilmember responded that the revisions were not acceptable and copied her staff in the email communication.

In November of 2014, the planning director emailed the property owner's architect warning him that, "...without a meeting (with the appellants and neighbors) and consensus, there is a risk that the Planning Commission will not approve the design." As documented in a number of emails, the property owner's architect had tried to meet with the councilmember and her husband, as well as other neighbors; however, the councilmember did not want to meet unless the property owner downsized the plan significantly and met other concerns.

In December, eight months after filing the appeal, the Planning Commission took final action. The property owner's new design reduced the number of units from five to four, and addressed privacy issues by facing some of the units away from the councilmember's home. These units previously had downtown views, but were now facing another neighbor's home and a freeway sound wall. The staff report for the Planning Commission's December 17th meeting noted that the project was consistent with the city's general plan objectives and policies for meeting current and future housing needs, encouraging infill development for vacant sites, and providing affordable housing. Planning Commission video from that meeting showed the councilmember broadly criticizing city policy. Later in the meeting, the councilmember interrupted the commissioners by abruptly speaking after the public comment period ended and indicated among other things that she would obtain advice from the city attorney on the issue. Ultimately, the staff's recommendation that the appeal be denied was approved

As a public servant, elected officials are precluded from seeking to influence a decision in which they have a financial interest. A public official has a "financial interest" in a government decision if it is reasonably foreseeable that the decision will have a material financial effect on the public official's interests. The financial effect is material whenever the governmental decision affects real property located within 500 feet of the official's property unless there would be no reasonably foreseeable measurable impact on the property. In this case, the councilmember has a material financial interest because the location of the townhouse project is next door to the councilmember's primary residence.

The financial effect is also material if the decision would substantially alter things such as traffic levels, view, privacy, and noise levels, among other factors. Since the councilmember's complaints included many of these factors, there is little question that the councilmember had a "financial interest" in the decisions pertaining to the townhouse project.

Accordingly, the councilmember had a material financial interest in governmental decisions based on the proximity of the townhouse project to her residence and the likelihood that her privacy would be adversely impacted.

As a result, the Grand Jury concludes that the councilmember had a conflict of interest and should have taken steps to ensure that she did not use her official position to influence the decision regarding the townhouse project. While there is an exception permitting a public official to appear as a member of the general public during a public meeting, the exception is narrowly interpreted, requiring the councilmember to limit comments to the specific project in question. An elected official may not speak to general policies or in any official capacity on matters in which the official has a conflict of interest. Additionally, a public official may not directly contact city staff behind the scenes to influence a government decision.

Here, the councilmember privately contacted a department head three levels above the staff person handling the project to register discontent with the project. This conduct directly violated ethics rules and alienated staff. The councilmember's interference turned the department head into an intermediary (or even an advocate) for the elected official, giving the appearance that the public official was receiving special treatment.

Finally, when the councilmember spoke to the planning commission at the December meeting, she did not identify herself as speaking as a private citizen; rather, the councilmember spoke broadly, criticizing city policy. The Grand Jury heard testimony that the councilmember interrupted the speakers several times during the meeting and rose after public comment had closed, summarizing her position and stating she would seek the city attorney's advice. This gave the

appearance that she had special access to city resources. State ethics rules are intended to prevent such conduct that disrespects public process, city staff, and the community.

<u>Misuse of City Resources or Position for Private Gain</u>

*City ethics rules state that no public servant may use his or her position, or the power or authority of his or her office or position, in any manner intended to induce or coerce any person to provide any private advantage, benefit, or economic gain to the city public servant or any other person. Use of public resources includes city compensated time.*

During this investigation, the Grand Jury learned that the councilmember's chief of staff researched and prepared a letter using city resources for the councilmember in his capacity as a city employee stating opposition to the townhouse project. The chief of staff sent this letter, which was to be signed by the councilmember, from his city email account to the councilmember's city email address. The councilmember responded by thanking him. He, in turn, suggested that the correspondence be sent from the councilmember's home email address. This opposition letter was then sent the next day to the case planner from the councilmember's husband's email address. This was a direct misuse of city resources for the councilmember's private benefit.

The Grand Jury also learned that the councilmember's chief of staff prepared talking points or notes using city time and resources for the councilmember's opposition of the project in his capacity as chief of staff. He also had multiple conversations with staff, including the department head, about the councilmember's opposition to the project. The Grand Jury learned that he never met or spoke with any other neighbors but relied on the councilmember's representations regarding neighborhood sentiment.

It is common for the chief of staff to inquire with city staff about pending development projects or to publicly comment in writing as a staff member. It is also common to organize neighborhood meetings to notify the community about such projects and the city's approval process. However, the Grand Jury believes that the chief of staff's conduct in this instance went beyond normal constituent services and thus the councilmember misused city resources to benefit herself personally.

<u>Non-Interference in Administrative Affairs</u>

*As prohibited by City Charter Section 218, except for the purpose of inquiry, neither the council nor any councilmember shall give orders to any subordinate of the City under the jurisdiction of the City Administrator or such other officers,*

*either publicly or privately; nor shall they attempt to coerce or influence the City Administrator or such other officers, in respect to any administrative action.*

The Grand Jury identified emails to city staff documenting the councilmember's objections to the project. Specifically, the councilmember sent the planning director an email stating, "This process raises a series of serious concerns for your department including how well you track and enforce the city's procedures." The Grand Jury concludes that these communications gave the appearance that the councilmember was speaking not as a private citizen, but rather, inappropriately wielding her power as a councilmember to influence an administrative decision.

The councilmember also stated in her email, "What is revealed here is troublesome…I would hope that staff is sending a clear signal that the applicant [property owner] needs to return with the appellants to demonstrate that both parties have followed the process we agreed to at the hearing [August 6th Planning Comission Meeting]…What is happening here indicates the same level of disregard and disrespect that has charcterized his [property owner] interactions with this community prior to the appeal. This has citywide implications. I'd like to meet with you to discuss a better process for all applicants and appellants. Let's include time for this in our next District conversation." This is a councilmember using her status as a public official to improperly influence senior staff for her own personal benefit.

Oakland Administrative Code for Employee Conduct

The city of Oakland Administrative Instruction AI 596 sets forth guidelines for professional and courteous conduct by all non-sworn city employees while conducting city business. Proper behavior includes impartial treatment of the public. This guideline also reaffirms the City Charter section 218 prohibition against employees taking direction from members of the council. If a councilmember does give direction to an employee or attempts to coerce or influence an employee regarding a contract, project, personnel matter or other administrative action, *the employee shall report the violation.*

The planning director became the city's primary point of contact for the project corresponding on numerous occasions with the property owner's architect and the councilmember. These emails had a pattern of advocating the councilmember's interest while at the same time placing a burden on the property owner to develop a mutually acceptable solution.

While the Grand Jury received information that the planning director may have informed the city administrator about this project, there was no indication that the director reported the councilmember's conflict of interest or inappropriate

interference with staff. Instead, the planning director continued to advocate for a conclusion that satisfied the councilmember. This advocacy gave the appearance that backroom conversations were taking place outside of the property owner's participation placing him at a disadvantage.

**Remedies**

The Oakland Public Ethics Commission and the city council both have the authority and responsibility to address ethical violations.

Oakland Public Ethics Commission

The Oakland Public Ethics Commission (PEC) is a seven-member board of Oakland residents. The PEC's responsibilities include overseeing compliance with the Oakland Government Ethics Act. Specific responsibilities include educating city staff on ethics-related issues and ensuring policies are in place and are being followed. The PEC is also authorized to conduct investigations and impose fines and penalties as part of its compliance responsibilities.

The PEC was originally created by city charter amendment in 1996. While the amendment appeared to set up a body of citizens with the goal of ensuring "fairness, openness, honesty and integrity" in city government, the PEC had very little enforcement authority and insufficient resources to carry out its mission. In response to ethical violations by local elected officials in the last decade, the citizens of Oakland took action by prioritizing the importance of integrity and high ethical standards for their public officials.

In 2014, voters amended the city charter to strengthen their PEC, giving the agency more authority and resources to educate and hold city leaders accountable for their actions. The PEC now has expanded structure, staffing, independence, and more importantly, authority to take action. As a result, the PEC now has the authority, the capacity to investigate, and the ability to enforce all of the ethical standards discussed earlier in this report.

City Council Censure

The city of Oakland also has a code of ethics that applies to councilmembers. In part, it states that councilmembers must adhere to the American ideals of government, the rule of law, the principles of public administration, and high ethical conduct in the performance of public duties. The same code requires councilmembers to represent and work for the common good of the city and not for any private interest. Council members must also maintain the highest standard of public conduct by refusing to condone breaches of public trust or improper attempts to influence legislation, and must be willing to censure any

member who willfully violates the rules of conduct contained in the code of ethics. Relevant portions of the city rules go further to mirror many of the state rules governing conflicts of interests.

The power to censure allows the city council to publicly condemn a fellow councilmember. Censure is a formal legislative resolution reprimanding someone for specific conduct. The elected official who is the focus of the censure has the right to be notified of the action and must be able to respond. While the act of censuring a councilmember carries no penalty other than the verbal reprimand itself, it is a sign that the political body is self-policing its own members and making a statement that the conduct is unacceptable.

## CONCLUSION

Political interference from elected officials can erode public confidence and trust in government, thus damaging its effectiveness. Although the city of Oakland has regulations in place to prevent interference from a city councilmember, these regulations did not deter city officials from interfering with the approval process for the townhouse project. The councilmember used her position and office to advocate for private gain, and not for the common good of the city. The planning director, in effect, became a collaborator with the councilmember by advocating for design changes favorable to the councilmember while giving the impression that the revised design needed the councilmember's concurrence.

Recent legislative changes to strengthen the Public Ethics Commission were intended to combat such political interference. Now that the PEC is better staffed, concrete steps can be taken to provide training and enforce these rules. The PEC, which was created to ensure "fairness, openness, honesty and integrity" in city government, needs to take action to enforce these rules. The city council must also take action to ensure this conduct is acknowledged and addressed. City employees, especially senior staff, need to report improper conduct. Without proper checks and balances, residents and those investing in the community will lose faith in the integrity of the political process. Backroom dealing cannot be the standard by which the city of Oakland is governed.

2015-2016 Alameda County Grand Jury Final Report

---

## FINDINGS

*Finding 16-1:*
The councilmember had a conflict of interest with the townhouse project and interfered with the project's approval process.

*Finding 16-2:*
The councilmember's use of her city staff on the townhouse project was a misuse of city resources for her personal benefit.

*Finding 16-3:*
The councilmember privately contacted senior city staff, attempting to improperly influence decisions, which subverted the public process.

*Finding 16-4:*
The planning director's attempt to pacify the councilmember gave the appearance that she was collaborating with the councilmember to obstruct the property owner.

*Finding 16-5:*
The planning director's failure to report to the city administrator's office or stop the councilmember's ethical violations undermined city staff and the fair treatment of those doing business with the city.

## RECOMMENDATIONS

*Recommendation 16-1:*
The city of Oakland Public Ethics Commission must conduct its own investigation of facts surrounding the townhouse project and take appropriate enforcement actions.

*Recommendation 16-2:*
The city of Oakland Public Ethics Commission must reinforce its ethics training for elected officials and city employees regarding conflicts of interest, misuse of city resources or position, and professional conduct, including reporting council interference.

*Recommendation 16-3:*
The Oakland City Council must follow its Code of Ethics, including its mandate to "be willing to censure any member who willfully violates the rules of conduct contained in the Code of Ethics."

2015-2016 Alameda County Grand Jury Final Report

_____

## RESPONSES REQUIRED

*Responding Agencies - Please see page 125 for instructions*

Oakland City Council:
        Findings 16-1 through 16-5
        Recommendation 16-3

Mayor, City of Oakland:
        Findings 16-1 through 16-5
        Recommendations 16-3

City of Oakland Public Ethics Commission:
        Recommendations 16-1 and 16-2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT M

**COMPLAINT**



**OAKLAND 911
STILL LACKING A TIMELY
RESPONSE**

**THE SANTA RITA JAIL
MENTAL HEALTH BUILDING
WILL IT EVER SEE THE LIGHT
OF DAY?**

**ALAMEDA COUNTY NEEDS A
CODE OF ETHICAL CONDUCT
AND WHISTLEBLOWER
PROGRAM**

**MISUSE OF COUNTY
INFORMATION TECHNOLOGY
SYSTEMS DURING THE 2018
ELECTION CYCLE**

**TIMELINESS OF CHILD
ABUSE AND NEGLECT
INVESTIGATIONS**

# 2022–2023
# Alameda County Grand Jury
# Final Report

*[This page intentionally left blank.]*

# 2022–2023
# Alameda County Grand Jury
# Final Report



*Rene C. Davidson Courthouse, Oakland, CA*

## ALAMEDA COUNTY BOARD OF SUPERVISORS

District One        David Haubert, *Vice President*
District Two        Elisa Márquez
District Three      Lena Tam
District Four       Nate Miley, *President*
District Five       Keith Carson

---

## ALAMEDA COUNTY GRAND JURY

1225 Fallon Street, Executive Office, Second Floor
Oakland, CA  94612
Phone: 510-924-3800 | email: accivilgrandjury@alameda.courts.ca.gov
Website: https://grandjury.acgov.org/

*[This page intentionally left blank.]*

# Table of Contents

| | |
|---|---|
| Alameda County Board of Supervisors | 3 |
| Grand Jury Special Note | 7 |
| Grand Jury Foreperson's Letter | 9 |
| Grand Jury Members | 11 |
| Grand Jury Officers, Legal Advisors, and Presiding Judge of the Superior Court | 12 |
| Grand Jury Committee Assignments | 13 |
| Grand Jury Photographs | 15 |
| Presiding Judge | 17 |
| | |
| Oakland 911 Still Lacking a Timely Response | 19 |
| The Santa Rita Jail Mental Health Building | 39 |
| Alameda County Needs a Code of Ethical Conduct and Whistleblower Program | 57 |
| Misuse of County Information Technology Systems During the 2018 Election Cycle | 73 |
| Timeliness of Child Abuse and Neglect Investigations | 83 |
| | |
| Jail Inspections: | 99 |
| Alameda County Juvenile Justice Center | 100 |
| Albany Police Department | 106 |
| East County Hall of Justice | 108 |
| Hayward Police Department Detention Facility | 109 |
| | |
| About the Grand Jury | 111 |
| Citizen Complaint Guidelines | 114 |
| How to Respond to Findings and Recommendations | 116 |



*Sather Gate, University of California Berkeley Campus*

### *Special Note*

In performing its duties, the Grand Jury relies on the advice of the District Attorney, the Presiding Judge of the superior court, and the County Counsel. In Alameda County, the county has assigned district attorney staff to act as the primary legal advisors to the grand jury, including a full-time Assistant District Attorney as legal advisor and a full-time Senior Program Specialist for administrative and procedural support. In the event the District Attorney's (DA) office has a conflict of interest, the jury must confer with the presiding judge and county counsel to arrange alternative legal advice.

On August 10, 2022, at our first committee meeting, we were informed that the DA's office had a conflict of interest with one of the investigations. For that investigation, the DA's office withdrew its assistance and was "walled off" from all information and communication; a legal advisor was appointed from the county counsel's office. The district attorney staff continued to provide support for all other investigations.

Then, in January 2023, seven months into the 12-month term, the DA's office abruptly withdrew all legal, administrative, and procedural support and ceased all communication with the grand jury citing a conflict of interest. Immediately, the jury's investigations came to a near standstill. The Grand Jury had already requested the assistance of staff to contact over a dozen witnesses, and no longer had a clear legal way to request them. Over the following three months, while the presiding judge searched for a new legal advisor, the jury worked to establish ad hoc procedures for arranging and conducting witness interviews and to rekindle stalled investigations. In April 2023, a temporary legal advisor was hired from outside the county. The expertise and support of the Senior Program Specialist was not replaced, leaving the jury on its own to format, design and produce the final report.

It is an understatement to say that this unprecedented months-long disruption challenged our ability to fully conduct and conclude our investigations and produce this report within the limit of our term. We, the grand jurors, with the help of the Presiding Judge, County Counsel and others, have overcome this challenge and fully stand behind the investigations reported here. We would like to extend a special thank you to Presiding Judge Smiley for his commitment and persistence in supporting us in our time of need.



*Oakland Airport Runway*



Alameda County
**Grand Jury**

1401 Lakeside Drive
Suite 1104
Oakland, California 94612

510.272.6259
fax 510.465.9647
www.acgov.org/grandjury

Hon. Charles A. Smiley, Presiding Judge
Alameda County Superior Court
1225 Fallon Street, Executive Office, 2nd FL
Oakland, California 94512

Dear Judge Smiley,

On behalf of the 2022-2023 Alameda County Civil Grand Jury, I would like to submit our final report to the Superior Court and the people of Alameda County. The Grand Jury initially received 24 complaints. After a review of the complaints, it was decided that 13 would be considered for further examination. This report contains the results of five detailed investigations into activities of City, County governments, and agencies, as well as four jail inspections. Due to the loss of our legal counsel and administrative support we were unable to complete an additional two investigations.

As always, our objectives have been to best inform the public and to improve the operational effectiveness and efficiency of our local government. The information contained within this report came from numerous interviews of dedicated government employees and elected officials. The members of the Grand Jury obtained and reviewed hundreds of documents to corroborate the evidence we received on which our findings were based.

This has been an unusually challenging year for this Grand Jury. First, the Covid restrictions were still in place, which meant most of our business was conducted via Zoom. Next, after the recent District Attorney election (2023), all legal and administrative support was withdrawn from our group. The removal of this support, at such a critical time, (seven months into our one-year process) was very disruptive.

My colleagues and I want to extend a special thanks to you as you stepped in to provide guidance and leadership when our legal and administrative support were abruptly removed.

We are not experts. Rather, as the wisdom of the grand jury system affords, we are ordinary citizen volunteers, who were tasked with asking questions of governmental organizations any citizen would ask if given the opportunity.

I am grateful to have been given the opportunity to serve as Foreperson for the 2022-2023 Civil Grand Jury and to have worked with such a talented group of Alameda County residents. It is our desire that positive change will come about as a result of this report.


Sincerely


Torin G. Fischer, Foreperson
2022-2023 Alameda County Civil Grand Jury

# ALAMEDA COUNTY NEEDS A CODE OF ETHICAL CONDUCT AND WHISTLEBLOWER PROGRAM

## EXECUTIVE SUMMARY

An ethics policy and a code of ethical conduct are critical tools for a county government to eliminate ethical confusion and misunderstandings, explicitly express acceptable behavior by county officials and employees, and ultimately build public trust in the government.

The Alameda County Civil Grand Jury, in its 2015 report titled "Alameda County Board of Supervisors Culture of Political Interference," recommended that the Alameda County Board of Supervisors (BoS) adopt a code of ethics policy covering all county employees and including a confidential reporting mechanism covering observations of unethical conduct. The BoS responded that they would *consider* adopting a countywide ethics policy and noted that adequate safeguards currently are in place because County employees are subject to various conflict of interest laws and policies as well as laws that afford County employees protections as "whistleblowers." Despite the BoS's claim that "adequate safeguards

*The Grand Jury found that Alameda County still has no ethics policy or code of conduct that applies to all county officials, employees, vendors and volunteers. The County also lacks a whistleblower program for use by employees and the general public.*

are in place," over the past ten years the Grand Jury has reported on at least five incidents that raised questions of the ethical climate and values within the Alameda County government.

A complaint filed in 2022 with the Grand Jury claimed that the BoS has taken no action to implement the 2015 Grand Jury recommendation that the County adopt a code of ethics policy and a mechanism for reporting unethical conduct. The complainant also highlighted a public statement made by a county supervisor in 2021 that an ethics policy is not a high priority for the BoS.

This complaint motivated the Grand Jury to investigate for itself what steps, if any, the County has taken to adopt a code of ethics policy covering all county employees, establish a confidential reporting mechanism for whistleblowers, and expand ethics-related training to all county staff.

The Grand Jury found that Alameda County still has no ethics policy or code of conduct that applies to all county officials, employees, vendors and volunteers. The County also lacks a whistleblower program for use by employees and the general public. Despite repeated findings from prior Grand Juries on ethical violations and a specific recommendation to establish an

ethics policy and reporting mechanism in 2015, the BoS has not acted for nearly a decade. Alameda County's lack of an ethics policy and code of conduct specific to the County indicates that ethical government is not a priority.

The Grand Jury is again recommending that the BoS adopt an ethics policy, including a code of conduct, that applies to all county employees, elected officials, vendors and volunteers. The Grand Jury further recommends that the BoS develop and implement a comprehensive Whistleblower Program encompassing initiating, tracking, investigating, and reporting on complaints, and implement ethics training for all county employees.

## BACKGROUND

*In today's atmosphere of mistrust in government institutions, simply adhering to the letter of the law is not enough. Ethics in public service means more than the avoidance of criminal behavior or rule-breaking; it means acting as effective stewards of the public trust. It is a commitment by public employees to take individual responsibility for creating a government that has the trust and respect of the public. Establishment of a positive ethical climate is an essential part of maintaining the public trust. Demonstrating positive ethical leadership strengthens employee trust and helps employees 'do the right thing'.*
**City of Berkeley, Ethical Climate Survey and Audit 2017**

*The legitimacy of a democratic government rests on its ability to gain the trust of its citizens. Corrupt government officials and staff who fail to uphold basic standards of ethics completely undermine the role of public service. At the core of decisions, officials are expected to keep the interest of the public—not themselves—in mind.*
**Code of Ethics, National Association of Counties, 2009**

An ethics policy and a code of ethical conduct are useful tools for a county government to eliminate ethical confusion and misunderstandings, explicitly express acceptable behavior by county officials and employees, and ultimately build public trust in the government.

The 2014–2015 Alameda County Civil Grand Jury, in their report titled "Alameda County Board of Supervisors Culture of Political Interference," found that interference by county political operatives to influence administrative decisions on behalf of favored constituents was not uncommon and undermined the integrity of the governing and administrative operations of the County. It recommended:

*The Alameda County Board of Supervisors must adopt a code of ethics policy covering all county employees...to include a confidential reporting mechanism covering observations of unethical conduct.*

The Board of Supervisors responded:

> The Board of Supervisors **will consider** [emphasis added] drafting and adopting a code of ethics policy applicable to County employees that is similar to the General Services Agency's policy. The Board notes that **adequate safeguards currently are in place** [emphasis added] because County employees are subject to various conflict of interest laws and policies that address this need. These include: County Charter Section 66; County Administrative Code Section 2.02.170; the California Political Reform Act (California Government Code Sections 8100 et seq.); California Government Code Sections 1090 et seq. Regarding conflicts of interest in government contracting; and the extensive conflict of interest regulations promulgated by the California Fair Political Practices Commission ("FPPC")....County elected officials are required to complete AB 1234 Ethics Training every two years. (County Department Heads have been invited to attend this training as well.)

> Additionally, Labor Code Section 1102.5 protects employees from reprisal in addition to County Administrative Code Chapter 3.52, and Government Code Sections 53296 et seq. These laws afford County employees protections as "whistleblowers".

> The Board of Supervisors is committed to avoiding conflicts of interest and maintaining high ethical standards. The County will provide additional training for Board staff and department heads similar to the ethics training mandated for elected officials by AB 1234.

The 2014–2015 Grand Jury also recommended that the County conduct ethics training, including state whistleblower statutes, for elected officials and all county employees. A code of conduct was not addressed. In their response, the County stated that they would administer training to elected officials and Board staff, as noted above, but made no commitment to provide ethics training to all county employees or to include whistleblower statutes in the training.

*The Board of Supervisors is committed to avoiding conflicts of interest and maintaining high ethical standards. The County will provide additional training for Board staff and department heads similar to the ethics training.*

Despite the BoS's claim that "adequate safeguards are in place," over the past ten years the Grand Jury has reported on at least five incidents that raised questions about the ethical climate and values within the Alameda County government. In addition to the 2015 Grand Jury report cited above,

*Despite the BoS's claim that "adequate safeguards are in place," over the past ten years the Grand Jury has reported on at least five incidents that raised questions about the ethical climate and values within the Alameda County government.*

- A 2013 Grand Jury report titled "Nepotism Policies in Alameda County" expressed concern about the perception that government jobs were handed out as favors to elected officials and noted that other county executives may have eroded public confidence in County government.

- The 2016–2017 Grand Jury, in a report titled "Alameda County Board of Supervisors Discretionary Funds," found that County Supervisors had broad, discretionary spending powers as it pertains to excess budget funds through the Fiscal Management Reward (FMR) program. The Grand Jury questioned whether the lack of oversight could contribute to irresponsible spending of taxpayer funds. The BoS agreed "that the process for awarding (FMR) can benefit from increased accountability measures…" It is unclear if any measures were, in fact, implemented.

- In 2018, the Grand Jury published a report titled "Coliseum Ticket Bonanza," which found numerous issues with how Alameda County handled the free luxury-suite tickets they received from the teams occupying the Coliseum Complex, including problematic distribution practices, reporting practices, and uninvestigated potential tax liabilities.

- Finally, the 2022–2023 Grand Jury, in its report titled "Misuse of County Information Technology Systems During the 2018 Election Cycle" in this volume, reports on multiple policy violations by employees and staff within the District Attorney's Office during the 2018 election cycle.

These reported incidents make clear that the specific state and county conflict-of-interest and whistleblower protection laws cited in the BoS response to the 2015 Grand Jury recommendations, while necessary, are ineffectual as a code of ethical conduct for all county officials and employees.

A complaint filed with the 2022–2023 Grand Jury claimed that the BoS has taken no action to implement the 2015–2016 Grand Jury recommendation that the County adopt a code of ethics policy, including a mechanism for reporting unethical conduct, covering all county employees.

In August 2022, the complainant made a public records request to the County for any record of the consideration or adoption of an ethics policy; the Clerk of the Board responded that there are no such documents. The complainant also highlighted a public statement made by a County Supervisor in 2021, that an ethics policy is not a high priority for the BOS. Specifically, the Supervisor stated:

> *"So, if we haven't done something that we pointed out in our response to the Grand Jury, then I will talk with the County Administrator and County Counsel about that so we can fulfill that responsibility…. But I tell you, in terms of priorities, [a County ethics policy] probably doesn't make the top 10. It might not even make the top 20. It might not even make the top 30 in terms of priorities."*

This complaint motivated the Grand Jury to investigate for itself what steps, if any, the County has taken to develop and adopt a code of ethics policy covering all county employees, establish a confidential reporting mechanism for whistleblowers, and expand ethics-related training to all county staff.

## INVESTIGATION

In this investigation, the Grand Jury interviewed elected and appointed County officials responsible for creating and implementing county policies and receiving complaints regarding unethical conduct of county officials and employees, as well as similar officials from a nearby county. Additionally, the Grand Jury reviewed the following documents:

- State and county ordinances and codes cited in the BoS response to the 2014–2015 Grand Jury recommendations.

- Guidelines for ethics policies published by several local government advisory bodies.

- Ethics, code of conduct and whistleblower policies adopted by cities in Alameda County and by other Bay Area and California counties.

*In terms of priorities, [a County ethics policy] probably doesn't make the top 10. It might not even make the top 20. It might not even make the top 30 in terms of priorities.*

- Departmental ethics policies for Alameda County Behavioral Health Care Services (BHCS), General Services Agency (GSA), and Human Resource Services (HRS).

- Codes and policies adopted by the County and employee trainings and past Grand Jury reports on ethics violations within the County and the County responses to these Grand Jury reports.

Based on its research and for the purposes of this report, the Grand Jury defines "ethics policy", "code of conduct", and "whistleblower program" as follows:

An **Ethics Policy** establishes an overarching philosophy from leadership laying out their expectations and communicating core values or principles that serve as a guide to ethical behavior and decision-making. An ethics policy encapsulates an organization's essential beliefs and general culture and sets the foundation for codes or rules related to ethical behavior.

A **Code of Conduct** outlines acceptable behaviors and actions that are required or prohibited as a condition of ongoing employment through specific codes or policies and is signed by all employees of the institution.

A **Whistleblower Program** has a prominently-published mechanism for the public and employees to report ethical misconduct and violations of laws and regulations by officials and employees. There is a clear process to receive, accept, screen, document, analyze, investigate and monitor complaints with a published report outlining the complaints and their resolution made available to the public on a regular basis.

## Status of Alameda County Ethics Policy and Code of Conduct

To determine the status and availability of an Alameda County ethics policy, code of conduct, and whistleblower program, the Grand Jury searched the Alameda County BoS and agency websites for relevant documents and asked County officials and managers about the status and disposition of such documents. Neither witnesses nor web searches produced any ethics policy, code of conduct or whistleblower program.

None of the elected or appointed county officials that spoke with the Grand Jury could provide or point the Grand Jury to an ethics policy or code of conduct that applied to all county officials and employees. Some witnesses said they were unsure if such a policy existed while others said they were sure it did not exist. A County Supervisor also confirmed that no ethics policy existed and developing such a policy was a low priority.

Web searches conducted by the Grand Jury also were unsuccessful in locating an ethics policy or code of conduct applicable to all county officials and staff. Through this effort, the Grand Jury did learn that some county departments have developed their own ethics-related policies. Behavioral Health Care Services (BHCS), in compliance with federal law, has a policy that is intended to prevent Medicare fraud. BHCS also has an ethical conduct policy outlining best practices that is signed by every BHCS employee and their supervisor. The General Services Agency (GSA) has a Code of Ethics brochure on employee acceptance of gifts from vendors. Human Resource Services (HRS) has each employee in that department sign a Code of Ethics document to ensure confidentiality of personnel records.

## Whistleblower Program

Most elected and appointed county officials that spoke with the Grand Jury were not knowledgeable of any specific procedure for making or reporting whistleblower complaints. When asked about a countywide whistleblower process, the Grand Jury was directed more than once to Alameda County Administrative Section Code 3.52. This provision establishes protection for county employees from retaliation for reporting a complaint, but no clear mechanism through which to do so. Claims regarding whistleblower retaliation can be filed with the Clerk of the Board according to the Alameda County Code. Retaliatory provisions are also covered by California Labor Code Section 1102.5.

These same witnesses lacked knowledge on how to initiate a complaint, as well as where it should be directed, indicating a lack of education and outreach at the highest levels. Suggestions for where to direct complaints ranged from the Clerk of the Board, County Counsel, County Auditor, the employee's supervisor, union representatives, to Alameda County Human Resource Services (HRS).

Additionally, there is no clear whistleblower mechanism for use by employees or for use by the general public who might want to report violations or call attention to the unethical behavior of an Alameda County elected official, employee, vendor or volunteer. The only countywide reporting form found by the Grand Jury was entitled "Alameda County Complaint Form" (Fig 1). It pertains only to county employees with regards to discrimination based on protected categories (i.e., race, gender, age, etc.). Diversity/EEO complaints are filed with the Clerk of the Board, then moved to the Diversity Unit which is under the auspices of the County Counsel. Previously, these had been handled by the County Administrator (CAO). Once processed, complaints are referred to (one of many) outside investigators.

*The Grand Jury was told County Counsel usually finds out about complaints through a lawsuit filed against the County or through the District Attorney's office.*

Fraud, waste, abuse, theft, etc. are handled by County Counsel. Typically, employees are prosecuted and/or terminated. The Grand Jury was told County Counsel usually finds out about complaints through a lawsuit filed against the County or through the District Attorney's office. The Grand Jury learned that Behavioral Health Care Services, to complement its departmental ethics policy, has a whistleblower policy for fraud waste and abuse with links on the BHCS website to the policy, appropriate reporting form, and basic reporting directions in multiple languages. According to one witness, BCHS receives three to four complaints per month which are handled by Risk Management in Public Health.

The Grand Jury was unable to discern any tracking or reporting on either the nature of whistleblower complaints submitted, or the total number of complaints made. The consensus from witnesses interviewed was the total number of whistleblower complaints was under 12 per year. This is more than fifty times lower than the 668 whistleblower complaints received by the City and County of San Francisco during their fiscal year 2020–2021.[1] The population in Alameda County is over 1.6 million, and the county employs almost 10,000 people including county services employees. San Francisco has about half that population.

## Other Models

The Grand Jury also researched the structure and function of ethics policies and commissions in other jurisdictions as well as third-party sourced models of ethics violation reporting.

The Grand Jury discovered that most Bay Area counties and cities have an established ethics policy, with several incorporating a Code of Conduct (Table 1). Several cities within Alameda County have also established such policies (Table 2). Alameda County is one of the only Bay Area counties that has not developed a comprehensive countywide ethics policy, code of conduct or whistleblower program.

*The Grand Jury discovered that most Bay Area counties and cities have an established ethics policy, with several incorporating a Code of Conduct*

# Alameda County Complaint Form

DPU Matter # _____

**Complaint is being filed with:**

Agency/Department    Diversity Programs

If you need more space, attach separate sheet(s)

**CONFIDENTIALITY**

Information provided on this form will be kept confidential to the extent possible and in compliance with applicable laws.

## I. PERSONAL INFORMATION

Applicant    Alameda County Employee    Other ○

| *Complainant Name | | Race/ Ethnicity | Age | Gender, Gender Identity/Expression |
|---|---|---|---|---|
| Home Mailing Address | | Home # | Work # | |
| Job Classification | Job Code | Current Salary | Working Title | Date Appointed To or Applied for Position |

| Manager | Work Hours/ Schedule | *Preferred Method(s) of Contact & Contact Info |
|---|---|---|
| Non-Manager | | E-Mail |
| *Agency/Department | *Physical Work Location Address | Work # |
| | | Other |
| *Immediate Supervisor | Work # | DIC | Date of Incident |

## II. RESPONDENT(S) INFORMATION    Person(s)/Organization(s) you are complaining about.

Individual(s)

| *Respondent(s) Name(s) | Respondent Job Title | Manager | Non-Manager | Department | Phone # |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

| Agency/Department | Agency/Department Name | Phone # |
|---|---|---|

Have you previously filed this complaint with another County Agency/Department?    YES    NO

If YES, specify which Agency/Department and provide date complaint was filed:

## III. PROTECTED CATEGORIES (Check Appropriate Boxes)

- Age
- Ancestry
- Color
- Disability
- Domestic Partnership
- Family & Medical Leave Act Collector
- Gender
- Gender Expression
- Gender Identity
- Genetic Information
- Marital Status
- Medical Condition
- Military/Veteran Status
- National Origin
- Political Affiliation
- Pregnant/Breast feeding, child birth and other medical condition related to pregnancy)
- Race
- Religion
- Religion/Creed
- Retaliation
- Sex and Sex Stereotypes
- Sexual Harassment
- Sexual Orientation
- Transgender

## IV. ISSUE(S) (Check Appropriate Boxes)

- Assignment
- Appointment
- Classification
- Demotion
- Denial of Training
- Discipline/Action
- Disparate Impact
- Disparate Treatment
- Failure to Promote
- Harassment
- Loss of Employment Benefits
- Merit Increase
- Promotion
- Reduction in Force/Layoffs
- Reinstatement
- Reasonable Accommodations
- Retaliation
- Sick Leave
- Terminal
- Transfer
- Other ☐

## V. Briefly describe the circumstances that lead you to believe that you have been discriminated against.

## VI. List the corrective measures or actions you are seeking.

By Checking this box, I hereby affix my signature electronically and certify that all information submitted on this County Complaint Form is true and correct

Complainant's Signature _____    *Date _____

**Please Submit Form for Diversity Programs to:**

Alameda County Diversity Programs
1106 Madison Street, Suite 233, Oakland, CA 94607
Internal County Mail to QIC 20204 or Fax to 510.208.4904

**Please Submit Form for Department Complaints to:**

Treasurer/Tax Collector, Departmental Diversity Coordinator from following list
http://www.acgov.org/diversity/documents/coordinators.pdf

For Questions Contact: Diversity Programs at 510.272.3895 (Tie line 23895) or Departmental Diversity Coordinator

*FIG 1: Alameda County Complaint Form*

Table 1 - **Bay Area Counties with Established Ethics Programs**

| Bay Area County | Countywide Ethics Policy | Countywide Code of Ethical Conduct | Whistleblower Program | Utilizes Outsource Company/Document Handling Software |
|---|---|---|---|---|
| Alameda | No | No | No | |
| Contra Costa | No* | No | Yes (Welfare fraud and Gov Corruption) | |
| Marin | Yes | Yes | Yes | |
| Napa | Yes | ? | Yes (Health & Human Services Compliance Line) | |
| San Francisco | Ethics Commission | Yes | Yes with a robust public facing interface and annual report of complaints/disposition | Granicus (online submissions) |
| San Mateo | Yes | Yes | Yes with an easy to use reporting mechanism | Navex Global/Ethicspoint |
| Santa Clara | AB1234 training | Yes | Yes with an annual report of complaints/disposition | Lighthouse Services |
| Santa Cruz | ** | Yes*** | Yes | |
| Solano | No**** | No | Yes | |
| Sonoma | AB1234 training | Yes-Probation Dept | Yes | |

*Training on Brown Act provided, FPPC ethics training, Mission, Vision, Values statement
**Santa Cruz has a Code of Ethics Policy and Code of Conduct
***Respectful workplace conduct policy in place
****Recently resigned DA states he put ethics policy in place. None found.


Table 2 - **Alameda County Cities with Established Ethics Programs**

| Cities in Alameda County | Ethics Policy or Commission | Whistleblower Program | Utilizes Outsource Company/Document Handling Software |
|---|---|---|---|
| Alameda | Yes (City Council) | | |
| Albany | Yes | | |
| Berkeley | In process | Yes | |
| Dublin | Yes | | |
| Hayward | Yes | | |
| Oakland | Yes (Commission) | Yes | |
| Union City | Yes | | |

The Grand Jury found that San Mateo County (SMC) has one of the most comprehensive web sites for clarity and ease of use. SMC has established a code of ethical conduct tied to their County Mission Statement, outlining the ethical principles SMC upholds, and is signed by all SMC employees. There are links to county policies and a whistleblower program that directs the user

66

through several options to report violations. While SMC encourages reporting to a direct supervisor, a third-party provider option is available for complaints via email or phone to be conveyed to management or the board while maintaining anonymity and confidentiality.

Based on a review of other counties and cities, the Grand Jury compiled a list of some of the basic elements included in a robust Code of Conduct. Alameda County has some that apply to all employees



Source: smcgov.org/hr/ethics-policy

in **bold** below, but many are absent, or if present, were not visible on the public-facing county website:

- Whistleblower Program
- Protection of Assets from Fraud, Waste & Abuse
- Political Activities: Do's & Don'ts
- Incompatible Activities: Use of county time, facilities equipment or supplies, or influence or prestige of the employee's position for personal profit or advantage to outside employment
- Outside Employment: Activity or enterprise requiring such time demands as would result in less proficient performance of county duties.
- Email, Internet, and Information Technology Security: Protection of corporate information resources, privacy of data, password management
- Drug Free Workplace
- Reporting of Convictions
- Privacy Policy/Protected Health Information Sanction Policy (BHCS only)
- **Conflicts of Interest (Interest in Contracts/Receipt of Commissions or Gifts)**
- **Violence in the Workplace (Sexual Harassment & Abusive Conduct--training provided to all Alameda County employees)**
- **Equal Employment Opportunity: Diversity, Discrimination & Harassment**

Best practices for a comprehensive whistleblower program start with a mechanism (e.g., hyperlink) available on all county web sites directing complainants, both employees and the public, to a county whistleblower webpage with information on how and where to submit a complaint. Bay Area counties differ in how the initial complaints are processed--some utilize the Auditor Controller's office, others an external company or document handling software or a combination thereof.  Additionally, some counties include a menu for county codes and policies, State and Federal ethical laws, and consequences of unethical behavior.

Essential steps for the intake and assessment of complaints include:

- Receipt: numbered acknowledgement to the complainant followed by determination of eligibility for investigation
- Documentation: Record the type of complaint then direct it to the appropriate department/official
- Investigation
- Resolution and publication

The last step is a published annual report, made available to the public, outlining the number of complaints received, a synopsis of each complaint, investigative findings, and resolutions, unless confidentiality precludes sharing results.

**Training**

Local officials are required by California Law Government Code 53235 (AB1234) to complete an ethics training course within six months of being hired. California requires at least two hours of training in general ethics principles and ethics laws relevant to the official's public service every two years with a certification.

The Grand Jury learned that ethics training in Alameda County is typically administered by a private firm retained by the County to conduct Fair Political Practice Commission (FPPC)

*The Ethics Resource Center (ERC) reported in their 2007 National Government Ethics Survey that a strong ethics program effectively communicates ethical standards and procedures through training, discussion, and publications geared to the diverse needs of the workforce.*

trainings for the Board of Supervisors. A witness stated that department and agency heads are usually invited to the presentation, but the Grand Jury was unable to ascertain how many county employees take or are required to take ethics training. Alameda County employees below the supervisory level are not educated on ethical behavior.

The Ethics Resource Center (ERC) reported in their 2007 National Government Ethics Survey that a strong ethics program effectively communicates ethical standards and procedures through

training, discussion, and publications geared to the diverse needs of the workforce. The ERC also reported that organizations that implement ethics programs dramatically reduce misconduct and mitigate the risk of losing public trust.

Alameda County has enacted some policies and training for the protection of employees and county assets. Administrative Code Section 2.02.170 applies to Interest in contracts/Receipt of commissions or gifts. All county employees must attend sexual harassment prevention and abusive conduct training every two years. Additionally, the BoS adopted a Discrimination, Harassment & Retaliation Policy on September 20, 2022, which pertains to employee protections against unequal treatment, harassment and retaliation based on that employee's protected categories.

## CONCLUSION

Alameda County has no ethics policy or code of conduct that applies to all county officials, employees, vendors and volunteers. The County also lacks a whistleblower program for use by employees and the general public. Despite repeated findings from prior Grand Juries on ethical violations, and a specific recommendation to establish an ethics policy and reporting mechanism in 2015, the Board of Supervisors has not acted for nearly a decade. Alameda County's lack of an Ethics Policy and Code of Conduct specific to the County indicates that ethical government is not a priority.

The BoS claim that "adequate safeguards are in place" to address the ethical needs of the County is a bare minimum effort and proves insufficient to provide ethical guidance and standards for all Alameda County employees. The established laws and codes regarding conflict of interest, public disclosure of personal assets and provisions that exist to protect employees for disclosing information provide important components, but by themselves do not comprise a full ethics policy or code of conduct. As one witness put it, "A better practice would be to sunlight opportunity for grievances before they go too far."

The potential for ethical misconduct in a county as large as Alameda County is great and ethical dilemmas can arise in every department at all levels of employment. Explicit guidance from the BoS in the form of an ethics policy and code of conduct, combined with education for all Alameda County employees, direction from supervisors to report abuses, and the tools to report violations encourage all employees of the County to hold themselves and the County accountable to the highest standards of government. The current policy of limiting ethical training to top officials and supervisors is inadequate.

An ethics policy cannot fully function without the capability of reporting and tracking complaints with a whistleblower program. When reports are handled in consistent and relevant ways, employees perceive their input makes a difference and are more likely to report abuses in the

future. A public report of complaints and their resolutions promotes transparency and accountability and provides important information to the citizens of Alameda County.

The Board of Supervisors has the authority to establish a Countywide Ethics Policy and Code of Conduct; the implementation of which need not be a reinvention of the wheel. Resources abound on the web with direction on determining core values and ethical principles, how to establish both ethical policy and codes of conduct and setting up a recording and tracking process. One need only look to neighboring counties for examples of all.

The development and adoption by the Board of Supervisors of a Countywide ethics policy, including a code of conduct, and a comprehensive whistleblower program will follow the best practices encouraged by national studies and embraced by other Bay Area cities and counties. If the Board of Supervisors is, in fact, "committed to avoiding conflicts of interest and maintaining high ethical standards," it is long overdue.

## FINDINGS

### *Finding #23-15:*
Alameda County needs an Ethics Policy and Code of Conduct that covers all county employees, elected officials, vendors and volunteers.

### *Finding #23-16:*
Alameda County does not provide adequate ethics training for all county employees.

### *Finding #23-17:*
Alameda County needs a comprehensive whistleblower program encompassing initiating, tracking, investigating, and reporting the number and disposition of complaints, and this program should be accessible to county employees and the public.

## RECOMMENDATIONS

### *Recommendation #23-19:*
The Grand Jury recommends that by July 1, 2024, the Board of Supervisors develop and adopt an ethics policy, including a code of conduct, that applies to all county employees, elected officials, vendors and volunteers.

*Recommendation #23-20:*
The Grand Jury recommends that by July 1, 2024, the Board of Supervisors require ethics training for all county employees, elected officials, vendors and volunteers at onboarding and annually thereafter, with specific instruction on how to initiate a complaint, review of ethical codes and policies, encourage reporting of concerns and track the training in the Training and Education Center's Learning Management System.

*Recommendation #23-21:*
The Grand Jury recommends that by July 1, 2024, the Board of Supervisors develop and implement a comprehensive whistleblower program encompassing initiating, tracking, investigating, and public reporting of complaints, with a clear mechanism accessible to county employees and the general public.

---

### REQUEST FOR RESPONSES

Pursuant to California Penal Code sections 933 and 933.05, the Grand Jury requests each entity or individual named below to respond to the enumerated Findings and Recommendations within specific statutory guidelines. Governing bodies of public agencies shall respond to the findings and recommendations no later than 90 days from the public release date of this report. Elected county officers or department heads shall comment within 60 days to the Presiding Judge of the Superior Court, with an informational copy to the Board of Supervisors.

Responses to Findings shall be either:
- The respondent agrees with the finding.
- The respondent disagrees wholly or partially with the finding, in which case the response shall specify the portion of the finding that is disputed and shall include an explanation of the reasons therefore.

Responses to Recommendations shall be one of the following:
- The recommendation has been implemented, with a summary regarding the implemented action.
- The recommendation has not yet been implemented, but will be implemented in the future, with a time frame for implementation.
- The recommendation requires further analysis, with an explanation and the scope and parameters of an analysis or study, and a time frame for the matter to be prepared for discussion by the officer or head of the agency or department being investigated or reviewed, including the governing body of the public agency where applicable. This time frame shall not exceed six months from the date of publication of the Grand Jury report.
- The recommendation will not be implemented because it is not warranted or is not reasonable, with an explanation therefore.

## REQUIRED RESPONSE

Alameda County Board of Supervisors       Findings 23-15 through 23-17
                                          Recommendations 23-19 through 23-21

## INVITED RESPONSE

Alameda County Human Resources            Finding 23-16
                                          Recommendation 23-20

1Whistleblower Program Annual Report and Quarter 4 Results, City & County of San Francisco, Office of the Controller, City Services Auditor August 26, 2021